Jose DeCastro
1258 Franklin St.
Santa Monica, CA 90404
(310) 963-2445
chille@situationcreator.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JOSE DECASTRO | ) Case No.: 2:23-cv-00580-APG-EJY |
| | ) |
| Plaintiff, | ) **FIRST AMENDED COMPLAINT FOR** |
| | ) **DAMAGES AND DEMAND FOR** |
| v. | ) **JURY TRIAL** |
| | ) |
| LAS VEGAS METROPOLITAN POLICE | ) (As a matter of course per Fed. R. Civ. |
| DEPARTMENT; STATE OF NEVADA; | ) Proc.15(a)(1)(A)) |
| BRANDEN BOURQUE; JASON TORREY; | ) |
| C. DINGLE; B. SORENSON; JESSE | ) |
| SANDOVAL; C. DOOLITTLE; | ) |
| and DOES 1 to 50, inclusive | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

# INTRODUCTION

1. Plaintiff, a member of the press who specifically records police interactions was

recording a police officer interaction outside of a Rollin Smoke BBQ in Southwest Las Vegas,

Nevada. Five Las Vegas Metropolitan Police officers, including the officer that he was

recording, under the guise of protecting the privacy of another citizen in public, without

reasonable suspicion that the Plaintiff was involved in any criminal activity, did interfere with,

and rob Plaintiff of his liberties while he was in a place that he was lawfully allowed to be, while

Plaintiff was performing constitutionally protected activities. The officers detained Plaintiff,

1   handcuffed, arrested, battered, tortured, forced him into the back of a patrol vehicle, and

2   searched him and his possessions. None of the defendants intervened to prevent the unreasonable

3   detention, arrest, battery, torture, or searches.

4        2. Sadly, the abusive treatment Plaintiff endured for merely asserting his rights and

5   recording the police is not unusual or surprising. This civil rights action seeks to vindicate

6   Plaintiff's constitutional and statutory rights and hold the officers and their department

7   accountable for biased policing practices and the policies (or absence of policies) that resulted in

8   these practices.

9                **PARTIES**

10        3. Plaintiff Jose DeCastro ("DeCastro") is an adult over the age of eighteen, a member of

11   the press, and at all times relevant hereto, was and is a resident of the State of California.

12        4. Defendant Las Vegas Metropolitan Police Department ("LVMPD") is a quasi-

13   municipal entity and a political subdivision of the State of Nevada created and regulated by NRS

14   Ch. 258 and at all times relevant hereto, employed all of the individually named Defendants.

15        5. Defendant State of Nevada ("Nevada") is a government entity and at all time relevant

16   hereto, operates, oversees, and manages Defendant LVMPD under the color of state law.

17        6. Defendant Branden Bourque ("Bourque") is, and at all relevant times was, an officer

18   with the LVMPD. In doing the things herein alleged, Bourque was acting under the color of state

19   law and in the course and scope of his employment with Nevada. Bourque is sued in his

20   individual capacity.

21        7. Defendant Jason Torrey ("Torrey") is, and at all relevant times was, a supervisor with

22   the LVMPD. In doing the things herein alleged, Torrey was acting under color of state law and

23   in the course and scope of his employment with Nevada. Torrey is sued in his individual

1    capacity, including in his capacity as a supervisor.

2        8. Defendant C. Dingle ("Dingle") is, and at all relevant times was, an officer with the

3    LVMPD. In doing the things herein alleged, Dingle was acting under the color of state law and

4    in the course and scope of his employment with Nevada. Dingle is sued in his individual

5    capacity. Plaintiff does not know the full true name of C. Dingle.

6        9. Defendant B. Sorenson ("Sorenson") is, and at all relevant times was, an officer with

7    the LVMPD. In doing the things herein alleged, Sorenson was acting under the color of state law

8    and in the course and scope of his employment with Nevada. Sorenson is sued in his individual

9    capacity. Plaintiff does not know the full true name of B. Sorenson.

10       10. Defendant Jesse Sandoval ("Sandoval") is, and at all relevant times was, an officer

11   with the LVMPD. In doing the things herein alleged, Sandoval was acting under the color of

12   state law and in the course and scope of his employment with Nevada. Sandoval is sued in his

13   individual capacity.

