**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Nicholas M. Adams, Esq.
Nevada Bar No. 15859
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
nadams@maclaw.com
  Attorneys for Defendants LVMPD, Ofc. Bourque, Ofc. Dingle; Ofc. Sorenson, Ofc. Sandoval and Ofc. Doolittle

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSE DECASTRO,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; STATE OF NEVADA; BRANDEN BOURQUE; JASON TORREY; C. DINGLE; B. SORENSON; JESSE SANDOVAL; OFFICER DOOLITTLE and DOES 1 to 50, inclusive,<br><br>　　　　Defendants. | Case Number:<br>2:23-cv-00580-APG-EJY<br><br>**DEFENDANTS LVMPD, OFC. BOURQUE, OFC. DINGLE; OFC. SORENSON, OFC. SANDOVAL AND OFC. DOOLITTLE'S MOTION FOR PARTIAL DISMISSAL** |

Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Ofc. Bourque, Ofc. Dingle; Ofc. Sorenson, Ofc. Sandoval and Ofc. Doolittle (collectively, "LVMPD Defendants"), by and through their attorneys of record, Marquis Aurbach, hereby file their Motion for Partial Dismissal. This Motion is made and based upon the Memorandum of Points & Authorities, the pleadings and papers on file herein, and any oral argument allowed by counsel at the time of hearing.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.　INTRODUCTION**

This is a §1983 wrongful arrest and excessive force lawsuit. On March 15, 2023, Defendant LVMPD Officer Branden Bourque ("Ofc. Bourque") arrested Plaintiff Jose DeCastro ("DeCastro") for obstructing a lawful traffic stop when he refused to comply with

MAC:14687-456 5105812_2

Ofc. Bourque's commands to move away from the detainee. DeCastro asserts numerous causes of action under the theory that LVMPD Defendants wrongfully arrested him for discriminatory reasons and for exercising his First Amendment right to film. The instant Motion seeks dismissal of the majority of DeCastro's claims for failure to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6). Specifically, the Motion requests the Court dismiss DeCastro's:

- Fourth Amendment and Nevada state law false arrest and false imprisonment claims (first and eighth causes of action).
- Fourteenth Amendment discrimination claim (second cause of action).
- First Amendment retaliatory arrest claim (third cause of action).
- *Monell*[1] claim against LVMPD (fourth cause of action).
- 42 U.S.C. §1981 discrimination claim (fifth cause of action).
- State law invasion of privacy claim (ninth cause of action).
- State law negligence claim (tenth cause of action).

The only claims defendants are not contesting are DeCastro's Fourth Amendment excessive force claim (first cause of action) and Nevada state law claims for assault and battery (sixth and seventh causes of action).

## II. STATEMENT OF FACTS[2]

### A. SUBJECT INCIDENT.

On March 15, 2023, at approximately 4:30 p.m., Ofc. Bourque was conducting a traffic stop of a silver Hyundai Elantra. ECF No. 13 at ¶20. DeCastro approached the traffic stop and began recording and talking to the traffic detainee. ECF No. 13 at ¶21. At the time DeCastro approached the traffic stop, Ofc. Bourque was sitting in his LVMPD vehicle. ECF No. 13 at ¶20.

---

[1] *See Monell v. Dep't of Social Services,* 436 U.S. 658 (1978).

[2] For purposes of this Motion only, LVMPD Defendants assume all facts asserted in the First Amended Complaint are true.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Upon noticing DeCastro interacting with the subject of the traffic stop, Ofc. Bourque exited his police vehicle, got DeCastro's attention, and told him to back up. ECF No. 13 at ¶22. DeCastro moved five feet. ECF No. 13 at ¶22. Ofc. Bourque again told DeCastro to back up from the traffic stop, at which time DeCastro began asserting his rights to record the interaction. ECF No. 13 at ¶23. Ofc. Bourque warned DeCastro he would detain DeCastro for obstructing if he did not move further away from the detainee. ECF No. 13 at ¶23. DeCastro insisted he had no obligation to back up because of his status as a member of the press and his right to record police interactions. ECF No. 13 at ¶¶ 23-24. When DeCastro ignored Ofc. Bourque's commands to move back ten feet, Ofc. Bourque told DeCastro he was being detained. ECF No. 13 at ¶24. Ofc. Bourque told the traffic detainee she was free to go. ECF No. 13 at ¶25.

