UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSE DECASTRO,

Plaintiff,

v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, STATE OF NEVADA,
BRANDEN BOURQUE, JASON TORREY,
C. DINGLE, B. SORENSON, JESSE
SANDOVAL, and OFFICER DOOLITTLE,

Defendants.

Case No. 2:23-cv-00580-APG-EJY

**Order Granting in Part Defendants'
Motion to Dismiss**

[ECF No. 15]

Plaintiff Jose DeCastro sues the State of Nevada, the Las Vegas Metropolitan Police Department (LVMPD), and several LVMPD officers: Branden Bourque, Jason Torrey, C. Dingle, B. Sorenson, Jesse Sandoval, and C. Doolittle.  DeCastro contends the officers unreasonably searched and seized him because he was video recording a police encounter. LVMPD, Bourque, Dingle, Sorenson, Sandoval, and Doolittle move to dismiss all claims except DeCastro's claim for excessive force under the Fourth Amendment and state law claims for assault and battery.  Torrey filed a joinder to the motion.  DeCastro opposes dismissal or alternatively requests leave to amend.  I grant the motion in part, with leave to amend in part.

**I.  BACKGROUND**

In March 2023, DeCastro observed an interaction between defendant Bourque and an unknown woman, whom the complaint refers to as "Jane." ECF No. 13 at 5.  DeCastro began recording the incident on his phone from approximately 10 feet away from Jane and asked her if she was okay. *Id.*  Bourque left his patrol car and told DeCastro to back up, which DeCastro did by moving back another five feet. *Id.* at 6.  Bourque told DeCastro to back up further, but

DeCastro stated that he had a right to be there and was a member of the press. *Id.*  Bourque threatened to detain DeCastro for obstructing and stated that Jane deserved privacy. *Id.* DeCastro repeated that he was a member of the press, at which point Bourque indicated he was detaining DeCastro. *Id.*  Bourque told Jane to leave and then approached DeCastro. *Id.*  Bourque placed DeCastro under arrest, patted him down, and placed him in handcuffs. *Id.*

Three other officers arrived on the scene. *Id.* at 7.  DeCastro continued to protest that the officers had no valid reason to detain or arrest him. *Id.*  According to the amended complaint, "Bourque accused [DeCastro] of being on drugs based on the color of his skin." *Id.*  One of the other officers told DeCastro to look only straight ahead, and when DeCastro did not immediately comply, the officer squeezed his elbow. *Id.*  DeCastro complained about the pain this caused and about the order that he must look in only one direction. *Id.*  The officer squeezing his elbow stated that it was policy to squeeze the elbows of people who did not comply with orders. *Id.* DeCastro alleges that he asked the other officers for help and told them that he would sue them for failing to intervene, but they ignored him. *Id.*  DeCastro claims his elbow was squeezed for 15 minutes before he could not tolerate it further and tore his elbow away from the officer. *Id.* at 7-8.

Torrey, who the amended complaint identifies as a supervisor, arrived on the scene. *Id.* at 8.  According to the amended complaint, Torrey authorized the officers' conduct and told DeCastro that he should be arrested to discourage his behavior. *Id.*  At some point during the encounter, Bourque told DeCastro that First Amendment Auditors (people who record police interactions) had been known to drop their recording device and pull out a weapon to fire at officers. *Id.*

Another officer stated that DeCastro needed to be patted down, even though he had already been patted down by two other officers. *Id.* According to the amended complaint, the officer spread DeCastro's legs uncomfortably wide and struck DeCastro in the testicles. *Id.* DeCastro was then placed in the police car in an overly tight seat belt. *Id.* He was searched and transported to the jail, but he was released about five hours later with citations. *Id.* He claims that defendant Sorenson repeatedly threatened to charge DeCastro based on DeCastro's dog being left in a car during this incident. *Id.* at 8-9. DeCastro alleges that the officers acted the way they did because DeCastro had recently covered stories about LVMPD that went viral on the internet. *Id.* at 10.

Based on these allegations, DeCastro brings claims under 42 U.S.C. § 1983 for unreasonable search and seizure, equal protection, and First Amendment retaliation against the individual officers. He asserts entity and supervisory liability under § 1983 against the State of Nevada, LVMPD, and Torrey. He asserts a claim of intentional race and political viewpoint discrimination under 42 U.S.C. § 1981 against all the officers. He also brings state law claims for assault, battery, false arrest and imprisonment, invasion of privacy, and negligence against all the defendants.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

1    The party seeking summary judgment bears the initial burden of informing the court of

2   the basis for its motion and identifying those portions of the record that demonstrate the absence

3   of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

4   burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

5   genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th

6   Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a

7   genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and

8   reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of

9   Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

10      **A.  Section 1983**

11      "To state a claim under § 1983, the plaintiff must allege a violation of his constitutional

12   rights and show that the defendant's actions were taken under color of state law." *Gritchen v.

