Jose DeCastro
1258 Franklin St.
Santa Monica, CA 90404
(310) 963-2445
chille@situationcreator.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

JOSE DECASTRO                                    )   Case No.: 2:23-CV-00580
                                                 )
                    Plaintiff,                   )   **SECOND AMENDED COMPLAINT**
                                                 )   **FOR DAMAGES AND DEMAND FOR**
v.                                               )   **JURY TRIAL**
                                                 )
LAS VEGAS METROPOLITAN POLICE                    )   (Leave Granted 10/24/2023 ECF No. 45)
DEPARTMENT; STATE OF NEVADA;                     )
BRANDEN BOURQUE; JESSE                           )   **28 U.S. Code § 2403 Certification**
SANDOVAL; ERLAND TORREY;                         )   **Requested by Clerk** RE NRS 197.190
CHADLY DINGLE; BRANDON                           )
SORENSON; CLINTON DOOLITTLE;                     )
CITCO; and DOES 1 to 50, inclusive              )
                                                 )
                    Defendants.                  )
                                                 )
_____          )


## INTRODUCTION

1. Plaintiff, a member of the press who specifically records police interactions was

recording a police officer interaction outside of a Rollin Smoke BBQ in Southwest Las Vegas,

Nevada. Five Las Vegas Metropolitan Police officers, including the officer that he was

recording, under the guise of protecting the privacy of another citizen in public, without

reasonable suspicion that the Plaintiff was involved in any criminal activity, did interfere with,

and rob Plaintiff of his liberties while he was in a place that he was lawfully allowed to be, while

1  Plaintiff was performing constitutionally protected activities. The officers detained Plaintiff,

2  handcuffed, arrested him without a warrant, battered, tortured, forced him into the back of a

3  patrol vehicle, and searched him and his possessions. None of the defendants intervened to

4  prevent the unreasonable detention, arrest, battery, torture, or searches.

5       2. Sadly, the abusive treatment Plaintiff endured for merely asserting his rights and

6  recording the police while brown is not unusual or surprising. Although the citizens and

7  legislators of Nevada want police reform, these defendants think that they can continue their old

8  ways. These defendants continue to enforce their feelings instead of the law and continue to

9  force respect instead of earning it. This civil rights action seeks to vindicate Plaintiff's

10  constitutional and statutory rights and hold the officers and their department accountable for

11  biased policing practices and the policies (or absence of policies) that resulted in these practices.

12                                  **PARTIES**

13       3. Plaintiff Jose DeCastro ("DeCastro") is an adult over the age of eighteen, a member of

14  the press, and at all times relevant hereto, was and is a resident of the State of California.

15  DeCastro is a non-white person of color of Colombian-Jewish descent.

16       4. Defendant Las Vegas Metropolitan Police Department ("LVMPD") is a quasi-

17  municipal entity and a political subdivision of the State of Nevada created and regulated by NRS

18  Ch. 258 and at all times relevant hereto, employed all of the individually named Defendants.

19       5. Defendant State of Nevada ("Nevada") is a government entity and at all times relevant

20  hereto, operates, oversees, and manages Defendant LVMPD under the color of state law.

21       6. Defendant Branden Bourque ("Bourque") is, and at all relevant times was, an officer

22  with the LVMPD. In doing the things herein alleged, Bourque was acting under the color of state

23  law and in the course and scope of his employment with Nevada. Bourque is sued in his

individual capacity.

7. Defendant Erland Torrey ("Torrey") is, and at all relevant times was, a supervisor with the LVMPD. In doing the things herein alleged, Torrey was acting under color of state law and in the course and scope of his employment with Nevada. Torrey is sued in his individual capacity, including in his capacity as a supervisor.

8. Defendant Chadly Dingle ("Dingle") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Dingle was acting under the color of state law and in the course and scope of his employment with Nevada. Dingle is sued in his individual capacity.

9. Defendant Brandon Sorenson ("Sorenson") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Sorenson was acting under the color of state law and in the course and scope of his employment with Nevada. Sorenson is sued in his individual capacity.

10. Defendant Jesse Sandoval ("Sandoval") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Sandoval was acting under the color of state law and in the course and scope of his employment with Nevada. Sandoval is sued in his individual capacity.

11. Defendant Clinton Doolittle ("Doolittle") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Doolittle was acting under the color of state law and in the course and scope of his employment with Nevada. Doolittle is sued in his individual capacity.

12. LVMPD Officer Citco ("Citco") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Doolittle was acting under the color of state law and

1  in the course and scope of his employment with Nevada. Doolittle is sued in his individual

2  capacity. Plaintiff does not know the full true name of Cisco, but he is an LVMPD officer that

3  identified himself as "Cisco 17673" at the incident in the January 14, 2023 video.

4      13. The true names and capacities, whether individual, corporate, associate, or otherwise,

5  of Defendants sued herein as Does 1-50, inclusive, are unknown to Plaintiff, who therefore sues

6  said defendants by such fictitious names. Plaintiff will amend this Complaint to show the true

7  names and capacities if and when the same are ascertained. Plaintiff is informed and believes,

8  and thereon alleges, that said Defendants, and each of them, are responsible in some manner for

9  Plaintiff's damages as herein alleged. Each reference in this complaint to "defendant",

10  "defendants", "Defendants", or a specifically named defendant also refers to all "Doe"

11  defendants. Does 1 – 5 are believed to be officers of the LVMPD, Does 6 – 25 are believed to be

12  employees of the LVMPD, Does 26 – 50 are believed to be employees of the state of Nevada.

13      14. Plaintiff is informed and believes and thereon alleges that each of the Defendants

14  sued herein was negligently, wrongfully, and otherwise responsible in some manner for the

15  events and happenings as hereinafter described, and proximately caused injuries and damages to

16  Plaintiff. Further, one or more Doe Defendants was at all material times responsible for the

17  hiring, training, supervision, and discipline of other defendants, including the individually named

18  and Doe Defendants.