14       11. Defendant C. Doolittle ("Doolittle") is, and at all relevant times was, an officer with

15   the LVMPD. In doing the things herein alleged, Doolittle was acting under the color of state law

16   and in the course and scope of his employment with Nevada. Doolittle is sued in his individual

17   capacity. Plaintiff does not know the full true name of C. Doolittle.

18       12. The true names and capacities, whether individual, corporate, associate, or otherwise,

19   of Defendants sued herein as Does 1-50, inclusive, are unknown to Plaintiff, who therefore sues

20   said defendants by such fictitious names. Plaintiff will amend this Complaint to show the true

21   names and capacities if and when the same are ascertained. Plaintiff is informed and believes,

22   and thereon alleges, that said Defendants, and each of them, are responsible in some manner for

23   Plaintiff's damages as herein alleged. Each reference in this complaint to "defendant",

"defendants", "Defendants", or a specifically named defendant also refers to all "Doe"

defendants.

13. Plaintiff is informed and believes and thereon alleges that each of the Defendants

sued herein was negligently, wrongfully, and otherwise responsible in some manner for the

events and happenings as hereinafter described, and proximately caused injuries and damages to

Plaintiff. Further, one or more Doe Defendants was at all material times responsible for the

hiring, training, supervision, and discipline of other defendants, including the individually named

and Doe Defendants.

14. Plaintiff is informed and believes and thereon alleges that at all times herein

mentioned each of the Defendants, including all defendants sued under fictitious names, was the

agent and/or employee of each of the other Defendants, and in doing the things hereinafter

alleged was acting within the course and scope of such agency and employment.

15. Plaintiff is informed and believes and thereon alleges that at all times herein

mentioned each of the Defendants, including all defendants sued under fictitious names, was the

agent and/or employee of each of the other Defendants, and in doing the things hereinafter

alleged, was acting within the course and scope of such agency and employment.

16. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants

was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator,

an/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting

within the course and scope of that relationship. Plaintiff is further informed and believes, and

thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of

the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant

as alleged herein, except as may be hereinafter otherwise specifically alleged. At all material

times, each Defendant was an integral participant, jointly engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiff's constitutional rights and other actionable harm.

17. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of Nevada.

**JURISDICTION AND VENUE**

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because it arises under the Constitution and laws of the United States, as it is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of a citizen of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, and 1988. This Court has supplemental jurisdiction over the claims arising under Nevada law pursuant to 28 U.S.C § 1367(a).

19. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in the County of Clark in Nevada which is in the U.S. District of Nevada.

**GENERAL FACTUAL ALLEGATIONS**

20. At approximately 4:30pm Pacific on March 15, 2023, Plaintiff happened upon a police interaction between a woman sitting in a silver Hyundai Elantra and Bourque who was sitting in a Ford police interceptor with the LVMPD logo on it and the number 19084. Plaintiff does not know the woman's name but will refer to her as "Jane".

21. Plaintiff started recording the police interaction on one of his phones, moved to a position approximately 10 feet away from Jane and making sure not to become between Bourque and Jane, he asked her if she, "Was good. Are you okay?"

22. Within six seconds, Bourque left his vehicle, got Plaintiff's attention, and told him to back up, which Plaintiff immediately did, giving Bourque an additional five feet.

23. Bourque told Plaintiff to back up again, or he would detain Plaintiff, at which time Plaintiff began asserting his rights to record the interaction, saying "I'm more than 10 feet away. I'm a member of the press. I have a right to be here." Bourque threatened to detain Plaintiff for "obstructing" and said, "She deserves privacy. This is not your business."

24. Plaintiff continued to assert his rights and notified Bourque that Plaintiff was a member of the press at which time Bourque got upset and said that he was detaining Plaintiff.

25. Bourque told Jane to leave and started walking aggressively toward Plaintiff as if to use force, and Plaintiff took a step back to prevent any physical confrontation.

26. Plaintiff continued to protest Bourque putting his hands on him unnecessarily, but Bourque was patently interested in manhandling Plaintiff in some way, and said "Listen, I *am* going to put my hands on you." Bourque did indeed batter Plaintiff.

27. While Plaintiff was firm in his verbal tone, he never screamed or yelled, he never threatened Defendants, and never said or did anything that would have led a reasonable law enforcement officer to fear for their safety or to suspect that Plaintiff committed, or was planning on committing, any crime.