When Ofc. Bourque attempted to detain DeCastro, DeCastro refused to comply. ECF No. 13 at ¶¶ 25-26. DeCastro asked for a supervisor and walked to Ofc. Bourque's LVMPD vehicle, at which time Ofc. Bourque informed DeCastro he was being arrested for obstruction. ECF No. 13 at ¶¶ 26. DeCastro made Ofc. Bourque aware of a prior shoulder injury, and Ofc. Bourque placed DeCastro in two pairs of handcuffs to adhere to his medical needs. ECF No. 13 at ¶¶ 27.

DeCastro alleges one of the Defendant officers repeatedly squeezed Plaintiff's elbow, placing pressure on DeCastro's ulnar nerve and causing DeCastro severe pain. ECF No. 13 at ¶¶ 29-32. DeCastro then threatened to sue the officers at the scene. ECF No. 13 at ¶¶ 33. DeCastro further alleges he was patted down several times, and during the final pat-down, an officer struck DeCastro in the groin with a closed fist. ECF No. 13 at ¶ 38.

Eventually, Defendant Erland Jason Torrey ("Sgt. Torrey") arrived at the scene. ECF No. 13 at ¶ 35. Sgt. Torrey authorized the officers' behavior as being within LVMPD policy, and said DeCastro should be arrested. As noted in Ofc. Bourque's report and affirmed by Sgt. Torrey, the reasons why DeCastro was arrested was for engaging with a detained driver, refusing to give an officer reasonable space to work, and refusing to obey lawful commands after being advised he was being detained. ECF No. 13 at ¶¶ 44. Ofc. Bourque's report

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5105812_2

1 further stated DeCastro had admitted to getting in trouble numerous times in the past for the
2 same reasons, and his habitual behavior of obstructing police officers and claiming it was
3 justified because of his right to film the police would continue in the area if he was not cited.
4 ECF No. 13 at ¶¶ 45.

5 **B.     PLAINTIFF'S COMPLAINT.**

6 On April 17, 2023, DeCastro filed the instant lawsuit. On May 7, 2023, DeCastro
7 filed his First Amended Complaint as a matter of course pursuant to FRCP 15(a)(1)(A).
8 DeCastro is suing in his individual capacity, and the lawsuit names Officers Branden
9 Bourque, Jason Torrey [improperly identified], C. Dingle, B. Sorenson, Jesse Sandoval, and
10 C. Doolittle as Defendants, as well as their employer, LVMPD. The First Amended
11 Complaint includes the following causes of action:

12 <u>First Claim for Relief</u>: 42 U.S.C. §1983 Fourth Amendment false arrest and
13 excessive force against Officers Bourque, Torrey, Dingle, Sorenson, Sandoval, and
14 Doolittle.

15 <u>Second Claim for Relief</u>: 42 U.S.C. §1983 Fourteenth Amendment equal protection
16 claim against Officers Bourque, Torrey, Dingle, Sorenson, Sandoval, and Doolittle.

17 <u>Third Claim for Relief</u>: 42 U.S.C. §1983 First Amendment retaliation claim against
18 Officers Bourque, Torrey, Dingle, Sorenson, Sandoval, and Doolittle.

19 <u>Fourth Claim for Relief</u>: 42 U.S.C. §1983 *Monell* liability claim against LVMPD,
20 Nevada, and Sgt. Torrey.

21 <u>Fifth Claim for Relief</u>: 42 U.S.C. §1981 claim against Officers Bourque, Torrey,
22 Dingle, Sorenson, Sandoval, and Doolittle.

23 <u>Sixth Claim for Relief</u>: Nevada state law assault claim against all defendants.

24 <u>Seventh Claim for Relief</u>: Nevada state law battery claim against all defendants.

25 <u>Eighth Claim for Relief</u>: Nevada state law false arrest and imprisonment claim
26 against all defendants.

27 <u>Ninth Claim for Relief</u>: Nevada state law invasion of privacy claim against all
28 defendants.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5105812_2

1  <u>Tenth Claim for Relief</u>: Nevada state law negligence claim against all defendants.