13   Collier*, 254 F.3d 807, 812 (9th Cir. 2001).  The parties do not dispute that the defendants acted

14   under color of state law.

15          1.  Fourth Amendment Seizure Based on the Arrest

16      The defendants contend DeCastro's Fourth Amendment unreasonable seizure claim

17   based on the arrest fails because by the amended complaint's allegations, the officers had

18   probable cause to arrest DeCastro for obstruction.  They contend that DeCastro was too close to

19   the scene, was interacting with Jane who had no choice to avoid DeCastro because she was being

20   detained by the police, and would not back up when ordered to do so.  Alternatively, the

21   defendants argue that Bourque is entitled to qualified immunity because no clearly established

22   law put him on notice that it would be unlawful to arrest an individual who interfered in a traffic

23   stop and refused to obey orders to back up.

4

DeCastro responds that the defendants have improperly characterized the amended complaint's allegations, he did not allege that he was still close enough to interfere with Bourque's interaction with Jane, and they had no probable cause to detain or arrest him for the undefined offense of obstruction.  He also argues qualified immunity should be decided at summary judgment, not dismissal.

To allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under 42 U.S.C. § 1983. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  In ruling on a qualified immunity defense, I make a two-pronged inquiry into whether (1) the defendant violated the plaintiff's constitutional right and (2) whether that right was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  I may consider these two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In determining whether the plaintiff has alleged deprivation of a constitutional right, I take as true the facts alleged by the plaintiff. *Sorrels*, 290 F.3d at 969.  The plaintiff bears the burden of showing that the right at issue was clearly established. *Id.*  A right is "clearly established if it has been settled by controlling authority or a robust consensus of cases of persuasive authority that clearly prohibits the officer's conduct in the particular circumstances, with a high degree of specificity." *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023) (simplified).  I "may not define clearly established law at a high level of generality," because that "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (quotation omitted).  However, a plaintiff need not establish that a court

previously declared the defendant's behavior unconstitutional if it would be clear from prior

precedent that the conduct was unlawful. *Blueford v. Prunty*, 108 F.3d 251, 254 (9th Cir. 1997).

Additionally, a plaintiff may meet his burden on the clearly established prong by showing the

defendant's conduct was "such a far cry from what any reasonable . . . official could have

believed was legal that the defendants knew or should have known they were breaking the law."

*Sorrels*, 290 F.3d at 971.

Because qualified immunity is "an immunity from suit rather than a mere defense to

liability," the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity

questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)

(quotation and emphasis omitted).  Consequently, qualified immunity can be resolved at the

motion to dismiss stage if it can be determined, "based on the complaint itself, that qualified

immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016).

The parties dispute whether the officers had probable cause to arrest DeCastro for

obstruction. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009) (stating that

under the Fourth Amendment, police officers must have probable cause to make a warrantless

arrest).  "Probable cause exists when, at the time of arrest, the [officers] know reasonably

trustworthy information sufficient to warrant a prudent person in believing that the accused had

committed or was committing an offense." *Arpin v. Santa Clara Valley Transp. Agency*, 261

F.3d 912, 924-25 (9th Cir. 2001) (quotation omitted).  "[E]ven if the officers were mistaken that

probable cause to arrest existed, they are nonetheless immune from liability if their mistake was

reasonable." *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 969 (9th Cir. 2010)

(simplified).

Even taking the amended complaint's allegations as true, the officers had probable cause to arrest DeCastro for obstruction.  Nevada law makes it a misdemeanor for any person "after due notice" to "willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties." Nev. Rev. Stat. § 197.190.  By the amended complaint's allegations, Bourque was in a police interaction with another member of the public, Jane.  DeCastro started recording the incident on his phone, moved within 10 feet of Jane, and spoke to her.  Although DeCastro obeyed Bourque's first command to back up, Bourque told DeCastro to back up further and threatened to detain DeCastro for obstructing, but DeCastro refused to do so.  Bourque thus had probable cause to believe that after due notice, DeCastro was hindering, delaying, or obstructing Bourque in the discharge of his duties.

Even if the officers lacked probable cause, they were reasonably mistaken that probable cause existed.  DeCastro has pointed to no clearly established law that Bourque could not order him further back from the scene or that any reasonable officer under the circumstances would know that they would violate the Fourth Amendment if they arrested DeCastro for refusing to obey Bourque's command.  I therefore dismiss this claim with prejudice because amendment would be futile. *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend." (quotation omitted)).