19      15. Plaintiff is informed and believes and thereon alleges that at all times herein

20  mentioned each of the Defendants, including all defendants sued under fictitious names, was the

21  agent and/or employee of each of the other Defendants, and in doing the things hereinafter

22  alleged was acting within the course and scope of such agency and employment.

23      16. Plaintiff is informed and believes and thereon alleges that at all times herein

4

mentioned each of the Defendants, including all defendants sued under fictitious names, was the agent and/or employee of each of the other Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

17. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, an/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged. At all material times, each Defendant was an integral participant, jointly engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiff's constitutional rights and other actionable harm.

18. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of Nevada.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because it arises under the Constitution and laws of the United States, as it is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of a citizen of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, and 1988. This Court has supplemental jurisdiction over the claims arising under Nevada law pursuant to 28 U.S.C § 1367(a).

20. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because the events

1  giving rise to the claims occurred in the County of Clark in Nevada which is in the U.S. District

2  of Nevada.

3  **GENERAL FACTUAL ALLEGATIONS**

4  21. On October 3, 2018, the Las Vegas Police Protective Association, of which

5  Defendants are members, released a training video titled "Videotaping Officers and Being

6  Legally Smart". In the video, David Roger ("Roger"), General Counsel, says, "There are also

7  people that want to bait officers into arresting them and scoring big settlements in civil cases."

8  Roger further says, "Don't take the bait. Be legally careful. If they aren't obstructing your

9  investigation; if they're not on top of you; if they're not putting you in danger; they're merely

10  video taping you, you have no basis to arrest them. If they aren't obstructing your investigation,

11  then try to ignore them. I understand it's difficult." He goes on to say "You have an absolute

12  right to tell them to stay out of the immediate area so that they are not a distraction or danger to

13  you. However, if they walk a distance away and they continue video taping you, there's nothing

14  legally you can do, and if you force the issue and arrest them, you could be sued civilly."

15  22. Nevada passed police reform statute NRS 171.1233 in 2020, preventing police

16  officers from interfering with a person's recording of a law enforcement activity, including,

17  without limitation, by: intentionally preventing or attempting to prevent the person from

18  recording a law enforcement activity, or threatening the person for recording a law enforcement

19  activity, or commanding that the person cease recording a law enforcement activity when the

20  person was nevertheless authorized by law to record the law enforcement activity, or stopping,

21  seizing or searching the person because he or she recorded a law enforcement activity, or

22  unlawfully seizing property or instruments used by the person to record a law enforcement

23  activity, unlawfully destroying or seizing any recorded image of a law enforcement activity or

copying such a recording of a law enforcement activity without the consent of the person who recorded it or obtaining approval from an appropriate court.

23. On February 25, 2021, the Las Vegas Police Protective Association, of which Defendants are members, released an update to the above training video titled "Recording Officers". In the video, Roger says, "In our last special session, the legislature passed NRS 171.1233 as part of police reform. And this statute guarantees citizens an absolute right to videotape police officers, and police officers are not allowed to do anything to stop their recording or to seize their cameras. With one exception. And the exception is that a person recording your activity can not interfere with your investigation." He goes on to say, "Really that means, that they can't physically get within your space which jeopardizes your safety or another citizen's safety." He finishes with "So the takeaway from this is obviously if people are videotaping you, you can't do anything to them. However, your safety, a citizen's safety comes first, and you can order a person to give you more space in order for you to do your job."

24. The LVMPD has a written "Misdemeanor Arrest Policy" that a person will not be arrested for a misdemeanor unless "There is a reasonable cause to believe that the violation for which the person is arrested will continue. However, an arrest shall not be made in lieu of a citation on the basis of a mere speculation that the person might commit a new crime upon release, whether of the same or of a different nature, i.e., offense such as shoplifting may be repeated at some time in the future, but there is no reasonable certainty that this will occur. Therefore, in the absence of other exceptions to the citation criteria, shoplifters and most other misdemeanants will be cited."

25. The LVMPD has a written "De-escalation Policy" that says, "Officers will make efforts to control a confrontation and not allow it to escalate." Additionally, Nevada passed

1   police reform statute NRS 171.1455 in 2020, requiring de-escalation techniques and alternatives

2   to the use of force whenever possible.

3       26. The LVMPD has a written "Use of Force Policy" that says officers will only use a

4   level of force that is objectively reasonable to safely accomplish a lawful purpose and to

5   continuously reassess their response and adjust any use of force accordingly based upon the level

6   of resistance encountered. Further, any officer present, and observing another officer using force

7   that is clearly beyond what is justified or objectively reasonable under the circumstances will

8   intercede to prevent the use of unreasonable force. Additionally, Nevada passed police reform

9   statute NRS 193.355 in 2020, requiring officers to intervene when a "peace officer observes the

10   use of physical force that is not justified or reasonably should have observed the use of physical

11   force that is not justified".

12       27. The LVMPD has a written "Interactions with Public Policy" that says "Members will

13   be courteous, patient and respectful in dealing with the public. Members should avoid answering

14   questions in a short and abrupt manner and should not use harsh, course, violent, profane,

15   insolent, indecent, suggestive, sarcastic, or insulting language. Members should maintain

16   professional demeanor regardless of the provocation."

17       28. The Nevada Supreme Court ended qualified immunity as a defense to violations of

18   the state constitution in *Mack v. Williams*, 522 P.3d 434 (Nev. 2022).

19       29. The Nevada courts have found that discretionary immunity under state law does not

20   apply to decisions regarding the amount of force to use or acts taken in the violation of the

21   constitution. *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F. Supp. 3d 999, 1013 (D.

22   Nev. 2014); *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2011); *Nurse v. United*

23   *States*, 226 F.3d 996, 1002 (9th Cir. 2000); *Falline v. GNLV Corp.*, 107 Nev. 1004, 823 P.2d

888, 892 n.3 (Nev. 1991); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1060 (9th Cir. 2007).