26. Plaintiff asked for a supervisor and while continuing to protest against illegal detainment and against the use of unnecessary force, Plaintiff offered to walk to Bourque's vehicle which seemed to be where the officer wanted to illegally detain Plaintiff. As soon as Plaintiff reached the vehicle, he was forcefully grabbed and told that he was being placed under arrest.

27. Plaintiff was patted down and placed in handcuffs. Plaintiff made Defendants aware

of a prior shoulder injury, and Plaintiff was put in two pairs of handcuffs to adhere to his medical needs. Although later during the encounter, a Defendant police officer would yank and squeeze forcefully on Plaintiff's arm, over and over and over, hurting his arm and shoulder unnecessarily.

28. Plaintiff was soon surrounded by four different police officers, now Defendants, where he continued to protest that they had no valid reason to detain or arrest him. Bourque accused Plaintiff of being on drugs based on the color of his skin. Plaintiff said that he did not have a criminal record and Bourque entered his vehicle to type up a report.

29. Soon after, one of the Defendant officers demanded that Plaintiff look only straight ahead and when Plaintiff did not immediately comply, the Defendant began squeezing Plaintiff's elbow, placing pressure on Plaintiff's ulnar nerve.

30. Plaintiff complained about the pain and protested against needing to look in a specific direction to have an arrest effectuated on him.

31. The Defendant squeezing Plaintiff's elbow said that it was within their policy to squeeze elbows for people in their custody that did not comply with random commands that would grant complete dominion over another human being; from which way Plaintiff's head could turn, to his right to use speech, or when he can blink.

32. Plaintiff did experience severe pain and paresthesia from the compression of his ulnar nerve.

33. When Plaintiff pleaded for help from the surrounding Defendant officers, they completely ignored Plaintiff. Plaintiff told them, "You're going to be sued for Failing to intervene. I'm sitting here telling you this man is torturing me. Please ask him to stop." Plaintiff was ignored by all sworn peace officers on the scene, who are now Defendants.

34. Plaintiff's elbow was squeezed for approximately fifteen (15) minutes in total before

1   Plaintiff's pain tolerance forced him to tear his elbow away from the Defendant officer.

2       35. At some point, Defendant Torrey, the supervisor, arrived on the scene and authorized

3   the Defendants' behavior as being within their policy. Torrey then stated that Plaintiff should be

4   arrested to discourage Plaintiff's behavior.

5       36. All the Defendants on the scene knew that there was no reasonable suspicion or

6   probable cause to suspect Plaintiff of any crimes, but wrongfully believed that they were justified

7   in detaining Plaintiff for assertion of his civil rights and for refusing to cooperate with the

8   Defendants' feelings and ridiculous unreasonable demands on a law-abiding citizen.

9       37. Bourque engaged in profiling against members of the press when he stated that First

10  Amendment Auditors are known for dropping their phone, pulling out guns and shooting at

11  officers, which is preposterous and provably false.

12      38. A Defendant officer said that Plaintiff needed to be patted down again. Plaintiff

13  protested that he'd already been patted down by two officers. The officer then spread Plaintiff's

14  legs uncomfortably wide and purposely and maliciously, and with significant force, struck

15  Plaintiff in the testicles with what felt like a closed fist. Plaintiff yelled in pain, "I can't believe

16  you just hit me in the nuts!"

17      39. Plaintiff was forcibly placed into a police vehicle by Defendants who pulled the seat

18  belt as tight as they could, knocking the air out of the Plaintiff. Plaintiff again pleaded for help

19  from surrounding officers, but he was ignored again.

20      40. B. Sorenson attempted to get Plaintiff arrested for NRS 202.487 for having his dog in

21  a vehicle, even though Plaintiff's animal was not in unsafe conditions. Plaintiff was searched and

22  transported to the Clark County Jail where he would not be formally charged, but only released

23  with citations, approximately five hours after the incident began.

41. The officers' actions left Plaintiff in the position where he had to pay for a ride back to his vehicle and did pay monies for such a ride. On the arm that Defendant squeezed, Plaintiff was left with a severe bruise in his elbow area, continues to have paresthesia in his index and thumb, and requires ongoing medical care. Almost a month after the incident, B. Sorenson continues to harass Plaintiff by warning him against violating NRS 202.487 although Plaintiff has never left his pet in unsafe conditions.