**III.   LEGAL STANDARDS**

    **A.   MOTION TO DISMISS STANDARDS**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). If a plaintiff will not be entitled to relief under any set of facts that could be proven under the allegations of the complaint, the court may *sua sponte* dismiss the cause of action or portions thereof. *Halt v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir. 1982)

    **B.   RELEVANT 42 U.S.C. §1983 LEGAL STANDARDS.**

42 U.S.C. §1983 is not itself a source of substantive rights, but merely the procedural vehicle by which to vindicate federal rights elsewhere conferred. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). To make out a prima facie case under §1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. *See Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1989). The defendant officers do not dispute that they acted under color of law. Therefore, the task of this court is to determine whether the defendant officers violated the Constitution. *See Albright*, 510 U.S. at 271. In addition, the defendant officers have raised the affirmative defense of qualified immunity.

A defendant in a §1983 action is entitled to qualified immunity from damages for civil liability if his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has often stressed the importance of deciding qualified immunity "at the earliest possible stage in litigation" in order to preserve the doctrine's

MAC:14687-456 5105812_2

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

status as a true "immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

"In determining whether an officer is entitled to qualified immunity, [a court] consider[s] (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted). Consequently, at summary judgment, a court can "only" deny an officer qualified immunity in a §1983 action "if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)

## IV. LEGAL ARGUMENT

### A. 42 U.S.C. § 1983 – FOURTH AMENDMENT AND STATE LAW FAILS ARREST (FIRST AND EIGHTH CAUSES OF ACTION).

DeCastro is alleging the Defendant officers violated his Fourth Amendment rights and Nevada state law rights by arresting him without probable cause. ECF No. 1 at ¶¶ 36, 49. Accepting the allegations in DeCastro's Complaint as true, DeCastro's false arrest claims fail as a matter of law because it fails to state a claim upon which relief can be granted.

#### 1. Relevant false arrest law.

The Fourth Amendment prohibits "unreasonable searches and seizures." *See* U.S. Const., 8 AMEND. IV. To determine whether an officer had probable cause for an arrest, courts "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to 'probable cause.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (citation omitted).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5105812_2

1 Probable cause "is not a high bar." *Id.* (citation omitted). All that is required is a "fair 2 probability" that crime occurred. *Garcia v. Cty of Merced*, 639 F.3d 1206, 1209 (9th Cir. 3 2011)."If the facts known to the arresting officer are sufficient to create probable cause, the 4 arrest is lawful, regardless of the officer's subjective reasons for it." *Tatum v. City and Cty.* 5 *of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006); *see also Devenpeck v. Alford*, 543 6 U.S. 146, 153 (2004) (the subjective reason that an officer arrests a suspect is irrelevant so 7 long as the available facts suggest that the suspect was committing a crime). The mere 8 existence of some evidence that would suggest a defense or non-involvement in the crime 9 will not negate probable cause. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 10 2015). The probable cause analysis is the same whether under federal law or Nevada state 11 law. *See Marschall v. City of Carson*, 86 Nev. 107, 110, 464 P.2d 494 (1970). When the 12 underlying facts claimed to support probable cause are not in dispute, whether those facts 13 constitute probable cause is an issue of law. *See Ornelas v. United States*, 517 U.S. 690, 14 696-97 (1996).

### 2. **Officer Bourque had probable cause to arrest DeCastro for obstruction.**

17 Generally, police officers have the right to control bystanders at the scene of police 18 activity. If a bystander refuses an officer's lawful orders, probable cause exists to arrest for 19 obstruction. *See Spencer v. Rau*, 542 F. Supp. 2d 583, 589-91 (W.D. Tex. 2007) (probable 20 cause existed to arrest bystander attempting to help at traffic accident after bystander 21 ignored multiple requests to return to his car); *Abrams v. Walker*, 165 F. Supp. 2d 762, 767 22 (N.D. Ill. 2001) (trooper had probable cause to arrest and prosecute attorney for obstruction 23 and traffic stop did not constitute retaliation against attorney for exercising First 24 Amendment rights when attorney parked vehicle and walked up to personally voice his 25 concerns about stop's legality because attorney's actions prolonged stop about 20 minutes). 26 The First Circuit, in *Gericke v. Begin*, in addressing the First Amendment right to film 27 police officers during a traffic stop, stated that police officers may place "reasonable 28 restrictions" on bystanders during traffic stops "when the circumstances justify them." 753

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

F.3d 1, 7-8 (lst. Cir. 2014) (police officers may have justifiable reasons to prevent bystander from filming traffic stop).