### 2.  Equal Protection

The defendants argue that DeCastro has not plausibly alleged that he was treated differently based on the color of his skin, which they note the amended complaint does not identify.  They also argue that being a member of the press is not a protected class for equal

protection purposes.  DeCastro responds that he has adequately alleged a class-of-one equal protection claim.

To state an equal protection violation under § 1983, a plaintiff must allege that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Additionally, a plaintiff can state an equal protection claim even if not based on class discrimination if he claims that he "has been irrationally singled out as a so-called class of one." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) (internal quotation marks omitted). To allege a class-of-one claim, the plaintiff must plausibly allege that the defendants "(1) intentionally (2) treated [him] differently than other similarly situated [persons], (3) without a rational basis." *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).  A "class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).

### a. Race

DeCastro does not plausibly allege an equal protection claim based on race.  DeCastro does not identify his race, and although he alleges that he was asked if he was on drugs based on "the color of his skin," there are no facts to support the allegation that DeCastro's race motivated the question.  As currently pleaded, this allegation appears to be DeCastro's unsupported conclusion about why the question was asked.  However, because it is not clear that amendment would be futile, I grant him leave to amend this claim. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, [d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." (quotation omitted)).

8

## b.  Class of One

The amended complaint also does not plausibly allege a class-of-one theory because DeCastro does not allege that others filmed police interactions within 15 feet, refused officer commands to back up, and were nevertheless not arrested.  He therefore has not plausibly alleged that he was treated differently than others similarly situated.  Because it is not clear that amendment would be futile, I grant DeCastro leave to amend this portion of his equal protection claim.

## c.  Member of the Press/Political Viewpoint

DeCastro does not respond to the defendants' argument that being a member of the press or expressing a particular political viewpoint are not protected classes for equal protection purposes.  He therefore consents to the granting of this portion of the defendants' motion. LR 7-2(d).  However, it does not appear that amendment would be futile. *See Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 94-95 (1972); *OSU Student All. v. Ray*, 699 F.3d 1053, 1067-68 (9th Cir. 2012).  I therefore grant DeCastro leave to amend this portion of his equal protection claim.

### 3.  First Amendment Retaliation

The defendants argue this claim fails because they had probable cause to arrest DeCastro and DeCastro has not plausibly alleged that he was arrested whereas similarly situated individuals who had engaged in protected speech were not.  DeCastro responds that he has adequately alleged that he was arrested whereas similarly situated individuals engaged in the same sort of protected speech had not been arrested.

Police officers cannot retaliate against individuals for exercising their First Amendment rights. *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022).  To state a First Amendment retaliation claim, a plaintiff must allege:

1 (1) he engaged in constitutionally protected activity; (2) as a result, he was
2 subjected to adverse action by the defendant that would chill a person of ordinary
 firmness from continuing to engage in the protected activity; and (3) there was a
3 substantial causal relationship between the constitutionally protected activity and
 the adverse action.

4 *Id.* (quotation omitted).

5   A plaintiff alleging an arrest was retaliatory under the First Amendment typically must

6 allege the officer lacked probable cause. *Id.* at 61-62.  However, a plaintiff may state a First

7 Amendment retaliatory arrest claim even where the officer had probable cause if he can also

8 allege officers "typically exercise their discretion not to" arrest under similar circumstances. *Id.*

9 at 62 (quoting *Nieves v. Bartlett*, 587 U.S. ----, 139 S. Ct. 1715, 1727 (2019)).  This exception

10 applies only "when a plaintiff presents objective evidence that he was arrested when otherwise

11 similarly situated individuals not engaged in the same sort of protected speech had not been."

12 *Nieves*, 139 S. Ct. at 1727.

13   As discussed above, the officers had probable cause to arrest DeCastro.  He therefore

14 must plausibly allege facts that officers typically exercise their discretion not to arrest under

15 similar circumstances involving individuals who are not recording a police encounter or were not

16 protesting their own arrest.  He has not done so.  Consequently, I dismiss this claim with leave to

17 amend.

18      4.  Entity and Supervisory Liability

19   The defendants argue that if the officers did not violate any constitutional rights, then the

20 entity and supervisory claims fail as well.  Alternatively, they argue that DeCastro's allegations

21 are conclusory and contradict entity liability because he alleges the individual officers violated

22 LVMPD's policies during their interaction with him.  DeCastro responds that he has adequately

23 identified the policies, how they were deficient, that they were deliberately indifferent to his

1  rights, and that he was injured as a result.  He also notes that the motion made no specific

2  argument about his supervisory liability claim against Torrey.