30. As of 2017, the constitutional right to be free from retaliation while recording police activity in a public place has been clearly established in the Ninth Circuit. *Redmond v. San Jose Police Dep't*, No. 14-cv-02345-BLF, 2017 U.S. Dist. LEXIS 190087 (N.D. Cal. Nov. 16, 2017); *Naveed v. City of San Jose*, No. 15-cv-05298-PSG, 2016 U.S. Dist. LEXIS 67570 (N.D. Cal. May 23, 2016); *Addison v. City of Baker City*, 758 F. App'x 582, 583 (9th Cir. 2018); *Askins v. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018).

31. As of 1995, the constitutional right to film matters of public interest has been clearly established in the Ninth Circuit. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).

32. As of 1990, the constitutional right to be free from retaliation for their protected speech has been clearly established in the Ninth Circuit. *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013) (citing *Duran v. City of Douglas*, Ariz., 904 F.2d 1372 (9th Cir. 1990).

33. As of 1992, the constitutional right to be free from a warrantless arrest without probable cause has been clearly established in the Ninth Circuit. *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992); *Gasho v. United States*, 39 F.3d 1420, 1429 (9th Cir. 1994); *Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008).

34. Dismissal based on qualified immunity is not appropriate unless it can be determined based on the complaint alone that qualified immunity applies. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016). The qualified immunity inquiry is a fact-specific analysis and requires knowledge of all of the material facts of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (test set forth in *Saucier* distinguished in *Pearson*, 555 U.S. at 236). Qualified immunity is usually inappropriate at the dismissal stage, even when construing the facts in the light most favorable to the non-moving party, because the

1   court is often without sufficient facts to make an appropriate inquiry. See *Morley v. Walker*, 175

2   F.3d 756, 761 (9th Cir. 1999) (finding dismissal based on qualified immunity inappropriate

3   pursuant to Fed. R. Civ. P. 12(b)(6)).

4       35. Arizona Revised Statutes § 13-3732, a statute in Arizona making it illegal to record

5   police within 8 feet, was overturned on July 21, 2023 citing infringement against a clearly

6   established right to film police, specifically that it is not content neutral. The Court had already

7   issued an injunction against enforcement of the law as of September, 2022. *Ariz. Broads. Ass'n v.*

8   *Brnovich*, 626 F. Supp. 3d 1102 (D. Ariz. 2022).

9       36. On January 14, 2023, Plaintiff premiered a YouTube video where he recorded a

10  police interaction in a publicly accessible private parking lot between a man and his passenger,

11  who are both people of color, and approximately five LVMPD officers. Officer "Cisco" was

12  aware of Plaintiff's camera and stood blocking the camera, in violation of Plaintiff's rights and

13  NRS 171.1233. The officers were searching the man's truck because he'd allegedly not stopped

14  long enough at a red light before turning right. The officers detained the driver and his passenger

15  for over 40 minutes, where the police kept asking unrelated questions. Plaintiff never stood

16  between a police vehicle and anyone detained nor between a police officer and anyone detained.

17  Plaintiff was not arrested. It can be inferred based on past police conduct that the two men of

18  color were not arrested due to Plaintiff recording the interaction. On my channel, this video got

19  over 250,000 views. On larger channels, the video was viewed over 1,000,000 times.

20      37. Since January 14, 2023, LVMPD officers communicated with each other about

21  Plaintiff's video and Plaintiff's whereabouts, as evidenced by multiple incidents of LVMPD

22  officers asking cop watchers if they were Plaintiff. Some of these incidents have been recorded

23  by cop watchers and published on YouTube.

1    38. The tracking and searching for Plaintiff is circumstantial evidence that justifies an

2  inference, and discovery will reveal, that Defendants conspired to unlawfully arrest and harm

3  Plaintiff.

4    39. On February 25, 2023, Plaintiff premiered a YouTube video where he recorded a

5  police interaction in a publicly accessible private Walmart parking lot at 4505 W. Charleston

6  Blvd., Las Vegas, Nevada. The interaction was between two police officers and a woman in

7  handcuffs. One of the officers radioed in "Control, be advised, we have a first amendment

8  auditor out here at our location." Plaintiff never came between a police vehicle and anyone

9  detained nor between a police officer and anyone detained. Plaintiff was asked to step back, and

10  Plaintiff stepped back. Additionally, the woman in handcuffs said that she wanted to make a

11  statement for the camera and explained how she offered to help a homeless person in the parking

12  lot who was dehydrated and then was detained in handcuffs for it. Additionally, a paramedic

13  politely asked Plaintiff to step away so that he could have a private conversation with his patient,

14  the dehydrated homeless person. Plaintiff consented and moved away. Plaintiff was not arrested,

15  even though he said to Officer E. Lajoie "Shoo, little doggie." There were multiple people in the

16  parking lot near the officers, including the woman in handcuffs, that were not arrested. It can be

17  inferred based on past police conduct that the innocent woman in handcuffs was not arrested due

18  to Plaintiff recording the interaction.

19    40. At approximately 4:30pm on March 15, 2023, Plaintiff was in a publicly accessible

20  private parking lot outside of a Rollin Smoke BBQ at 4115 S. Grand Canyon Dr., Las Vegas,

21  Nevada. Plaintiff witnessed what looked to him like a consensual police interaction between a

22  woman and Bourque. Bourque was sitting in a Ford police interceptor with the LVMPD logo on

23  it and the number 19084. Plaintiff does not know the woman's name but will call her "Jane".

41. Plaintiff started recording the consensual police interaction on one of his phones, making sure not to become between Bourque and Jane or the police interceptor and Jane.

42. Within six seconds, Bourque left his vehicle, got Plaintiff's attention, and told Plaintiff to back up, and Plaintiff stepped back.