42. As a result of the Defendants' actions, Plaintiff suffered a deprivation of his rights and liberties, sustained physical injuries, and suffered physical pain, mental suffering, emotional distress, fear, embarrassment, and other general damages in an amount to be proven at trial.

43. At no time during the encounter with Defendants did Plaintiff do or say anything that would put a reasonable officer in fear of his or her safety.

44. Following the incident, Bourque claimed in a written incident report that the reason why Plaintiff was arrested was for engaging with a detained driver, refusing to give an officer reasonable space to work, and refusing to obey lawful commands after being advised that he was detained. A detained person's rights are only limited as to leaving. A police officer's, specifically Defendant Bourque's, feelings about lawful behavior must be weighed against a citizen's rights. The Defendants' behavior did not follow LVMPD's Use of Force policy and Interactions With the Public policy.

45. The written report by Bourque also claimed:

> Because DeCastro was physically uncooperative with officers, admitted to being in trouble numerous times in the past for similar reasons, and would not even allow officers to explain to him why he was detained or placed in handcuffs, we determined that he was not a good candidate for a citation and release. Because of DeCastro's actions it was clear that his criminal behavior would continue in the area if police did not act.

46. Plaintiff did not admit to "being in trouble numerous times" but said the opposite. The facts in the incident report were either fabricated or merely pretextual. Even if the facts set forth in Defendant Bourque's report were true (which the video evidence disputes), those facts still did not give rise to a reasonable suspicion to detain Plaintiff (Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968)), and certainly did not furnish probable cause to arrest Plaintiff. Plaintiff stated early in the encounter that he had no criminal record, and there wasn't any criminal behavior. At that point, a reasonable officer would have left the Plaintiff alone. Bourque never told Plaintiff that there was an investigation or that he was interfering with it. Rather, Bourque only demanded that Plaintiff respect Jane's privacy in public. Defendant Bourque seemed only intent on preventing Plaintiff from recording the police interaction. This is probably because Plaintiff has recently covered several stories about LVMPD that went viral on the internet.

47. Plaintiff is informed and believes, and intends to prove after conducting relevant discovery, that Defendants' actions in detaining and/or arresting Plaintiff, using force on him, and illegally searching him and his belongings, was motivated largely or entirely by the following (1) Plaintiffs' position as a member of the press that records police interactions for accountability, and that was engaging in this First Amendment protected activity (2) Plaintiff's negative viewpoint of police who all contribute or hold silent (the thin blue line) about police brutality, and/or (3) Plaintiffs' verbal protestations of the Defendants' actions and Plaintiff's accusation that the Defendants were harassing him. Indeed, as shown on the video footage captured by Plaintiff's cell phone and the video footage Plaintiff expects to obtain from the Defendants' body cams, Plaintiff did not do or say anything that would have provided reasonable suspicion or probable cause for the detention and/or arrest, excessive use of force, and subsequent searches. Therefore, there is a strong inference that the Defendants were in fact

1  motivated by one or more of the three factors enumerated above.

2  **FIRST CAUSE OF ACTION**
**42 U.S.C. Section 1983 – Fourth Amendment**
3  **(Against Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1 – 25)**

4  48. Plaintiff refers to paragraphs 1-47 of this Complaint and incorporates by reference the

5  allegations of said paragraphs as though expressly set forth at length at this point.

6  49. By the actions and omissions described above, the Defendants, acting under color of

7  state law in their individual capacities, and as integral participants, violated Plaintiffs' rights

8  under the Fourth Amendment to the U.S. Constitution and equivalent rights under the Nevada

9  State Constitution. These deprivations include, but are not limited to:

10  a. The right to be free from detention without reasonable suspicion;

11  b. The right to be free from arrest without probable cause;

12  c. The right to be free from unreasonable search and seizure of property;

13  d. The right to be free from excessive force and unreasonable force and

14  restraint in the course of an arrest.

15  50. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights

16  described herein, knowingly, maliciously, and with conscious and reckless disregard for whether

17  the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or

18  omissions were the moving force behind, and proximately caused, injuries and damages to

19  Plaintiff as set forth above.

20  51. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable

21  under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such

22  conduct. No punitive damages are sought against Nevada.