Here, Ofc. Bourque was the only officer on scene and the person most familiar with the dangers of individuals inserting themselves into traffic stops. The following facts are undisputed: (1) Ofc. Bourque noticed DeCastro approaching the traffic stop and interacting with the subject of the traffic stop (ECF No. 13 at ¶¶21-22); (2) Ofc. Bourque told DeCastro to distance himself from the traffic stop (ECF No. 13 at ¶22); (3) DeCastro only backed away five feet, and remained in a position close enough to interfere (ECF No. 13 at ¶ 22); (4) Ofc. Bourque warned DeCastro that Ofc. Bourque would detain DeCastro if he would not back up further (ECF No. 13 at ¶ 23); (5) DeCastro claimed he could stand next to the traffic stop and film and refused to comply with Ofc. Bourque's order to move a safe distance away (ECF No. 13 at ¶ 23).

All Ofc. Bourque was attempting to accomplish was to control the scene and ensure the safety of himself and the subject of the traffic stop by separating DeCastro from the scene of the traffic stop. Further, the traffic detainee never asked to speak with DeCastro and, because she was detained, was unable to avoid his filming of her and attempting to talk to her. As admitted to in the First Amended Complaint, DeCastro ignored Ofc. Bourque's multiple reasonable requests and through both action and word made it clear that he intended to interfere with the traffic stop based upon his flawed understanding of the First Amendment and the public's right to record police interactions.

The Ninth Circuit has held that, under NRS 197.190, it is obstruction to "impede" and prolong an investigation. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146-47 (9th Cir. 2012). Further, Nevada district courts have held that an individual is obstructing when the individual is "given several opportunities to comply with Defendants' orders" but fails to do so. *Kelly v. Las Vegas Metro. Police Dep't.*, 2:12-CV-02074-LRH (CWH), 2014 WL 3725927, *6 (July 25, 2014). Based upon the totality of the circumstances, Ofc. Bourque had probable cause to conclude that DeCastro was hindering and delaying the subject traffic stop. DeCastro was very clear that he was not going to follow Ofc. Bourque's orders and

MAC:14687-456 5105812_2

1 that he "had a right to be [there]," just feet away from an active traffic stop. ECF No. 13 at
2 ¶ 23. Such conduct constitutes obstruction. *See Rau*, 542 F. Supp. 2d at 590-91. Thus,
3 DeCastro's arrest was based on probable cause and no constitutional violation occurred.

      **3.** **At a minimum, Ofc. Bourque is protected by qualified immunity on the Fourth Amendment false arrest claim and discretionary immunity on the state law false arrest claim.**

*Fourth Amendment claims*

Assuming arguendo Ofc. Bourque lacked the requisite probable cause to arrest DeCastro, the next issue is whether the law regarding his unconstitutional action was clearly established. That is, at the time the arrest occurred, was the constitutional violation "'sufficiently clear' that every 'reasonable official would have understood that what he [was] doing violated] that right[?]'" *Mattos v. Agarano*, 661 F.3d 433, 446 (9th Cir. 2011). A court should conduct this analysis by examining "the most analogous case law that existed when the [incident] occurred." *Id.* Therefore, the issue is whether on March 15, 2023, it was clearly established that it would be unconstitutional for an officer to arrest an individual for obstructing when the individual unilaterally thrust himself into the middle of a traffic stop and refused multiple orders to stand off to the side while an officer performed the traffic investigation.