3                                    *a.  Entity Liability*

4            There is no respondeat superior liability under § 1983. *Jackson v. Barnes*, 749 F.3d 755,

5  762 (9th Cir. 2014).  Rather, to impose liability on an entity like LVMPD, a plaintiff must allege:

6  (1) that he was deprived of a constitutional right; (2) the entity had a policy; (3) the policy

7  amounts to deliberate indifference to his constitutional right; and (4) "the policy is the moving

8  force behind the constitutional violation." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir.

9  2021).  A plaintiff can show a policy through (1) an "expressly adopted official policy" or (2) a

10 "longstanding practice or custom" that is so widespread as to amount to an official policy.[1] *Id.*

11 This second means of showing a policy cannot be based on "isolated or sporadic incidents."

12 *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 884 (9th Cir. 2022) (quotation omitted).

13 Rather, the plaintiff must plausibly allege "practices of sufficient duration, frequency and

14 consistency that the conduct has become a traditional method of carrying out policy." *Id.*

15 (quotation omitted).

16           The amended complaint identifies various policies but only in conclusory terms without

17 any plausible factual basis to assert that these policies or practices exist.  To the extent that

18 DeCastro is relying on what happened in his own situation to support a custom or practice, a

19 single incident is insufficient to show a widespread custom or practice.  I therefore dismiss the

20 entity liability claim against LVMPD.  However, I grant DeCastro leave to amend.

21

22 [1] A plaintiff also can satisfy the policy element "when the individual who committed the
   constitutional tort was an official with final policy-making authority or such an official ratified a

23 subordinate's unconstitutional decision or action and the basis for it." *Id.* at 974.  DeCastro does
   not appear to be relying on this theory, but if I misunderstand his amended complaint, he has
   leave to amend to add facts to support this theory if facts exist to do so.

b.  *Supervisory Liability*

The defendants' motion does not specifically address supervisory liability against Torrey, instead grouping supervisory liability with the entity liability analysis.  However, supervisory liability is different than entity liability. *See Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) (stating that a supervisor may be liable if he participated in the violation, directed it, or knew of his subordinate's violation and failed to act to prevent it).  Consequently, the motion does not sufficiently support dismissal of this claim.  But because I am granting DeCastro leave to amend some of his other claims, I also grant him leave to add factual allegations to further support his supervisory liability claim against Torrey if he so chooses.

**B.  Section 1981**

The defendants argue that DeCastro has not alleged he is member of a protected class or that he attempted to contract with the defendants.  DeCastro responds that police services were not provided to him in an equal way and that he was not able to use the parking lot or restaurant where the incident took place.

Section 1981 prohibits race discrimination in making and enforcing contracts.  This "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Flores v. City of Westminster*, 873 F.3d 739, 752 (9th Cir. 2017) (quotation omitted).

DeCastro has not alleged his race or any non-conclusory facts that he was subject to race discrimination.  He also does not allege a contract.  He cites to no authority for the proposition that members of the public individually contract for police services.  Nor has he alleged that he entered into a contract to use the parking lot or eat at the restaurant, or that the officers intentionally interfered with his use of the parking lot or restaurant based on his race.  I therefore

1 dismiss this claim.  Although it appears highly unlikely that DeCastro will be able to plausibly

2 allege a claim under § 1981, I grant him leave to amend.  However, I direct DeCastro to the

3 Ninth Circuit's recent decision in *Yoshikawa v. Seguirant*, 74 F.4th 1042 (9th Cir. 2023) (en

4 banc).  Under that case, a "plaintiff seeking to enforce rights secured by § 1981 against a state

5 actor must bring a cause of action under § 1983." *Id.* at 1047.  Consequently, if DeCastro amends

6 this claim, he must recast it as one brought under § 1983 for a violation of § 1981.

7    **C.  State Law Claims**

8        1.  False Imprisonment

9        The defendants contend this claim fails because the officers had probable cause to arrest

10 DeCastro for obstruction.  Alternatively, the defendants argue that they are entitled to

11 discretionary immunity.  DeCastro repeats his arguments as to why probable cause did not exist.

12 He also argues that discretionary immunity does not apply because the case on which the

13 defendants rely is distinguishable.

14        DeCastro has not plausibly alleged a false arrest claim because, as discussed above, the

15 officers had probable cause to arrest him. *See Grover v. Clark Cnty.*, 625 P.2d 85, 86 (Nev.