43. Bourque said "She deserves privacy. This is not your business." Bourque had stopped giving Plaintiff commands, and Plaintiff inferred that Bourque had conceded and was now happy with the amount of space that he had to work. Plaintiff said, "I'm a member of the press, go get in your car and do your job little doggy."

44. Unlike Officer E. Lajoie, Plaintiff witnessed, and the camera shows that Bourque became visibly upset and came after Plaintiff. Based on the fact that Plaintiff had just expressed his speech, it can be reasonably inferred that it was in direct retaliation for Bourque's hurt feelings due to Plaintiff's exercise of his free speech rights. Bourque said "You are being detained" to the Plaintiff.

45. Bourque told Jane to leave and continued walking aggressively toward Plaintiff as if to use force, and Plaintiff took a step back to prevent any physical confrontation.

46. Plaintiff continued to protest Bourque putting his hands on him unnecessarily, but Bourque was patently interested in manhandling Plaintiff in some way, and said "Listen, I *am* going to put my hands on you." Bourque did indeed intentionally and offensively contact Plaintiff with his hands.

47. While Plaintiff was firm in his verbal tone, he never screamed or yelled, he never threatened Bourque, and never said or did anything that would have led a reasonable law enforcement officer to fear for their safety or to suspect that Plaintiff committed, or was planning on committing, any crime. There were multiple people in the parking lot closer to Bourque than

1  Plaintiff was that were not arrested. Plaintiff observed no evidence that Bourque was engaged in

2  the discharge of official powers or duties. Plaintiff was not given any due notice.

3      48. Plaintiff asked for a supervisor and while continuing to protest against illegal

4  detainment and against the use of unnecessary force, Plaintiff offered to walk to Bourque's

5  vehicle which seemed to be where the officer wanted to illegally detain Plaintiff. As soon as

6  Plaintiff reached the vehicle, he was forcefully grabbed, even though Plaintiff was cooperating

7  fully, and told that he was being placed under arrest. Plaintiff witnessed no evidence of an

8  investigation during the detention. Plaintiff was well over 8 feet away, the distance that a Court

9  in this circuit (¶ 35) ruled was as a distance within the clearly established right to be when

10  recording police, and Plaintiff was much further away than 8 feet.

11      49. To make it clear to the illogical, failing to move back an arbitrary distance, when a

12  member of the press has the right to be close enough to gather the news, is not obstruction. Being

13  too close to an officer so that he can't safely perform his duties could be obstruction, given

14  willfulness and due notice, but that did not occur and there is and will be no evidence of it. If

15  Plaintiff obstructed by being too close for the officer to safely perform his duties, maintaining

16  that minimal distance is the action of the obstruction, not failing to move back further. Similarly

17  situated individuals would be ones at a similar distance, not necessarily ones that failed to move

18  back further. Although when an officer makes it clear to a person that there is a perimeter that

19  the officer needs that person outside of to safely conduct an investigation, and tells that person

20  that they will be arrested if they don't leave that perimeter, it may be due notice. However, when

21  an officer tells a person that they will be arrested for obstruction if they don't respect the privacy

22  of someone in public, that is not due notice. That is abuse of process.

23      50. Plaintiff was arrested without probable cause and without a warrant, in violation of

1  the misdemeanor arrest policy of the LVMPD, and immediately after exercising his first

2  amendment rights, showing a direct causal relationship. Additionally, Bourque did not use any

3  de-escalation, in violation of LVMPD policy, even if he felt provoked, according to the LVMPD

4  interactions with public policy.

5      51. Plaintiff was patted down and placed in handcuffs. Plaintiff made Defendants aware

6  of a prior shoulder injury, and Plaintiff was put in two pairs of handcuffs to adhere to his medical

7  needs. Although later during the encounter, Sandoval would yank and squeeze forcefully on

8  Plaintiff's arm, over and over and over, hurting his arm and shoulder unnecessarily.

9      52. Plaintiff was soon surrounded by four different police officers, now Defendants,

10  where he continued to protest that they had no valid reason to detain or arrest him. The video of

11  the incident shows Bourque ask Plaintiff if he is on drugs where Bourque says that he is asking

12  because of the color of Plaintiff's skin. Plaintiff said that he did not have a criminal record and

13  Bourque entered his vehicle to type up a report.

14      53. Soon after, Sandoval demanded that Plaintiff look only straight ahead and when

15  Plaintiff did not immediately comply, Sandoval began squeezing Plaintiff's elbow, placing

16  pressure on Plaintiff's ulnar nerve. Specifically, Sandoval intentionally and deliberately and

17  needlessly pressed his thumb into Platiniff's ulnar nerve to cause pain and permanent damage.

18      54. Plaintiff complained about the pain and protested against needing to look in a specific

19  direction to have an arrest effectuated on him.

20      55. Sandoval said that it was within their policy to use pain compliance on ulnar nerves

21  for people in their custody that did not comply with random commands that would grant

22  complete dominion over another human being; from which way Plaintiff's head could turn, to his

23  right to use speech, or when he can blink.

56. Plaintiff did experience severe pain and paresthesia from the compression of his ulnar nerve by Sandoval.

57. When Plaintiff pleaded for help from the surrounding Defendant officers, they completely ignored Plaintiff. Plaintiff told them, "You're going to be sued for Failing to intervene. I'm sitting here telling you this man is torturing me. Please ask him to stop." Plaintiff was ignored by all sworn peace officers on the scene, who are now Defendants.

58. Plaintiff's elbow was squeezed for approximately fifteen (15) minutes in total before Plaintiff's pain tolerance forced him to move his elbow away from Sandoval.

59. At some point, Defendant Torrey, the supervisor, arrived on the scene and authorized the Defendants' behavior as being within their policy. Torrey then stated that Plaintiff should be arrested to discourage Plaintiff's behavior, which included recording the police and exercising free speech.

60. All the Defendants on the scene knew that there was no reasonable suspicion or probable cause to suspect Plaintiff of any crimes, but wrongfully believed that they were justified in detaining Plaintiff for assertion of his civil rights and for refusing to cooperate with the Defendants' feelings and ridiculous unreasonable demands on a law-abiding citizen based simply on their archaic abusive police practices and their code of silence, and not reason or statute.

61. Bourque engaged in profiling against members of the press when he stated that First Amendment Auditors are known for dropping their phone, pulling out guns and shooting at officers, which is preposterous and provably false.

62. Sandoval said that Plaintiff needed to be patted down again. Plaintiff protested that he'd already been patted down by two officers. Sandoval then spread Plaintiff's legs uncomfortably wide and purposely and maliciously, and with significant force, struck Plaintiff in

the testicles with what felt like a closed fist. Plaintiff yelled in pain, "I can't believe you just hit me in the nuts!"

63. Plaintiff was forcibly placed into a police vehicle by Defendants who pulled the seat belt as tight as they could, knocking the air out of the Plaintiff. Plaintiff again pleaded for help from surrounding officers, but he was ignored again.

64. Sorenson made statements that attempted to get Plaintiff arrested for NRS 202.487 for having his dog in a vehicle, even though Plaintiff's animal was not in unsafe conditions. Plaintiff was searched and transported to the Clark County Jail where he would not be formally charged, but only released with citations, approximately five hours after the incident began.

65. The officers' actions left Plaintiff in the position where he had to pay for a ride back to his vehicle and did pay monies for such a ride. On the arm that Defendant squeezed, Plaintiff was left with a severe bruise in his elbow area, continues to have paresthesia in his little finger and thumb, and requires ongoing medical care. Almost a month after the incident, Sorenson continued to harass Plaintiff by warning him against violating NRS 202.487 although Plaintiff has never left his pet in unsafe conditions.

66. As a result of the Defendants' actions, Plaintiff suffered a deprivation of his rights and liberties, sustained physical injuries, and suffered physical pain, mental suffering, emotional distress, fear, embarrassment, and other general damages in an amount to be proven at trial.

67. At no time during the encounter with Defendants did Plaintiff do or say anything that would put a reasonable officer in fear of his or her safety.

68. Following the incident, Bourque claimed in a written incident report that the reason why Plaintiff was arrested was for engaging with a detained driver, refusing to give an officer reasonable space to work, and refusing to obey lawful commands after being advised that he was

1    detained. A detained person does not have to obey random commands and their rights are only

2    limited as to leaving. A police officer's feelings about lawful behavior must be weighed against a

3    citizen's rights. The Defendants' behavior did not follow LVMPD's Use of Force policy and

4    Interactions With the Public policy.

5         69. The written report by Bourque also claimed:

6            Because DeCastro was physically uncooperative with officers, admitted to being
            in trouble numerous times in the past for similar reasons, and would not even

7            allow officers to explain to him why he was detained or placed in handcuffs, we
            determined that he was not a good candidate for a citation and release. Because of

8            DeCastro's actions it was clear that his criminal behavior would continue in the
            area if police did not act.

9

10         70. Plaintiff did not admit to "being in trouble numerous times" but said the opposite.

11    The facts in the incident report contradict the video and were either fabricated or merely

12    pretextual. Even if the facts set forth in Defendant Bourque's report were true (which the video

13    evidence disputes), those facts still did not give rise to a reasonable suspicion to detain Plaintiff

14    (Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968)), and certainly did not furnish probable cause

15    to arrest Plaintiff. Plaintiff stated early in the encounter that he had no criminal record, and there

16    wasn't any criminal behavior. At that point, a reasonable officer would have left the Plaintiff

17    alone. Bourque never told Plaintiff that there was an investigation or that he was interfering with

18    it. Rather, Bourque only demanded that Plaintiff respect Jane's privacy in public. Defendant

19    Bourque seemed only intent on preventing Plaintiff from recording the police interaction and

20    retaliating because Bourque's feelings were hurt by Plaintiff's free speech. In addition, there

21    appears to be a conspiracy by Defendants to arrest Plaintiff because he has recently covered

22    several stories about LVMPD that went viral on the internet.

23         71. Plaintiff is informed and believes, and intends to prove after conducting relevant

discovery, that Defendants' actions in detaining and/or arresting Plaintiff, using force on him, and illegally searching him and his belongings, was motivated largely or entirely by the following (1) Plaintiffs' position as a member of the press that records police interactions for accountability, and that was engaging in this First Amendment protected activity (2) Plaintiff's negative viewpoint of police who all contribute or hold silent (the thin blue line) about police brutality, (3) The color of Plaintiff's skin, and/or (4) Plaintiffs' verbal protestations of the Defendants' actions and Plaintiff's accusation that the Defendants were harassing him. Indeed, as shown on the video footage captured by Plaintiff's cell phone and the video footage Plaintiff expects to obtain from the Defendants' body cams, Plaintiff did not do or say anything that would have provided reasonable suspicion or probable cause for the detention and/or arrest, excessive use of force, and subsequent searches. Therefore, there is a strong inference that the Defendants were in fact motivated by one or more of the four factors enumerated above.

72. Individual Defendants submitted police reports that contradict the video evidence, including fabricated testimony. The combination of the various Defendants coordinated perjury and fabrication shows a strong inference of a plan by the Defendants to deprive Plaintiff of his rights under the first and fourteenth amendments.

73. Plaintiff has recorded approximately 10 police encounters of the LVMPD after the incidents in this complaint where Plaintiff has not been arrested. Plaintiff would have recorded more encounters if he had not feared of again being unlawfully arrested for exercising his rights. LVMPD closed investigations into the incidents in this complaint saying that no officers violated policies, even where it is clear that they violated their de-escalation policy, their use of force policy, their misdemeanor arrest policy, their training on dealing with people recording the police, and their interactions with public policy. The officers also violated several statutes,

including NRS 171.1233, NRS 171.1455, and NRS 193.355.

## COUNT 1

74. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

75. Arrest without probable cause or a warrant under the Nevada Constitution, U.S. Constitution, federal statute, state statute, and common law, against Bourque, Sandoval, Torrey, Dingle, Sorenson, Doolittle, and Does 1 to 5.

76. The factual allegations show that Plaintiff was intentionally deprived of his liberty, that he was aware of his confinement, he did not consent to the confinement, and the officers lacked privilege or a warrant to confine him. Plaintiff was not willfully hindering, delaying, or obstructing any officer in their official duties. Plaintiff was simply standing there exercising his First Amendment rights by filming the police in public. Finally, Plaintiff did nothing to resist arrest, and in fact continued to voice his compliance. Defendants only needed to give him clear verbal commands and did not need to touch him for his compliance. Further, even if Plaintiff is found guilty of obstruction and resisting, it's only as a direct and proximate result of statutes being enforced or codified contrary to the civil rights guaranteed by the United States Constitution. Specifically, the statutes are being used in a non-content neutral manner to interfere with Plaintiff's clearly established right to record the police in public.

77. Plaintiff was harmed as a direct and proximate result by being deprived of his liberty for a period of time, being unable to do what he wanted or go where he wanted. Plaintiff also suffered mental injuries including emotional distress, fear, and embarrassment.

78. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and

1    penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish

2    and deter such conduct.

3                                          **COUNT 2**

4        79. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the

5    allegations of said paragraphs as though expressly set forth at length at this point.

6        80. Unreasonable search and seizure under the Nevada Constitution, U.S. Constitution,

7    federal statute, state statute, and common law, against Bourque, Sandoval, Torrey, Dingle,

8    Sorenson, Doolittle, and Does 1 to 5.

9        81. The factual allegations show that Plaintiff was arrested without probable cause and

10   without a warrant, and so the subsequent search of Plaintiff's person, including pockets, wallet,

11   and cell phone was a violation.

12       82. Plaintiff was harmed as a direct and proximate result by the violation of his privacy of

13   the contents of his person, by the negative psychological and emotional impact on his rights

14   being violated and the chilling effect that this had on the future exercise of his rights for fear of

15   further abuse.

16       83. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

17   conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and

18   penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish

19   and deter such conduct.

20                                         **COUNT 3**

21       84. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the

22   allegations of said paragraphs as though expressly set forth at length at this point.

23       85. Excessive force in the course of an arrest under the Nevada Constitution, U.S.

1   Constitution, federal statute, state statute, and common law, against Bourque and Sandoval.

2      86. The factual allegations show that defendant Bourque unnecessarily used force against

3   Plaintiff while he was being arrested and that defendant Sandoval unnecessarily used force

4   against Plaintiff after he was already in custody.

5      87. Plaintiff was harmed as a direct and proximate result by feeling physical pain and

6   discomfort, negative psychological and emotional impact of being battered and the chilling effect

7   that this had on the future exercise of his rights for fear of further abuse. Plaintiff is still suffering

8   physical pain and discomfort from the injuries that Sandoval caused him during the incidents in

9   the complaint.

10     88. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

11  conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and

12  penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish

13  and deter such conduct.

14                                **COUNT 4**

15     89. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the

16  allegations of said paragraphs as though expressly set forth at length at this point.

17     90. Defamation under the Nevada Constitution, U.S. Constitution, federal statute, state

18  statute, and common law, against Bourque, Sandoval, Torrey, Dingle, Sorenson, Doolittle, and

19  Does 1 to 5.

20     91. The factual allegations show that against Bourque, Sandoval, Torrey, Dingle, Sorenson,

21  Doolittle, and Does 1 to 5 did share false police reports with third parties. The totality of the facts

22  further indicate that the defamation was done deliberately and maliciously and that the

23  defendants knew that the defamatory statements were about Plaintiff and were asserted as the

truth even though they were false.

92. Plaintiff was harmed as a direct and proximate result by this damaging of his reputation, which directly resulted in 1) him being cited; and 2) criminal prosecution. The defamation also had a direct and proximate negative psychological and emotional impact on Plaintiff.

93. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct.

### COUNT 5

94. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

95. Chilling of First Amendment under the Nevada Constitution, U.S. Constitution, federal statute, state statute, and common law, against all defendants.

96. The totality of the circumstances in the factual allegations shows that corruption was afoot in Las Vegas and that Plaintiff's investigative journalism was bringing the corruption to light. As a result, the perpetrators and their supporters conspired and did take actions that were intended to and did chill Plaintiff's First Amendment rights. Specifically, but not limited to, following Plaintiff, tracking Plaintiff's movements, defaming him, attempting to find pretextual reasons for his arrest, blocking his camera, arresting him, and prosecuting him. This resulted in intimidation and direct restriction of Plaintiff's movement and freedoms to petition the government, perform functions of the press, and to speech.

97. Plaintiff was harmed as a direct and proximate result by having to refrain from

1  exercising his rights, the government suppressing dissent, and loss of public participation.

2  Plaintiff also experienced, as a direct and proximate result, the negative psychological and

3  emotional impact of the abuse and the chilling effect that this had on the future exercise of his

4  rights for fear of further abuse.

5      98. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

6  conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and

7  penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish

8  and deter such conduct.

9                                      **COUNT 6**

10      99. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the

11  allegations of said paragraphs as though expressly set forth at length at this point.

12      100. First Amendment retaliation under the Nevada Constitution, U.S. Constitution, federal

13  statute, state statute, and common law, against all defendants.

14      101. The facts show that while exercising his first amendment rights recording police under

15  freedom of speech and freedom of press and protesting against police misconduct, Plaintiff did

16  not do or say anything that would have provided reasonable suspicion or probable cause for the

17  arrest, excessive use of force, and subsequent searches. The totality of the circumstances show

18  that the defendants were in fact motivated by one or more of the three factors enumerated above.

19  There were similarly situated individuals in the parking lot that had not made their views known

20  and that were not filming the police, who were not arrested. The arrest did stop Plaintiff from

21  further exercising his rights. Plaintiff's alleged illegal obstructive behavior could not have

22  continued since Bourque had Jane leave the scene, and Bourque could have left the scene as

23  well. Even if Bourque had probable cause, Plaintiff would not have been arrested because

1  officers typically exercise their discretion not to arrest in this situation. The LVMPD policy even

2  says that a person situated as Plaintiff should not be arrested, but he was arrested in retaliation

3  anyway

4      102. Plaintiff was harmed as a direct and proximate result by having to refrain from

5  exercising his rights, the government suppressing dissent, and loss of public participation.

6  Plaintiff also experienced, as a direct and proximate result, the negative psychological and

7  emotional impact of being battered and the chilling effect that this had on the future exercise of

8  his rights for fear of further abuse. Plaintiff was harmed as a direct and proximate result by being

9  deprived of his liberty for a period of time, being unable to do what he wanted or go where he

10  wanted.

11      103. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

12  conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and

13  penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish

14  and deter such conduct.

15                                    **COUNT 7**

16      104. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the

17  allegations of said paragraphs as though expressly set forth at length at this point.

18      105. Monell Policy and Supervisor Liability claim under the Nevada Constitution, U.S.

19  Constitution, federal statute, state statute, and common law, against Torrey, and LVMPD, the

20  state of Nevada, and Does 6 - 25.

21      106. The unconstitutional actions and/or omissions Bourque, Sandoval, Torrey, Dingle,

22  Sorenson, Doolittle, Citco, and Does 1 to 5 were pursuant to the following customs, policies,

23  practices, and/or procedures of defendants Torrey, LVMPD, the state of Nevada, and Does 6 -25

24

and which were directed, encouraged, allowed and/or ratified by policymaking officials with

Torrey, LVMPD, the state of Nevada, and Does 6 - 25:

a. To carry out or tolerate unlawful arrests without probable cause;

b. To carry out or tolerate detentions and arrests based on citizens' exercise of

their First Amendment right to criticize and verbally protest officers' actions;

c. To use or tolerate excessive force;

d. To carry out or tolerate unlawful searches of persons and properties;

e. To carry out or tolerate discriminatory and biased policing and/or racial

profiling;

f. To carry out or tolerate unlawful seizures of property;

g. To allow officers to file false police reports.

107. The totality of the circumstances of LVMPD's consistent abuse of citizens including

Plaintiff are indicative of the existence of a written or unwritten municipal policy and minimally

a longstanding practice. Additionally, Torrey has admitted to arresting Plaintiff to chill the

further exercise of his rights. Finally, the factual allegations show that Torrey was present

multiple times and witnessed in the behaviors by his subordinates. Discovery will show further

proof.

108. Plaintiff was harmed as a direct and proximate result by violations a – g and those

harms are enumerated in the separate claims for each primary claim.

109. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and

penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish

and deter such conduct.

**COUNT 8**

110. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

111. Selective enforcement and inequal police action under the Nevada Constitution, U.S. Constitution, federal statute, state statute, and common law, against all individual defendants.

112. The totality of the allegations shows that defendants selectively enforced laws against people with white lips, against people with brown skin, against people that expressed criticism towards law enforcement, against those recording police interactions, and against those publicizing information on Police misconduct. The allegations also show the effect of the discrimination under the totality of the circumstances but also directly in that similarly situated individuals were not arrested. The LVMPD policy even says that Plaintiff should not be arrested, but he was arrested for the color of his skin and for exercising his first amendment rights anyway.

113. Plaintiff was harmed as a direct and proximate result by having to refrain from exercising his rights, the government suppressing dissent, and loss of public participation. Plaintiff also experienced, as a direct and proximate result, the negative psychological and emotional impact of the abuse and the chilling effect that this had on the future exercise of his rights for fear of further abuse.

114. Plaintiff was further harmed, as a direct and proximate result, by the unlawful arrest, excessive force, battery, unlawful search, and abuse of process and those harms are enumerated under those primary claims.

115. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and

penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct.

**COUNT 9**

116. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

117. Battery under the Nevada Constitution, U.S. Constitution, federal statute, state statute, and common law, against Sandoval.

118. The factual allegations show that defendant intentionally, and without consent or legal justification, touched Plaintiff in a harmful and offensive manner.

119. Plaintiff was harmed as a direct and proximate result by feeling physical pain and discomfort, negative psychological and emotional impact of being battered and the chilling effect that this had on the future exercise of his rights for fear of further abuse. Plaintiff is still suffering physical pain and discomfort from the injuries that Sandoval caused him during the incidents in the complaint.

120. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct.

**COUNT 10**

121. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

122. Invasion of privacy under the Nevada Constitution, U.S. Constitution, federal statute, state statute, and common law, against Bourque, Sandoval, Torrey, Dingle, Sorenson, Doolittle,

1 and Does 1 to 5.

2    123. During the incident giving rise to this action, Plaintiff had a reasonable expectation of

3 privacy in his personal affairs, including the contents of his personal belongings such as vehicles,

4 pockets, wallets, cell phones and other electronic devices.

5    124. In doing the things herein alleged, defendants intentionally invaded and intruded into

6 Plaintiff's personal and private affairs by searching his belongings without a warrant or other

7 legal justification.

8    125. Defendants' invasion of Plaintiff's privacy would have been offensive to any

9 reasonable person.

10    126. Plaintiff was harmed as a direct and proximate result by the violation of his privacy of

11 the contents of his person, by the negative psychological and emotional impact on his rights

12 being violated and the chilling effect that this had on the future exercise of his rights for fear of

13 further abuse.

14    127. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

15 conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and

16 penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish

17 and deter such conduct.

18 **COUNT 11**

19    128. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the

20 allegations of said paragraphs as though expressly set forth at length at this point.

21    129. Negligence under the Nevada Constitution, U.S. Constitution, federal statute, state

22 statute, and common law, against all individual defendants.

23    130. The individual defendants owed Plaintiff a duty to use reasonable care in connection

with the parties' interactions as described herein. In particular, said defendants had a duty to carefully investigate any criminal activity, to use care to avoid subjecting Plaintiff to an illegal detention, arrest, seizure, retaliation for exercise of free speech, free press, or petition for redress of grievances, use of force, or deprivation of any of the other rights enumerated herein, and to use reasonable care to avoid engaging in biased policing or racial and political affiliation profiling.

131. In doing the things herein alleged, defendants breached the applicable duty of care by acting unreasonably, carelessly, negligently and/or recklessly.

132. As a direct and proximate result of defendants' conduct, Plaintiff suffered injuries and damages as set forth above in the separately enumerated primary claims.

133. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct.

**COUNT 12**

134. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

135. Failure to intervene under the Nevada Constitution, U.S. Constitution, federal statute, state statute, and common law, against all individual defendants.

136. The factual allegations show that the individual defendants had a 1) a realistic opportunity to intervene to prevent harm; 2) a reasonable person in the defendant's position would have known that Plaintiff's constitutional rights were being violated; and 3) the defendants did not take reasonable steps to intervene.

137. Plaintiff was harmed as a direct and proximate result by violations and those harms are enumerated in the separate claims for each primary claim.

138. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for his rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct.

**COUNT 13**

139. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

140. Civil conspiracy under the Nevada Constitution, U.S. Constitution, federal statute, state statute, and common law, against all individual defendants.

141. The totality of the circumstances show that 1) there was an agreement between defendants to violate Plaintiff's civil rights, defame him, and batter him; 2) there was a single plan that the defendants shared; 3) that defendants committed at least one overt act in furtherance of the conspiracy; and 4) Plaintiff was harmed by that conspiracy. Discovery will show further proof.

142. Plaintiff was harmed, as a direct and proximate result, by the underlying crimes as enumerated in the separate primary claims.

143. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct.

1

**COUNT 14**

2   144. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the

3   allegations of said paragraphs as though expressly set forth at length at this point.

4   145. Abuse of process under the Nevada Constitution, U.S. Constitution, federal statute,

5   state statute, and common law, against Bourque, Sandoval, Torrey, Dingle, Sorenson, Doolittle,

6   and Does 1 to 5.

7   146. The factual allegations show that defendants 1) initiated process to achieve an

8   unlawful purpose; and 2) denying Plaintiff due process.

9   147. Plaintiff was harmed as a direct and proximate result by being deprived of his liberty

10   for a period of time, being unable to do what he wanted or go where he wanted. Plaintiff further

11   had to initiate a costly defense. Plaintiff's daily life was disrupted by the defendants as a direct

12   and proximate result. Plaintiff was harmed as a direct and proximate result by having to refrain

13   from exercising his rights, the government suppressing dissent, and loss of public participation.

14   Plaintiff also experienced, as a direct and proximate result, the negative psychological and

15   emotional impact of being battered and the chilling effect that this had on the future exercise of

16   his rights for fear of further abuse. Plaintiff was harmed as a direct and proximate result by being

17   deprived of his liberty for a period of time, being unable to do what he wanted or go where he

18   wanted.

19   148. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and

20   conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and

21   penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish

22   and deter such conduct.

23

**COUNT 15**

149. Plaintiff refers to paragraphs 1-73 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

150. Monell Failure to Train under the Nevada Constitution, U.S. Constitution, federal statute, state statute, and common law, against Torrey, LVMPD and the state of Nevada.

151. Defendant failed to properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and/or terminate defendants Bourque, Sandoval, Torrey, Dingle, Sorenson, Doolittle, Citco, Torrey, and Does 1 to 5, with deliberate indifference to Plaintiff's constitutional rights in the following manner:

a. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning engaging in defamation in retaliation of those exercising their First Amendment rights;

b. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures within the government entity concerning the fear experienced by people of different minorities (including cop watching activists) when interacting with government employees in light of well documented, highly publicized, and disproportionate amount of discrimination committed by government employees against said groups, and the tactics that employees should employ in dealing with said groups in light of such fears (especially where, as here, they have been explicitly made known to the employees);

c. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate employees who have engaged in unlawful or unconstitutional activities.

152. The totality of the circumstances of LVMPD and the state of Nevada's consistent misconduct including against Plaintiff are indicative of a Monell failure to train liability.

Discovery will show further proof.

153. Plaintiff was harmed as a direct and proximate result by violations and those harms are enumerated in the separate claims for each primary claim.

154. Defendants' malicious, oppressive, and despicable conduct, carried out in a full and conscious disregard for Plaintiff's rights and safety entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct. Punitive damages are not sought against the state of Nevada.

### PRAYER

Plaintiff prays for damages as follows:

a. For compensatory damages in an amount according to proof;

b. For punitive damages in the amount of $5,000,000 or in an amount sufficient to punish Defendants conduct and deter similar conduct in the future, pursuant to 42 U.S.C. Section 1983 (no punitive damages are sought against Defendant Nevada);

c. For all applicable statutory penalties;

d. For attorneys' fees pursuant to 42 U.S.C. Section 1988;

e. For costs of suit;

f. For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

### DECLARATION OF JOSE DECASTRO

I declare under penalty of perjury, that the foregoing is true and correct.

1    DATED: November 27, 2023          Respectfully submitted,

2

3                                              Jose DeCastro

4                                              1258 Franklin St.
                                             Santa Monica, CA 90404

5                                              chille@situationcreator.com
                                             (310) 963-2445

6                                              *Pro Se*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23