23

**SECOND CAUSE OF ACTION**
**42 U.S.C. Section 1983 – Fourteenth Amendment**
**(Against Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1 – 25)**

52. Plaintiff refers to paragraphs 1-51 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

53. By the actions and omissions described above, Defendants, acting under color of state law in their individual capacities, and as integral participants, violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and equivalent rights under the Nevada State constitution. Defendants intentionally discriminated against Plaintiffs based on the color of his skin, his position as a member of the press, and due to his political affiliation and viewpoints. Defendants would not have harassed, detained, arrested, used force on, and searched Plaintiff if he had been more like them. In particular, according to Defendants' own incident reports, one of the facts upon which they relied in detaining and/or arresting Plaintiff is that there were previous incidents involving members of the press dropping their cameras and pulling out guns. Choosing to detain Plaintiff – a member of the press – based on alleged actions and/or involvement of other members of the press and due to the color of his skin is illegal profiling and prohibited by the Fourteenth Amendment's Equal Protection Clause and by NRS 289.510. If the Defendants had been told that a man of their skin color trying to get police officers autographs (instead of photographing police interactions for accountability) had pulled guns on police, it is virtually certain that Defendants never would have detained, arrested, or searched such a person in the same parking lot in the same location.

54. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or

1  omissions were the moving force behind, and proximately caused, injuries and damages to

2  Plaintiff as set forth above.

3      55. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable

4  under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such

5  conduct. No punitive damages are sought against Defendant Nevada.

6                          **THIRD CAUSE OF ACTION**
                    **42 U.S.C. Section 1983 – First Amendment**
7      **(Against Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25)**

8      56. Plaintiff refers to paragraphs 1-55 of this Complaint and incorporates by reference the

9  allegations of said paragraphs as though expressly set forth at length at this point.

10     57. By the actions and omissions described above, Defendants, acting under color of state

11  law in their individual capacities, and as integral participants, violated Plaintiff's rights under the

12  First Amendment to the U.S. Constitution and equivalent rights under the Nevada State

13  constitution. In particular, Defendants retaliated against Plaintiff for his speech, including his

14  verbal protests and criticisms of the Defendants' actions in investigating, detaining, and arresting

15  Plaintiffs without any basis, his exercise of his right to refuse to cooperate in what started as a

16  consensual encounter, and his exercise of his right to record police interactions. Plaintiff also

17  believes Defendants retaliated against him for refusing to cooperate in a consensual encounter,

18  which is also protected activity under the First Amendment and equivalent rights under the

19  Nevada State constitution.

20     58. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights

21  described herein, knowingly, maliciously, and with conscious and reckless disregard for whether

22  the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or

23  omissions were the moving force behind, and proximately caused injuries and damages to

Plaintiff as set forth above.

59. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct. No punitive damages are sought against Defendant Nevada.

**FOURTH CAUSE OF ACTION**
**42 U.S.C. Section 1983 – Monell and Supervisor Liability**
**(Against LVMPD, Nevada, Torrey, and Does 26-50)**

60. Plaintiff refers to paragraphs 1-59 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

61. The unconstitutional actions and/or omissions of Defendants Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25 were pursuant to the following customs, policies, practices, and/or procedures of Defendant LVMPD and Nevada, and which were directed, encouraged, allowed and/or ratified by policymaking officials with Nevada and the LVMPD:

      a. To carry out or tolerate unlawful detentions without reasonable suspicion;

      b. To carry out or tolerate unlawful arrests without probable cause;

      c. To carry out or tolerate detentions and arrests based on citizens' refusal to cooperate with consensual encounters;

      d. To carry out or tolerate detentions and arrests based on citizens' exercise of their First Amendment right to criticize and verbally protest deputies' actions;

      e. To use or tolerate excessive force;

      f. To carry out or tolerate unlawful searches of persons and properties;

      g. To carry out or tolerate discriminatory and biased policing and/or racial profiling;

h. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning each of the foregoing practices;

i. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures within the LVMPD concerning the fear experienced by people of different skin color and other minorities (including cop watching activists) when interacting with law enforcement in light of well documented, highly publicized, and disproportionate amount of violence committed by law enforcement against said groups, and the tactics that LVMPD officers should employ in dealing with said groups in light of such fears (especially where, as here, they have been explicitly made known to the officers);

j. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate officers who have engaged in unlawful or unconstitutional law enforcement activity;

k. To allow officers to file false police reports.

62. Defendant Nevada, LVMPD, and Does 26-50 failed to properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and/or terminate Defendants Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25 with deliberate indifference to Plaintiff's constitutional rights. Specifically, Defendants that tortured Plaintiff. In a country that is based on respecting Constitutional Rights, those officers are tyrants and a menace, and their actions are unbecoming of being called "An Officer". The men who watched them do what they did should have to pay for this lawsuit out of their own pockets. Plaintiff offered Bourque, "To not sue you, take these cuffs off me and let's talk about what we both expect from one-another, cops and cop watchers." Meaning Defendant Bourque had the

1   opportunity to avoid this promised litigation. What could have been settled in a meeting will now

2   cost the taxpayers.

3        63. The unconstitutional actions of Defendants Bourque, Torrey, Dingle, Sorenson,

4   Sandoval, Doolittle, and Does 1-25 were approved, tolerated, and/or ratified by policymaking

5   officers for Defendant Nevada and the LVMPD.

6        64. The aforementioned customs, policies, practices, and procedures, and the failure to

7   properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and

8   terminate, and the unconstitutional approval, ratification and/or toleration of the wrongful

9   conduct of Defendants Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25

10  were a moving force and/or proximate cause of the deprivation of Plaintiff's clearly established

11  constitutional rights under the United States and the State of Nevada.

12       65. As the supervisor on scene, Defendant Torrey had an obligation to ensure that his

13  subordinates, including Defendants Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and

14  Does 1-25 refrained from violating Plaintiff's Constitutional rights and prevented other peace

15  officers from violating Plaintiff's rights.

16       66. Because Defendant Torrey learned and was apprised of the relevant facts surrounding

17  the arrest and/or detention of Plaintiff, the use of force on Plaintiff, and the search of his person

18  and property, and because he knew that such actions were illegal and unconstitutional, Torrey

19  was obligated to immediately terminate those unconstitutional actions, and by failing to do so,

20  Torrey is liable in his role as a supervisor. Torrey said specifically something to the effect of,

21  "No, you have to be arrested because you've done this before, and we want to deter the

22  behavior". Torrey openly stated he didn't want Plaintiff to film the police and he would put

23  charges on Plaintiff because Plaintiff is a nationally known Cop Watcher. LVMPD was well

1   aware of who Plaintiff is and what he does.

2       67. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries

3   and damages as set forth above.

4                              **FIFTH CAUSE OF ACTION**
                               **42 U.S.C. Section 1981**
5   **(Against Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25)**

6       68. Plaintiff refers to paragraphs 1-67 of this Complaint and incorporates by reference the

7   allegations of said paragraphs as though expressly set forth at length at this point.

8       69. In doing the things herein alleged, Defendants intentionally discriminated against

9   Plaintiffs because of his race and political affiliation and viewpoints, thereby depriving him of

10  his right to the full and equal benefit of all laws and proceedings for the security of persons and

11  property as is enjoyed by all other citizens.

12      70. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights

13  described herein, knowingly, maliciously, and with conscious and reckless disregard for whether

14  the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or

15  omissions were the moving force behind, and proximately caused injuries and damages to

16  Plaintiff as set forth above.

17      71. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable

18  under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such

19  conduct. No punitive damages are sought against Defendant Nevada.

20                              **SIXTH CAUSE OF ACTION**
                               **Assault**
21  **(Against All Defendants)**

22      72. Plaintiff refers to paragraphs 1-71 of this Complaint and incorporates by reference the

23  allegations of said paragraphs as though expressly set forth at length at this point.

73. In doing the things herein alleged, Defendants intentionally, and without consent or legal justification, attempted to make a harmful and/or offensive physical contact with Plaintiff and thereby placed Plaintiff in fear of an imminent harmful or offensive contact.

74. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed.

75. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of their employees acting in the course and scope of said employment, pursuant to NRS 41.032.

76. The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights, or their actions were despicable and carried out with a willful and conscious disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought against Defendant Nevada.

**SEVENTH CAUSE OF ACTION**
**Battery**
**(Against All Defendants)**

77. Plaintiff refers to paragraphs 1-76 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

78. In doing the things herein alleged, Defendants intentionally, and without consent or legal justification, touched Plaintiff in a harmful and offensive manner.

79. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as set forth above.

80. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

81. The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights or their actions were despicable and

1 | carried out with a willful and conscious disregard for Plaintiff'' rights and safety, entitling

2 | Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought

3 | against Defendant Nevada.

**EIGTH CAUSE OF ACTION**
**False Arrest and Imprisonment**
**(Against All Defendants)**

6 |     82. Plaintiff refers to paragraphs 1-81 of this Complaint and incorporates by reference the

7 | allegations of said paragraphs as though expressly set forth at length at this point.

8 |     83. In doing the things herein alleged, Defendants intentionally arrested and/or detained

9 | Plaintiff without a warrant or other legal justification, and in doing so restrained Plaintiff,

10 | handcuffed him, and placed him in patrol cars against his will, thereby depriving him of his

11 | freedom of movement.

12 |     84. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries

13 | and damages as set forth above.

14 |     85. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of

15 | its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

16 |     86. The conduct of the individual Defendants was malicious and oppressive in that they

17 | intended to harm Plaintiff and deprive him of his rights or their actions were despicable and

18 | carried out with a willful and conscious disregard for Plaintiff'' rights and safety, entitling

19 | Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought

20 | against Defendant Nevada.

**NINTH CAUSE OF ACTION**
**Invasion of Privacy**
**(Against All Defendants)**

23 |     87. Plaintiff refers to paragraphs 1-86 of this Complaint and incorporates by reference the

1  allegations of said paragraphs as though expressly set forth at length at this point.

2      88. During the incident giving rise to this action, Plaintiff had a reasonable expectation of

3  privacy in his personal affairs, including the contents of his personal belongings such as vehicles,

4  pockets, wallets, cell phones and other electronic devices.

5      89. In doing the things herein alleged, Defendants intentionally invaded and intruded into

6  Plaintiff's personal and private affairs by searching his belongings without a warrant or other

7  legal justification.

8      90. Defendants' invasion of Plaintiff's privacy would have been offensive to any

9  reasonable person.

10     91. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed.

11     92. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of

12 its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

13     93. The conduct of the individual Defendants was malicious and oppressive in that they

14 intended to harm Plaintiff and deprive him of his rights or their actions were despicable and

15 carried out with a willful and conscious disregard for Plaintiff'' rights and safety, entitling

16 Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought

17 against Defendant Nevada.

18                          **TENTH CAUSE OF ACTION**
                                  **Negligence**
19                          **(Against All Defendants)**

20     94. Plaintiff refers to paragraphs 1-93 of this Complaint and incorporates by reference the

21 allegations of said paragraphs as though expressly set forth at length at this point.

22     95. The individual Defendants owed Plaintiff a duty to use reasonable care in connection

23 with the parties' interactions as described herein. In particular, said Defendants had a duty to

carefully investigate any criminal activity, to use care to avoid subjecting Plaintiff to an illegal

detention, arrest, seizure, retaliation for exercise of free speech, free press, or petition for redress

of grievances, use of force, or deprivation of any of the other rights enumerated herein, and to

use reasonable care to avoid engaging in biased policing or racial and political affiliation

profiling.

96. In doing the things herein alleged, Defendants breached the applicable duty of care by

acting unreasonably, carelessly, negligently and/or recklessly.

97. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries

and damages as set forth above.

98. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of

its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

99. The conduct of the individual Defendants was malicious and oppressive in that they

intended to harm Plaintiff and deprive him of his rights, or their actions were despicable and

carried out with a willful and conscious disregard for Plaintiff's rights and safety, entitling

Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought

against Defendant Nevada.

## PRAYER

Plaintiff prays for damages as follows:

a. For compensatory damages in an amount according to proof;

b. For punitive damages in the amount of $5,000,000 or in an amount sufficient to punish

Defendants conduct and deter similar conduct in the future, pursuant to 42 U.S.C. Section 1983

(no punitive damages are sought against Defendant Nevada);

c. For all applicable statutory penalties;

d. For attorneys' fees pursuant to 42 U.S.C. Section 1988;

e. For costs of suit;

f. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

## DECLARATION

I declare under penalty of perjury, that the foregoing is true and correct.

DATED: May 7, 2023                              Respectfully submitted,

Jose DeCastro
1258 Franklin St.
Santa Monica, CA 90404
chille@situationcreator.com
(310) 963-2445
*Pro Se*