In 2009, the Ninth Circuit, in *Lassiter v. City of Bremerton*, addressed a Washington state obstruction arrest where a potentially violent husband refused to sit down during a domestic violence investigation. 556 F.3d 1049 (9th Cir. 2009). In addressing the obstruction charge, the Ninth Circuit found "the undisputed facts are sufficient to conclude that the officers had probable cause" because the husband refused to sit down for safety reasons and this "made it impossible for the police to carry out their duty." *Id.* at 1053-54. The Ninth Circuit addressed another obstruction arrest in *Gravelet-Blondin v. Shelton*, 728 F.3d 1086 (2013). In that case, the plaintiff was a bystander to the arrest of his neighbor. *Id.* at 1089. When the plaintiff was within 37 feet of the police activity he was told to "get back" and "stop." *Id.* at 1090. The plaintiff "froze" but was still tased. *Id.* After being tased, the plaintiff was arrested for obstruction. *Id.* The Ninth Circuit held that because the plaintiff

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC:14687-456 5105812_2

1 followed the officers' commands to not approach and did not interfere in the officers' duties,
2 issues of fact precluded summary judgment in favor of the officers. *Id.* at 1099. A year
3 before *Gravelet-Blondin*, the Ninth Circuit addressed the Nevada statute at issue in this case
4 and found that it is obstruction to "impede" and/or prolong an investigation. *Tsao*, 698 F.3d
5 at 1146; *see also Rau*, 542 F. Supp. 2d at 590- 91; *Kelly*, 2014 WL 3725927, *6 (probable
6 cause to arrest under NRS 197.190 when arrestee ignores multiple commands from the
7 officers).
8       Thus, based upon the above case law, in March 2023 the constitutionality of an
9 obstruction arrest turned on whether (1) the potential for violence exists, (2) the arrestee is
10 warned to stop his obstructing; and (3) whether he complies with that order. Here, it is
11 undisputed that Ofc. Bourque gave DeCastro multiple opportunities to move a safe distance
12 from the traffic stop. There is no clearly established law that would have informed Ofc.
13 Bourque otherwise, and, thus, dismissal is appropriate.
14       ***State law claims***
15       With respect to the state law false arrest claim, the defendants are immune from
16 liability from the state law claims on the basis of discretionary function immunity pursuant
17 to NRS 41.032. *See Gonzalez v. Las Vegas Metro Police Dep't.*, No. 61120, 2013 WL
18 7158415, *2-3 (Nev. Nov. 21, 2013) (holding that an officer's decision to arrest based on a
19 matched description in a facially valid warrant was entitled to discretionary immunity).
20       In *Gonzalez v. Las Vegas Metro Police Dep't.*, the Nevada Supreme Court evaluated
21 the application of the discretionary immunity doctrine in evaluating the officer's decision to
22 arrest and detain a suspect. In *Gonzalez*, the court found that "LVMPD's decision to arrest
23 or detain Gonzalez based on a warrant was part of a policy consideration that required
24 analysis of multiple social, economic, efficiency, and planning concerns including public
25 safety." *Gonzalez v. Las Vegas Metro Police Dep't.*, 61120, 2013 WL 7158415, at *3 (2013)
26 (citing *Martinez v. Maruszczak*, 123 Nev. 433, 446-47, 168 P.3d 720, 729 (2007)); *see also*
27 *Santiago v. Mass. Dep't. of State Police,* No. 11–30248–KPN, 2013 WL 680685, at *9 (D.
28 Mass. Feb. 22, 2013) (officers' decisions regarding investigation and when to seek warrants

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5105812_2

for arrests are based on considerations of public policy)). The court also observed that the "imposition of liability against LVMPD . . . may jeopardize the quality of the governmental process." *Id.* As a result, the defendants are not subject to liability for the DeCastro's claims of negligence and false imprisonment.

### B. PLAINTIFF'S 42 U.S.C. §1983 FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM (SECOND CAUSE OF ACTION).

#### 1. Relevant Fourteenth Amendment law.

To state a §1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that the violation was committed with an intent or purpose to discriminate based upon plaintiff's membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686-87 (9th Cir. 2001). To prevail on a selective enforcement claim, the plaintiff must show "that enforcement had a discriminatory effect and the police were motivated for a discriminatory purpose." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2020). Where the challenged governmental policy is "facially neutral," proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy. *Id.* (citations omitted). If the action does not involve a suspect classification, a plaintiff may establish an equal protection claim showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Id.*

#### 2. Analysis of DeCastro's Fourteenth Amendment claims.

DeCastro alleges the officers arrested him based upon "the color of his skin, his position as a member of the press, and his viewpoints." ECF No. 13 at ¶53. First, DeCastro never asserts he was discriminated based upon his unknown race, only that he believes he was arrested due to the "color of his skin." He has not identified any similarly situation

MAC:14687-456 5105812_2

individuals who share the "color of his skin" who were not arrested or cited for obstructing a traffic stop. This conclusory statement is insufficient to survive a motion to dismiss.

Further, he does not identify what press agency he belongs to, and, regardless, the press is not a protected class. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### C. 42 U.S.C. § 1983 FIRST AMENDMENT RETALIATION (THIRD CAUSE OF ACTION)

#### 1. Relevant First Amendment law.

The Supreme Court has held that a plaintiff must show the absence of probable cause to maintain a retaliatory arrest claim under the First Amendment and that "absent such a showing, a retaliatory arrest claims fails," unless the plaintiff fits into a "narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves v. Barlett*, 139 S.Ct. 1715, 1725 (2019). A plaintiff falls within the exception to the no-probable-cause requirement for a retaliatory arrest claim under the First Amendment where he "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 1727.

#### 2. Analysis of DeCastro's First Amendment retaliatory arrest claim.

DeCastro was arrested for obstructing Ofc. Bourque's traffic stop when he chose to involve himself in the stop, talk to the detainee, and then refused to move back to an area where he could not interfere. As discussed *supra*, probable cause existed for the arrest. According to DeCastro, he was arrested for protesting his arrest. ECF No. 13 at ¶57. Thus, his argument is simply that he was arrested for protesting his lawful arrest. DeCastro has not identified any other individuals who protested their own lawful arrest and were then not arrested. Thus, he has failed to allege prima facie facts supporting a First Amendment false arrest retaliatory arrest claim.

MAC:14687-456 5105812_2

### D. 42 U.S.C. § 1983 – *MONELL* AND SUPERVISOR LIABILITY (FOURTH CAUSE OF ACTION).

Plaintiff's Fourth Cause of Action is a municipal liability claim against LVMPD and Sgt. Torrey. This federal law municipality claim is commonly referred to as a *Monell* claim. *See Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).

#### 1. Relevant *Monell* legal standards.

In *Monell*, the Court held that when a municipal policy of some nature is the cause of the unconstitutional actions taken by municipal employees, the municipality itself will be liable. *See Monell v. Dep't of Social Services,* 436 U.S. 658 (1978). Liability only exists where the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is visited pursuant to governmental "custom" even though such a "custom" has not received formal approval. *Monell*, 436 U.S. at 690-91. The Court defined "custom" as "persistent and widespread discriminatory practices by state officials." *Id.* at 691 (citing *Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 167-68 (1970)).

The doctrine of respondeat superior does not apply to 42 U.S.C. §1983 claims against municipalities. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell*, 436 U.S. at 691). In other words, municipal liability is not established merely by showing that a municipal employee committed a constitutional tort while within the scope of employment. *Id.* at 478-79. For liability to attach to a municipality, a plaintiff must establish that the wrongful act complained of was somehow caused by the municipality. *Monell*, 436 U.S. at 691-95. Such liability can be imposed only for injuries inflicted pursuant to a governmental "policy or custom." *Monell*, 436 U.S. at 694. In addition, there must be shown to be an affirmative link between the policy or custom and the particular constitutional violation alleged. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). The alleged policy or custom must be the "moving force" for the constitutional violation in order to establish liability under §1983. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694). Causation must be specific to the violation alleged, meaning that

MAC:14687-456 5105812_2

merely proving an unconstitutional policy, practice, or custom however loathsome, will not establish liability unless the specific injury alleged relates to the specific unconstitutional policy proved. *Board of County Comm'rs of Bryan City, Oklahoma vs. Brown*, 520 U.S. 397, 404 (1997). Once each of these elements are met, a plaintiff must further prove that the unconstitutional policy that caused him injury was the result of something more than mere negligence on the part of the municipality, and was instead the result of "deliberate indifference" - a state of mind that requires a heightened level of culpability, even more than mere "indifference." *Id.* at 411. In fact, the *Monell* standard for municipal liability has been interpreted as more restrictive than "common law restrict[ions] [on] private employers' liability for punitive damages." *See* David Jacks Achtenburg, Taking History Seriously: Municipal Liability Under 42 U.S.C. § 1983 and the Debate Over Respondeat Superior, 73 Fordham L. Rev. 2183, 2191 (2005). Proof of a single incident is insufficient to establish a custom or policy. *Tuttle*, 471 U.S. at 821.

To properly plead a *Monell* claim against LVMPD, plaintiff must (1) identify the challenged policy or custom; (2) explain how the policy or custom is deficient; (3) explain how the policy or custom caused the plaintiff harm; and (4) reflect how the policy or custom amounted to deliberate indifference, i.e., show how the deficiency involved was obvious and the constitutional injury was likely to occur. *Harvey v. City of South Lake Tahoe*, 2012 WL 1232420 (E.D. Cal. April 12, 2012). Post *Iqbal*, a plaintiff cannot rely on conclusory factual allegations. Rather, a plaintiff must allege facts which, if true, show that the defendant actually had a constitutionally impermissible policy, practice, or custom. *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). An actionable policy or custom is demonstrated by: (1) an "express policy that, when enforced, causes a constitutional deprivation." *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law;" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality

opinion); or (3) constitutional injury caused by a person with "final policymaking authority." *Id.* at 123.

"The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police. Dept.*, 130 F.3d 162, 167 (5th Cir.1997). "[E]xistence of a policy, without more, is insufficient to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).

### 2. Analysis of DeCastro's *Monell* claim.

First, if the Court has already concluded that the officers did not violate any of the plaintiffs' constitutional rights, then the *Monell* claim fails as a matter of law. *See City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the [constitutional violation] is quite beside the point.")

Second, DeCastro has not identified a specific policy or practice – instead, DeCastro pleads conclusory allegations of the existence of unconstitutional customs, policies, or practices relating to LVMPD's methods of handling individuals that obstruct traffic stops. ECF No. 13, ¶¶ 35, 44. However, there is no identification of a policy, that when enforced, caused the alleged constitutional violation. *See Baxter by Baxer v. Vigo Cnty. School Corp.*, 26 F.3d 728, 735 (9th Cir. 1994). DeCastro instead generally pleads LVMPD trains its officers to carry out unlawful detentions and arrests. ECF No. 13, ¶ 61. However, DeCastro's conclusory assertions are belied by the factual allegations within the First Amended Complaint, namely that the LVMPD Defendants violated LVMPD's formal Use of Force policy and Interactions With the Public policy. ECF No. 13, ¶ 44. DeCastro has failed to plead facts demonstrating any of the following: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law; or (3) constitutional injury caused by a person with "final policymaking authority." Therefore, DeCastro has failed to adequately

plead a specific policy or practice, and DeCastro's *Monell* claim must be dismissed pursuant to FRCP 12(b)(6) accordingly.

### E. 42 U.S.C. §1981-DISCRIMIATION CLAIM (FIFTH CAUSE OF ACTION).

#### 1. 42 U.S.C. §1981 law.

Section 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, national origin, or ancestry. *See* 42 U.S.C. §1981. In order to establish a claim under Section 1981, a plaintiff must allege facts in support of the following elements: (1) Plaintiff is a member of a protected class; (2) Plaintiff attempted to contract for certain services; and (3) Plaintiff was denied the rights to contract for those services. *See, e.g., Lindsey v. SLT Los Angeles*, LLC, 447 F.3d 1138, 1145 (9th Cir.2006). In addition, to survive a motion to dismiss for failure to state a claim, a plaintiff alleging a Section 1981 claim must allege overt acts coupled with some direct evidence that the defendants' conduct was motivated by animus against the protected class. *See Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir.1989). Indeed, "[m]ere knowledge of Plaintiff's ethnicity coupled with a conclusory assertion of discriminatory animus for Defendant's action does not create a plausible inference necessary to survive a 12(b)(6) motion." *Jehan Zeb Mir v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 8355841, at *2 (C.D. Cal. Sept. 19, 2019).

#### 2. Analysis of DeCastro's §1981 claim.

Here, DeCastro's First Amended Complaint does not allege DeCastro was attempting to contract with any Defendant for certain services. *See* ECF No. 13. Moreover, DeCastro does not allege he is a member of a protected class. *Id.* Rather, DeCastro merely alleges that he was discriminated against because of "the color of his skin", political affiliation, and viewpoints. *Id.* at ¶ 69. Nevertheless, even taking DeCastro's allegations as true and drawing reasonable inferences in his favor, DeCastro has failed to allege a 42 U.S.C. §1981 claim upon which relief can be granted because DeCastro was not attempting to contract with Defendants for any service and was not denied the rights to contract for any service.

MAC:14687-456 5105812_2

### F. STATE LAW INVASION OF PRIVACY (NINTH CAUSE OF ACTION).

#### 1. Invasion of privacy law.

"Nevada's common law recognizes the tort of invasion of privacy for unreasonable intrusion upon the seclusion of another. The purpose of the tort is to provide redress for intrusion into a person's reasonable expectation of privacy . . ." *Clark Cty. School Dist. V. Las Vegas Review-Journal*, 429 P.3d 313, 320 (Nev. 2018). The tort of invasion of privacy embraces four different tort actions: "(a) unreasonable intrusion upon the seclusion of another; or (b) appropriation of the other's name or likeness; or (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." Restatement (Second) of Torts § 652A (1977); *PETA v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1278 (Nev. 1995).

#### 2. Analysis of DeCastro's invasion of privacy claim.

DeCastro alleges the defendants "intentionally invaded and intruded into Plaintiff's personal and private affairs by searching his belongings without a warrant or other legal justification." ECF No. 13 at ¶ 89. According to DeCastro's facts he "was searched and transported to the Clark County Jail." *Id.* at ¶40. Thus, according to DeCastro's First Amended Complaint, he was simply searched as a result of his arrest. Thus, legal justification existed for DeCastro's search. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) (holding that search incident to an arrest based on probable cause is reasonable and "requires no additional justification.").

### G. STATE LAW NEGLIGENCE (TENTH CAUSE OF ACTION).

DeCastro's state law negligence cause of action alleges the officers breached the standard of care by negligently arresting him. As set forth above, probable cause existed to arrest DeCastro, and, therefore, the claim fails on that basis alone. In addition, the defendants are statutorily immune from this claim, because determining whether to arrest an individual is a discretionary act protected by NRS 41.032. *See Ortega v. Reyna*, 953 P.2d 18, 23 (Nev. 1998) (concluding that no civil liability attached to a state trooper's decision to

MAC:14687-456 5105812_2

1 arrest a driver for allegedly refusing to sign a traffic ticket because the decision to do so was
2 a discretionary decision requiring personal deliberation and judgment, and was, thus,
3 entitled to immunity under NRS 41.032(2); *Coty v. Washoe Cty.*, 839 P.2d 97, 100 n.7 (Nev.
4 1992) ("the decision of whether to make an arrest is largely discretionary.").

## V. CONCLUSION

LVMPD Defendants bring the instant motion for partial dismissal because DeCastro has not pled facts sufficient to state a claim upon which relief can be granted for the following claims: (1) 42 U.S.C. §1983 Fourth Amendment false arrest and imprisonment claim; (2) Nevada state law false arrest and imprisonment claim; (3) 42 U.S.C. §1983 Fourteenth Amendment claim; (4) 42 U.S.C. §1983 First Amendment claim; (5) 42 U.S.C. §1983 *Monell* municipal liability claim; (6) 42 U.S.C. § 1981 intentional discrimination claim; (7) Nevada state law invasion of privacy claim; and (8) Nevada state law negligence claim. Based on the foregoing, LVMPD Defendants respectfully request the Court grant the instant Motion and dismiss the aforementioned claims.

Dated this 1st day of June, 2023.

MARQUIS AURBACH

By /s/ Craig R. Anderson
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Nicholas M. Adams, Esq.
Nevada Bar No. 15859
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Defendants LVMPD, Ofc. Bourque, Ofc. Dingle; Ofc. Sorenson, Ofc. Sandoval and Ofc. Doolittle

MAC:14687-456 5105812_2

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS LVMPD, OFC. BOURQUE, OFC. DINGLE; OFC. SORENSON, OFC. SANDOVAL AND OFC. DOOLITTLE'S MOTION FOR PARTIAL DISMISSAL** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 1st day of June, 2023.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants: N/A

        /s/ Rosie Wesp
an employee of Marquis Aurbach

MAC:14687-456 5105812_2