16 1981); *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981).  Additionally, the defendants

17 would be entitled to discretionary immunity under Nevada law because the decision to arrest

18 DeCastro was discretionary and based on policy considerations of enforcing the criminal laws.

19 *See Gonzalez v. Las Vegas Metro. Police Dep't*, No. 61120, 2013 WL 7158415, at *2-3 (Nev.

20 Nov. 21, 2013) (holding that an officer's decision to arrest based on a matched description in a

21 facially valid warrant was entitled to discretionary immunity); *Martinez v. Maruszczak*, 168 P.3d

22 720, 729 (Nev. 2007) (en banc) (holding that discretionary immunity applies if the officer's

23 decision "(1) involve[d] an element of individual judgment or choice and (2) [was] based on

considerations of social, economic, or political policy").  I therefore dismiss the false

imprisonment claim with prejudice.

### 2.  Invasion of Privacy

This claim is based on the officers searching DeCastro without legal justification. ECF

No. 13 at 20.  The defendants argue this claim fails because it is based on a search incident to his

arrest, which was lawful.  DeCastro responds that there was no probable cause for the arrest, and

thus the search was not lawful.  As this claim also turns on whether there was probable cause, I

dismiss it with prejudice.

### 3.  Negligence

The defendants argue this claim fails because they had probable cause to arrest DeCastro

and because they have discretionary immunity.  DeCastro responds that the defendants overlook

his claims related to vicarious liability and that discretionary immunity does not apply to

individual officers.

In the amended complaint, DeCastro alleges the defendants were negligent by not using

due care in arresting him, retaliating against him, using force, and engaging in biased policing.

ECF No. 13 at 20-21.  To the extent this claim is based on the arrest or search, I dismiss it

because the officers had probable cause and would have discretionary immunity.  As for biased

policing, DeCastro has not plausibly alleged either racial discrimination or First Amendment

retaliation, so I dismiss this portion of the claim, with leave to amend.  But I do not dismiss the

negligence claim to the extent it is based on the officers' use of excessive force because the

defendants did not move to dismiss any claims based on their use of force.

////

////

4.  State Constitutional Claims

In his response to the motion to dismiss, DeCastro asserts that he has brought state constitutional claims. ECF No. 27 at 5-6.  But no such claims are pleaded. ECF No. 13.  Because I am granting DeCastro leave to amend some claims, I grant him leave to add state constitutional claims. *See Mack v. Williams*, 522 P.3d 434, 450 (Nev. 2022) (en banc).  I do not grant DeCastro leave to add claims for unreasonable search or seizure based on his arrest under the Nevada Constitution because the officers had probable cause.  But I do not preclude DeCastro from asserting an unreasonable seizure claim based on the officers' alleged use of excessive force while effecting that arrest.

**D.  Amendment**

To assist DeCastro, who is pro se, in crafting an amended complaint, I advise him that his second amended complaint must contain "(1) a short and plain statement of the grounds for the court's jurisdiction," "(2) a short and plain statement of the claim showing that [he] is entitled to relief," and "(3) a demand for the relief sought." Fed. R. Civ. P. 8(a).  The second amended complaint must be a complete document in and of itself and will entirely supersede the amended complaint.  Any allegations, parties, or requests for relief from prior papers that are not carried forward in the second amended complaint will no longer be before the court.  DeCastro should support each claim with factual allegations because all complaints "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The second amended complaint should set forth the claims in short and plain terms, simply, concisely, and directly.  I encourage DeCastro to review the defendants' motion to dismiss in crafting a second amended complaint to

avoid the defendants making similar arguments about alleged infirmities in his second amended complaint.

## III.  CONCLUSION

I THEREFORE ORDER that the defendants' motion to dismiss **(ECF No. 15)** is GRANTED in part.  The following claims are dismissed with prejudice:

- Fourth Amendment unreasonable search and seizure based on the arrest and search;

- False imprisonment

- Invasion of privacy

- Negligence based on the arrest and search.

The following claims are dismissed without prejudice and with leave to amend:

- Equal Protection

- First Amendment retaliation

- Entity liability under § 1983

- Section 1981

- Negligence based on biased policing.

However, the motion is denied as to the supervisory liability claim and it remains pending.  All claims that are based on the alleged use of excessive force also remain pending.

I FURTHER ORDER that plaintiff Jose DeCastro may file an amended complaint consistent with this order by November 22, 2023.  If DeCastro does not file an amended complaint by that date, then the case will proceed on his claims for Fourth Amendment excessive force, supervisory liability, assault, battery, and negligence based on excessive force.

DATED THIS 23rd day of October, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE