**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Nicholas M. Adams, Esq.
Nevada Bar No. 15859
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
nadams@maclaw.com
   Attorneys for Defendants LVMPD, Ofc. Torrey, Ofc. Bourque, Ofc. Dingle, Ofc.
   Sorenson, Ofc. Sandoval and Ofc. Doolittle

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOSE DECASTRO,<br><br>                    Plaintiff,<br><br>      vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; STATE OF NEVADA; BRANDEN BOURQUE; JASON TORREY; C. DINGLE; B. SORENSON; JESSE SANDOVAL; OFFICER DOOLITTLE and DOES 1 to 50, inclusive,<br><br>                    Defendants. | Case Number:<br>2:23-cv-00580-APG-EJY<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** |

Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Ofc. Torrey, Ofc. Bourque, Ofc. Dingle, Ofc. Sorenson, Ofc. Sandoval and Ofc. Doolittle (collectively "Defendants")[1], by and through their attorneys of record, Marquis Aurbach, hereby file their Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 61], or in the alternative, Motion for Summary Judgment (the "Motion"). This Motion is made and based upon the pleadings and papers on file herein, the Memorandum of Points & Authorities attached hereto, and any oral argument allowed by counsel at the time of hearing.

---

[1] In the Second Amended Complaint, DeCastro named LVMPD Officer Citco ("Citco") as a Defendant in this action. However, Citco has not been served and is thus not a proper party to this action at this time.

MAC:14687-456 5299685_3

MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

At its core, this is a § 1983 wrongful arrest and excessive force lawsuit. On March 15, 2023, Defendant Branden Bourque ("Ofc. Bourque") arrested Plaintiff Jose DeCastro ("DeCastro") for obstructing a lawful traffic stop when he approached the detainee of the traffic stop and subsequently refused to comply with Ofc. Bourque's commands to move away from the detainee. After Plaintiff filed his First Amended Complaint, the Defendants moved to dismiss all DeCastro's claims, except his excessive force claim. On October 23, 2023, this Court issued its order granting in part Defendants' Motion to Dismiss and granting Plaintiff leave to amend certain claims. (ECF No. 44). Plaintiff amended and filed his Second Amended Complaint ("SAC") on November 11, 2023. (ECF No. 61). The Defendants now move to dismiss all DeCastro's claims pursuant to FRCP 12(b)(6), or in the alternative, summary judgment pursuant to FRCP 56.

DeCastro's SAC refers repeatedly to video recordings regarding the subject incident as support for his claims. Because DeCastro has incorporated these video references, the Defendants are attaching copies of the Defendant Officers' body worn camera ("BWC") videos from the subject event and DeCastro's own recording. The videos establish that the officers acted constitutionally and did not violate any of DeCastro's federal law or state law rights.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   SUBJECT INCIDENT.

In support of the instant Motion, Defendants submit BWC video evidence from the perspective of the subject officers: **Exhibit A**, Bourque BWC; **Exhibit B**, Sandoval BWC; **Exhibit C**, Dingle BWC; **Exhibit D**, Sorenson BWC; **Exhibit E**, Doolittle BWC; **Exhibit F**, Torrey BWC. In addition, the Defendants submit the declarations of the Defendant Officers in support of the instant Motion, authenticating the body worn camera footage. **Exhibit G**, Officer Declarations. Additionally, DeCastro has custody and control of a YouTube channel, and he references his videos and recording of the subject incident

Page 2 of 26

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    multiple times in the SAC. (ECF No. 61 at ¶¶36, 37, 39, 44, 52, 70-72). DeCastro's

2    YouTube video detailing the subject incident, which is comprised of his own video footage,

3    clips of BWC footage, and DeCastro's overlayed text commentary, is attached hereto as

4    **Exhibit H**.

5         On March 15, 2023, at approximately 4:30 p.m., Ofc. Bourque conducted a traffic

6    stop of a silver Hyundai Elantra. (**Ex. A** at T23:18:00). DeCastro approached the traffic stop

7    while recording with his phone and began talking to the traffic detainee. (**Ex. A** at

8    T23:26:48; **Ex. H** at 0:00-0:14). Ofc. Bourque was sitting in his LVMPD vehicle. (*Id.*) As

9    DeCastro approached the driver's side window of the detainee, Ofc. Bourque exited his

10   vehicle and told DeCastro "Don't engage with my driver. Back up." (**Ex. A** at T23:27:05).

11   DeCastro did not follow Ofc. Bourque's command, and Ofc. Bourque reiterated, "Hey, back

12   up. Back up. You're not involved." (*Id.* at T23:27:10). DeCastro was only a few feet away

13   from the driver's side window of the traffic detainee. (*Id.*; *see also* **Ex. H** at 0:00-0:14).

14        DeCastro backed up one or two feet, remaining in close proximity to the silver

15   Hyundai Elantra and the driver's side window. (**Ex. A** at T23:27:16; *see also* **Ex. H** at 0:13-

16   0:15). Ofc. Bourque clarified to DeCastro "You can film but you need to stay away from my

17   driver. Back up." (**Ex. A** at T23:27:18; **Ex. H** at 0:16-0:19.) DeCastro did not move. *Id.* Ofc.

18   Bourque then told DeCastro, "Back up or I'm going to detain you." (**Ex. A** at T23:27:20; *see*

19   *also* **Ex. H** at 0:20-0:22). DeCastro replied, "You're going to detain me how?" to which Ofc.

20   Bourque replied "For obstructing. Get away from my car stop." (**Ex. A** at T23:27:24; *see*

21   *also* **Ex. H** at 0:22-0:25). DeCastro asserted that he would continue to stand right there,

22   claimed that he was ten feet away, that he is a constitutional law scholar, and told Ofc.

23   Bourque that his name would be on the lawsuit, implying that any resistance to DeCastro's

24   interference with the traffic stop would be met with legal action. (**Ex. A** at T23:27:28; *see*

25   *also* **Ex. H** at 0:25-0:34).

26        Ofc. Bourque attempted in vain to appeal to DeCastro's better nature by noting that

27   the traffic detainee deserved privacy, to which DeCastro responded "Mind your own fucking

28   business. Mind your own business. I'm a member of the press. Go get in your car and do

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

your job little doggy." (**Ex. A** at T23:27:33; *see also* **Ex. H** at 0:33-0:41). During the entirety of the initial interaction, DeCastro remained near the vehicle of the detained driver and refused to move. (**Ex. A** at T23:27:16).

In light of DeCastro's obstructive conduct and refusal to comply with officer commands, Ofc. Bourque told DeCastro "You are being detained right now," and told the detained driver of the silver Hyundai Elantra that she was free to go. (**Ex. A** at T23:27:43; *see also* **Ex. H** at 0:42-0:50). As Ofc. Bourque approached DeCastro, he began to walk backwards, exclaiming that he was a journalist. (**Ex. A** at T23:27:47; *see also* **Ex. H** at 0:43-0:58). DeCastro refused to comply and moved away from Ofc. Bourque. *Id.* Ofc. Bourque called for additional units (**Ex. A** at T23:27:58) and reiterated that DeCastro was detained. DeCastro demanded a supervisor. (**Ex. A** at T23:28:17; **Ex. H** at 1:11-1:30).

Ofc. Bourque then ordered DeCastro to walk over to Ofc. Bourque's patrol car, to which DeCastro verbally agreed. (**Ex. A** at T23:28:36). Ofc. Bourque reiterated that DeCastro was being detained for obstruction and ordered DeCastro to place his phone on the hood of the patrol vehicle. (*Id.* at T23:28:38). DeCastro refused, asserting that he is a "constitutional law scholar" and that Ofc. Bourque could not take his phone. (*Id.* at T23:28:43). As Ofc. Bourque approached DeCastro, DeCastro extended his arm and attempted to push Ofc. Bourque away from him. (*Id.* at T23:28:49). Ofc. Bourque proceeded to grab DeCastro and escort him to the space in front of his patrol vehicle. (*Id.* at T23:28:50). At that time, Ofc. Dingle arrived on scene, and he and Ofc. Bourque placed DeCastro in handcuffs despite DeCastro's continued resistance. (*Id.* at T23:29:05; **Ex. H** at 2:00-2:50). DeCastro made Ofc. Bourque aware of a prior shoulder injury, and Ofc. Bourque placed DeCastro in two pairs of handcuffs to adhere to his medical needs. (ECF No. 61 at ¶51).

DeCastro claims he was patted down and struck in the groin with a closed fist. (ECF No. 61 at ¶62). Officer Dingle's BWC captured the alleged groin strike. (*See* **Ex. C** at T23:32:59). The video establishes that Ofc. Bourque's pat-down of DeCastro was routine,

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

harmless, and that Ofc. Bourque did not strike DeCastro's genitals. (*Id.*) DeCastro never flinched or complained of pain. (*Id.*)

Shortly thereafter, Ofc. Sandoval and Ofc. Sorenson arrived on the scene. (*Id.* at T23:34:11; **Ex. D** at T23:34:05). After observing DeCastro's recalcitrance, Ofc. Sandoval explained to DeCastro that the officers had a way to do things, and that DeCastro's continued refusal to obey officer commands would result in his arrest for obstruction. (**Ex. D** at T23:34:52). DeCastro retorted "I have a way to do things too. I sue cops all over the country. That's what I do." (*Id.* at T23:34:56). The Defendant Officers ordered that DeCastro continue to face the patrol vehicle. (**Ex. D** at T23:35:00). DeCastro proceeded to resist and fail to comply with that order for the next several minutes, while arguing with and taunting the Defendant Officers. (**Ex. D** at T23:35:00; **Ex. E** at T23:40:26-T23:42:32).

Due to DeCastro's continued willful disobedience of the officers' order for him to face the patrol vehicle, Ofc. Sandoval proceeded to stand behind DeCastro and hold his left arm to ensure DeCastro's compliance with the officers' order. (**Ex. E** at T23:42:37). DeCastro repeatedly asserts in the SAC that Ofc. Sandoval was squeezing his arm and causing him pain. (ECF No. 61, ¶¶51-58). However, the footage clearly demonstrates that Ofc. Sandoval was holding DeCastro's arm in a reasonable manner and not applying any significant force to DeCastro's arm. (**Ex. D** at T23:42:37-T00:06:57; **Ex. E** at T23:42:47-T23:55:30 and T00:02:47-T00:06:27). DeCastro repeatedly pulled away from Ofc. Sandoval, and as a result, was placed in the back of Ofc. Bourque's patrol vehicle. (**Ex. D** at T00:06:22; **Ex. E** at T00:06:22).

Shortly thereafter, Defendant Erland Jason Torrey ("Sgt. Torrey") arrived at the scene. (**Ex. F** at T00:06:26). Sgt. Torrey had a conversation with DeCastro in which he represented that he had reviewed the BWC and believed DeCastro was clearly obstructing on account of interfering with the traffic stop and refusing to step back when commanded to do so, and that when Ofc. Bourque told DeCastro he was being detained, DeCastro proceeded to resist. (**Ex. F** at T00:18:12). After Ofc. Bourque explained what DeCastro did wrong, DeCastro requested that they work it out and not arrest him in order to avoid his

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

bringing a lawsuit and causing LVMPD to incur substantial attorney fees in defending the lawsuit. (**Ex. F** at T00:22:25-T00:24:45). During the conversation, Sgt. Torrey made clear to DeCastro that there was no issue with him filming the traffic stop, but that being up close to the car stop, ignoring officer commands, and resisting detention/arrest were the reasons he was being arrested. (**Ex. F** at T00:31:00). As noted in Ofc. Bourque's report and affirmed by Sgt. Torrey and the BWC, the reasons why DeCastro was arrested was for engaging with a detained driver, refusing to give an officer reasonable space to work, and refusing to obey lawful commands after being advised he was being detained. (*Id.*; ECF No. 61 at ¶68). Ofc. Bourque's report further stated DeCastro had admitted to getting in trouble numerous times in the past for the same reasons, and his habitual behavior of obstructing police officers and claiming it was justified because of his right to film the police would continue in the area if he was not cited. *Id.* at ¶69.

**B.    PROCEDURAL HISTORY.**

**1.    Plaintiff's First Amended Complaint and This Court's Order.**

On April 17, 2023, DeCastro filed the instant lawsuit. (ECF No. 1). On May 7, 2023, DeCastro amended his complaint ("FAC"). (ECF No. 13). The FAC alleged (1) § 1983 excessive force; (2) § 1983 equal protection violation; (3) § 1983 First Amendment violations; (4) § 1983 *Monell* liability against LVMPD; (5) 42 U.S.C. § 1981 claim; and (6) state law claims for assault/battery, false arrest, invasion of privacy, and negligence. Defendants filed a Motion for Partial Dismissal. (ECF No. 15). The Defendants moved to dismiss most of DeCastro's FAC. On October 23, 2023, this Court issued its Order Granting in part Defendants' Motion to Dismiss, (ECF No. 61). Specifically, this Court dismissed with prejudice DeCastro's' claims for unreasonable search and seizure, false imprisonment, invasion of privacy and negligence-based search and seizure. (ECF No. 61 at 16). This Court also dismissed without prejudice DeCastro's equal protection claim, First Amendment retaliation claim, *Monell* claim, § 1981 claim, and negligence-based claim for biased policing without prejudice, DeCastro's excessive force and supervisor liability claims

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

survived. This Court gave DeCastro leave to amend the claims dismissed without prejudice. (*Id.*)

### 2.   DeCastro's SAC.

DeCastro has now amended his claims and filed his Second Amended Complaint. (ECF No. 61). It contains the following causes of action:

First Claim for Relief: 42 U.S.C. § 1983 Fourth Amendment false arrest against Officers Bourque, Torrey, Dingle, Sorenson, Sandoval, and Doolittle.

Second Claim for Relief: 42 U.S.C. § 1983 Fourth Amendment illegal search and seizure claim against Officers Bourque, Torrey, Dingle, Sorenson, Sandoval, and Doolittle.

Third Claim for Relief: 42 U.S.C. § 1983 Fourth Amendment excessive force against Officers Bourque and Sandoval.

Fourth Claim for Relief: Nevada state law defamation claim against Officers Bourque, Torrey, Dingle, Sorenson, Sandoval, and Doolittle.

Fifth Claim for Relief: 42 U.S.C. § 1983 First Amendment "chilling" claim against all defendants

Sixth Claim for Relief: 42 U.S.C. § 1983 First Amendment retaliation claim against all defendants

Seventh Claim for Relief: 42 U.S.C. § 1983 *Monell* liability claim against LVMPD, Nevada, and Sgt. Torrey.

Eighth Claim for Relief: 42 U.S.C. § 1983 selective enforcement and inequal police action claim against all defendants.

Ninth Claim for Relief: Nevada state law battery claim against Officer Sandoval.

Tenth Claim for Relief: Nevada state law invasion of privacy claim against Officers Bourque, Sandoval, Torrey, Dingle, Sorenson, and Doolittle.

Eleventh Claim for Relief: Nevada state law negligence claim against all individual defendants.

Twelfth Claim for Relief: 42 U.S.C. § 1983 failure to intervene claim against all individual defendants.

MAC:14687-456 5299685_3

Thirteenth Claim for Relief: Nevada state law civil conspiracy claim against all individual defendants.

Fourteenth Claim for Relief: Nevada state law abuse of process claim against Officers Bourque, Sandoval, Torrey, Dingle, Sorenson, and Doolittle.

Fifteenth Claim for Relief: 42 U.S.C. § 1983 *Monell* failure to train claim against Officer Torrey, LVMPD, and the State of Nevada. (ECF No. 61, p.19-33).

The Defendants now move to dismiss all claims.

## III.   **LEGAL STANDARD**

### A.   **MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT LEGAL STANDARDS.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). If a plaintiff will not be entitled to relief under any set of facts that could be proven under the allegations of the complaint, the court may *sua sponte* dismiss the cause of action or portions thereof. *Halt v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir. 1982).

Here, Defendants request the Court utilize the officers' BWC and DeCastro's own YouTube video to determine whether DeCastro has stated claims upon which relief can be granted pursuant to Rule 12(b)(6), and to determine whether the Defendant Officers are protected by qualified immunity. A court may look to matters of public record, or to documents on which the complaint necessarily relies, if their authenticity is not contested. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Courts rely on video evidence in ruling on Rule 12(b)(6) motions if the footage was "incorporated into the [Complaint] by reference and [were] documents that partially form[ed] the basis of Plaintiff's complaint."

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

*See e.g., Covert v. City of San Diego*, 2017 WL 1094020, *5 (S.D. Cal. Mar. 23, 2017); *Muhaymin v. City of Phoenix*, 2019 WL 699170, *3 (D. Ariz. Feb. 20, 2019) (courts can consider public records such as BWC "if it is a matter of public record and not disputed"); *Lihosit v. Flam,* 2016 WL 2865870, at *3 (D. Ariz. May 17, 2016). Courts may take judicial notice of matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The incorporation-by-reference doctrine "permits [a court] to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. Espn*, 393 F.3d 1068, 1076 (9th Cir. 2005). With respect to police excessive force cases, the Supreme Court has held that a court should use video evidence when available in deciding an officer's reasonableness. *Scott v. Harris*, 550 U.S. 371, 380 (2007); *Plumhoff v. Rickard*, 572 U.S. 765 (2014); *Mason v. Las Vegas Metro Police Dep't.*, 754 Fed. Appx. 559, 560 (9th Cir. 2019).

DeCastro's SAC repeatedly references his own video footage and a YouTube video that DeCastro created and published. (ECF No. 61 at ¶¶ 44, 52, 70-72). The SAC perpetually references "the video of the incident." *Id.* DeCastro's references to videos, footage, and cameras can also be understood to be referring to the body worn camera ("BWC") footage, which he refers to directly in the SAC. *Id.* Defendants have attached the officers' BWC videos along with declarations from the officers attesting to their authenticity. In addition, the allegations set forth in the SAC track the video footage, and the footage is the basis for the SAC's factual allegations.

If this Court determines that the BWC and DeCastro's own footage is outside the SAC, the Court may then convert the motion into a motion for summary judgment under Rule 56, where both parties have the opportunity "to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Under Rule 56 of the Rules of Federal Procedure, "[a] party may move for summary judgment, identifying each claim or defense - - or the part of each claim or defense - - on which summary judgment is sought [and] [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

fact and the movement is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is not uncommon for Courts to utilize video at the motion to dismiss stage and convert the motion into a summary judgment motion. *See e.g., Helmbrecht v. Henderson Police Dep't*, 2:21-cv-01357-JAD-EJY, 2022 WL 1082640, *1-2 (D. Nev. April 11, 2022).

## B.   RELEVANT 42 U.S.C. § 1983 LEGAL STANDARDS.

42 U.S.C. § 1983 is not itself a source of substantive rights, but merely the procedural vehicle by which to vindicate federal rights elsewhere conferred. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). To make out a prima facie case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. *See Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1989). The Defendant Officers do not dispute that they acted under color of law. Therefore, the task of this Court is to determine whether the Defendant Officers violated the Constitution. *See Albright*, 510 U.S. at 271. In addition, the Defendant Officers have raised the affirmative defense of qualified immunity.

A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has often stressed the importance of deciding qualified immunity "at the earliest possible stage in litigation" in order to preserve the doctrine's status as a true "immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

"In determining whether an officer is entitled to qualified immunity, [a court] consider[s] (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted). Consequently, at summary judgment, a court can "only" deny an officer qualified immunity in a § 1983 action "if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was

MAC:14687-456 5299685_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)

## IV.   LEGAL ARGUMENT

### A.   THIS COURT HAS ALREADY DISMISSED DECASTRO'S FIRST, SECOND, TENTH, AND ELEVENTH CAUSES OF ACTION WITH PREJUDICE.

DeCastro's SAC reasserts his claims for unreasonable search and seizure based on the arrest and search (first and second cause of action), invasion of privacy (tenth cause of action), and negligence based on the arrest and search (eleventh cause of action). This Court has already dismissed these claims with prejudice. (ECF No. 44). Accordingly, Defendants request that this Court strike those claims from the SAC or reaffirm their dismissal with prejudice.

### B.   DECASTRO'S 42 U.S.C. § 1983 CLAIMS FAIL AS A MATTER OF LAW.

#### 1.   DeCastro's Fourth Amendment Excessive Force Claim Fails (Third COA).

##### a.   Fourth Amendment Excessive Force Legal Standards.

In evaluating a Fourth Amendment excessive force claim, a court asks "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Reasonableness "must [therefore] be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted).

To determine the reasonableness of the officers' actions, a court must "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted'." *Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010)). Even in

MAC:14687-456 5299685_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

cases "where some force is justified, the amount actually used may be excessive." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (citation omitted).

> **b.**  **The Defendant Officers Used Reasonable Force to Detain DeCastro.**

The first step in the qualified immunity analysis is to determine whether the officers violated a constitutional right; i.e., whether the officers' use of force was objectively reasonable under the totality of the circumstances. *Graham*, 490 U.S. at 396. DeCastro is alleging the officers used excessive force while detaining him and that Ofc. Borque intentionally punched his genitals during the pat down and Ofc. Sandoval excessively pinched his arm tightly.

First, Ofc. Borque used reasonable force in detaining the admittedly resisting and obstructive DeCastro. The video shows DeCastro attempting to avoid Ofc. Borque and even attempting to push him away, i.e., active resistance. In response, the only force used by Ofc. Borque was basic empty-hand tactics to designed to control DeCastro and counter his resistance. This force was clearly reasonable. *See Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."); *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) ("Shafer's primary argument on appeal is that Deputy Padilla … had no basis for using *any* force whatsoever. We disagree . . . Deputy Padilla had probable cause to use *some* degree of force."). Thus, the video clearly establishes that Ofc. Borque's empty hand techniques to control the resisting DeCastro were reasonable.

Similarly, DeCastro's claim that Ofc. Sandoval excessively squeezed his arm is refuted by the video evidence. The videos clearly show that Ofc. Sandoval maintained a grip on DeCastro's arm due to the fact he continued to move, twist, and slightly resist after handcuffing. As explained to DeCastro by Ofc. Sandoval, because DeCastro was handcuffed and lacked the use of his hands, Ofc. Sandoval needed to maintain control of DeCastro so that he did not fall and injure himself. This is objectively reasonable.

MAC:14687-456 5299685_3

Finally, DeCastro's allegation that Ofc. Borque intentionally struck him in the groin is refuted by the video evidence. Admittedly, it would be excessive for an officer to gratuitously strike a restrained suspect in the groin. The video confirms this did not happen. It shows that Ofc. Borque performed a routine pat down for weapons and that he never struck DeCastro. Indeed, the video shows that DeCastro never even flinched or reacted to the alleged "strike." "Not every push or shove . . . violate[s] the Fourth Amendment." *Graham*, 490 U.S. at 396. Thus, DeCastro's allegation that Ofc. Borque gratuitously struck his genitals is "blatantly contradicted" by the video evidence. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1219 (9th Cir. 2022) (inmate's allegations could be ignored as they were blatantly contradicted by the video evidence).

Finally, at a minimum, there is no clearly established law prohibiting an officer (1) from using empty hand techniques to control a suspect resisting arrest, (2) maintaining a hold of suspect's arm when the suspect is handcuffed and continuing to twist and turn and disobey clear orders; or (3) perform a routine pat down that includes contact at or near the groin area. Thus, qualified immunity is appropriate under the clearly established prong as well as the merits.

### 2. DeCastro's First Amendment Retaliation and Selective Enforcement Claims Fail (Fifth, Sixth, and Eighth COA).

DeCastro has separately asserted claims for chilling of First Amendment rights (fifth cause of action), First Amendment retaliation (sixth cause of action), and selective enforcement (eighth cause of action). A claim for chilling of First Amendment rights is not a cognizable cause of action. Rather, the analysis of whether a defendant's actions would chill a person of ordinary firmness from continuing to engage in constitutionally protected activity is an element of a First Amendment retaliation claim. *See, e.g., Capp v. Cnty. of San Diego*, 940 F.3d 1046 (9th Cir. 2019). Accordingly, Defendants will analyze DeCastro's fifth and sixth cause of action as a singular First Amendment retaliation cause of action. In addition, DeCastro's selective enforcement claim is closely related to this claim and, therefore, will also be analyzed in this section.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

### a. First Amendment Retaliation and First and Fourteenth Amendment Selective Enforcement Legal Standards.

There are three elements to a First Amendment retaliation claim. A plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citing *Pinard v. Clatskanie Sch. Dist.* 6J, 467 F.3d 755 (9th Cir.2006)). To ultimately "prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. ——, 139 S. Ct. 1715 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). Specifically, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260, 126 S.Ct. 1695). However, a plaintiff may not recover merely on the basis of a speculative "chill" due to generalized and legitimate law enforcement initiatives. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (citing *Laird v. Tatum*, 408 U.S. 1, *reh'g denied* 409 U.S. 901, (1972)).

In *Nieves*, the U.S. Supreme Court adopted the "no-probable-cause" rule in relation to retaliatory arrest claims. *Nieves*, 139 S. Ct. at 1725. If the plaintiff cannot make a showing that the arrest was not supported by probable cause, a retaliatory arrest claim fails. *Id.* The *Nieves* Court, in enacting the no-probable-cause rule, noted that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727.

To prevail on an equal protection selective enforcement claim, the plaintiff must show "that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012) (en banc) (quotation omitted). "Enforcement may be shown through a variety of actual or

MAC:14687-456 5299685_3

threatened arrests, searches and temporary seizures, citations, and other coercive conduct by the police." *Id.* A discriminatory effect may be shown if "similarly situated individuals ... were not prosecuted." *Id.* (quotation omitted). The standard for proving discriminatory effect "is a demanding one." *Lacey*, 693 F.3d at 920; *see also Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) ("[I]t is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared."). Finally, to show discriminatory purpose, the plaintiffs must show the police decided to enforce the law against them based on the exercise of their constitutional rights. *Id.* at 922. A similar claim arises under the First Amendment where "discriminatory enforcement of a speech restriction amount[s] to viewpoint discrimination." *Menotti v. City of Seattle*, 409 F.3d 1113, 1146-47 (9th Cir. 2005); *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

**b.      The First Amendment Retaliation Claim Fails Because the Officers Had Probable Cause to Arrest DeCastro**

This Court has already determined that the Defendant Officers had probable cause to arrest DeCastro for obstruction. (ECF No. 44 at p.7). The video footage submitted in support of the instant Motion only further reinforces the Court's prior determination of the existence of probable cause. Thus, pursuant to *Nieves*, DeCastro's first amendment retaliation claim fails as a matter of law unless DeCastro can present objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. Here, DeCastro provides no factual allegations suggesting that other individuals who illegally interfered with traffic stops were not arrested. As such, this claim fails as a matter of law.

**c.      DeCastro Has Not Adequately Alleged Selective Enforcement.**

DeCastro also claims that defendants selectively enforce laws against people with white lips, brown skin, people that expressed criticism towards law enforcement those recording police interactions, and those publicizing information on police misconduct. (ECF No. 61 at ¶112). However, DeCastro has not offered any facts beyond these conclusory

MAC:14687-456 5299685_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

statements. As discussed in this Court's original order, DeCastro must plead plausible facts that support these claims. His failure to do so mandates these claims be dismissed.

It remains undisputed that DeCastro interfered in a traffic stop, willfully and actively disobeyed lawful commands, resisted the efforts of the officers to effectuate his detention, and taunted and demeaned the officers. Although DeCastro was detained for misdemeanors which usually result in a citation and not an arrest, the officers were correct to determine that DeCastro should be arrested because his behavior gave the officers reasonable cause to believe that the violation for which DeCastro was arrested for would continue in the area if DeCastro was not arrested. *See* ECF No. 61 at ¶24. In sum, DeCastro has not alleged the existence of an individual who engaged in substantially similar conduct and was not arrested for obstruction. As a result, DeCastro has failed to state a claim upon which relief can be granted for his claim of selective enforcement pursuant to the First and Fourteenth Amendments to the U.S. Constitution.

### d. There Is No Clearly Established Law Preventing Officers from Arresting an Individual for Obstruction Under These Facts.

If this Court concludes that DeCastro has pled sufficient facts demonstrating that a constitutional violation occurred, this Court must then address the second prong of the qualified immunity analysis – whether the law regarding the constitutional violation was clearly established. *Lal*, 746 F.3d at 1116. "It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established," *Shafer*, 868 F.3d at 1118 (internal quotation marks and citation omitted), and he must provide a case that demonstrates the unconstitutionality of the action "in light of the specific context of [this] case." *See Mullenix*, 136 S.Ct. at 308.

There is no clearly established law preventing officers from arresting an individual for obstruction under these facts. Specifically, DeCastro interfered in a traffic stop, willfully and actively disobeyed lawful commands to stand back from the traffic stop, resisted the efforts of the officers to effectuate his detention, all while repeatedly asserting that he was in the right and demonstrating no contrition towards his actions. Defendants are not aware of

MAC:14687-456 5299685_3

1  any case in which arresting an individual for obstruction under similar factual circumstances

2  was found to be a First or Fourteenth Amendment violation. Accordingly, there is no clearly

3  established law, and the Defendant Officers are entitled to qualified immunity on DeCastro's

4  First Amendment Retaliation claims and First and Fourteenth Amendment selective

5  enforcement claim.

### 3.     DeCastro's Failure to Intervene Claim Fails (Twelfth COA).

7         A failure to intervene (a/k/a failure to intercede) claim is a subpart of the Fourth

8  Amendment right to be free of excessive force. *Cunningham v. Gates*, 229 F.3d 1271, 1289

9  (9th Cir. 2003 ("police officers have a duty to intercede when their fellow officers violate

10 the constitutional rights of a suspect or other citizen"). Generally, a failure to intervene

11 claim exists when bystander officers have an opportunity to intervene, but fail to do so. *Lolli*

12 *v. Cty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). "[T]he constitutional right violated by

13 the *passive* defendant is analytically the same as the right violated by the person who [uses

14 excessive force]." *U.S. v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (emphasis added).

15 "Importantly, however, officers can be held liable for failing to intercede only if they had an

16 opportunity to intercede." *Cunningham v. Gates*, at 1290.

17        The Ninth Circuit has only recognized a claim for failing to intervene in the

18 excessive force context. Police officers do not have a general duty to intervene in all alleged

19 wrongdoings by a fellow officer. *Briscoe v. Madrid*, 1:17-CV-0716-DAD-SKO, 2018 WL

20 4586251, at *5 (E.D. Cal. Sep. 21, 2018); *Dental v. City Salem*, No. 3:13-CV-01659-MO,

21 2015 WL 1524476, at *5 (D. Or. Apr. 2, 2015). The duty to intercede is "clearly limited to

22 the context of excessive force" claims under the Fourth Amendment. *Dental*, 2015 WL

23 1524476, at *5 (finding that the duty to intercede did not apply to the plaintiff's wrongful

24 arrest claim); *Gillette v. Malheur Cty.*, 2:14-CV-01542 -SU, 2016 WL 3180228, *7 (D. Or.

25 2016); *Milke v. City of Phoenix*, No. CV-15-00462-PHX-ROS, 2016 WL 5339693 (D.Az.

26 Jan. 8, 2016) (no duty to intervene outside of excessive force context). As established above,

27 DeCastro has failed to state a claim upon which relief can be granted that the Defendant

28 Officers violated his First, Fourth, or Fourteenth Amendment rights. As a result, DeCastro

MAC:14687-456 5299685_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

necessarily fails to state a claim upon which relief can be granted based on the Defendant Officers' alleged failure to intervene. As stated above, this claim should only apply to DeCastro's excessive force claim. Even if Ofc. Borque gratuitously struck DeCastro's genitals, the event happened in just a second and none of the other officers had a legitimate opportunity to stop the alleged excessive force.

To the extent the Court believes that DeCastro has stated a claim for a constitutional violation, or that a dispute of fact precludes a determination as to the existence of a constitutional violation, the Defendant Officers are protected by qualified immunity. Because the law was not clearly established, it was not clear to the Defendant Officers that they had a duty to intervene and stop the conduct of any of their fellow officers.

## C.   DECASTRO HAS FAILED TO STATE A *MONELL* CLAIM UPON WHICH RELIEF CAN BE GRANTED.

DeCastro alleges two causes of action which he identifies as *Monell* claims. DeCastro alleges a claim for *Monell* supervisor liability based on the subject incident (seventh cause of action), as well as a *Monell* failure to train claim (fifteenth cause of action). Because both claims are brought against Defendant LVMPD pursuant to *Monell*, defendants will analyze the claims in conjunction.

### 1.   *Monell* Applicable Law.

In *Monell*, the Court held that when a municipal policy of some nature is the cause of the unconstitutional actions taken by municipal employees, the municipality itself will be liable. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). Liability only exists where the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is visited pursuant to governmental "custom" even though such a "custom" has not received formal approval. *Id.* at 690-91. The Court defined "custom" as "persistent and widespread discriminatory practices by state officials." *Id.* at 691 (citing *Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 167-68 (1970)).

MAC:14687-456 5299685_3

The doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 claims against municipalities. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell*, 436 U.S. at 691). In other words, municipal liability is not established merely by showing that a municipal employee committed a constitutional tort while within the scope of employment. *Id.* at 478-79. For liability to attach to a municipality, a plaintiff must establish that the wrongful act complained of was somehow caused by the municipality. *Monell*, 436 U.S. at 691-95. Such liability can be imposed only for injuries inflicted pursuant to a governmental "policy or custom." *Monell*, 436 U.S. at 694. In addition, there must be shown to be an affirmative link between the policy or custom and the particular constitutional violation alleged. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). The alleged policy or custom must be the "moving force" for the constitutional violation in order to establish liability under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694). Causation must be specific to the violation alleged, meaning that merely proving an unconstitutional policy, practice, or custom however loathsome, will not establish liability unless the specific injury alleged relates to the specific unconstitutional policy proved. *Board of County Comm'rs of Bryan City, Oklahoma vs. Brown*, 520 U.S. 397, 404 (1997). Once each of these elements are met, a plaintiff must further prove that the unconstitutional policy that caused his injury was the result of something more than mere negligence on the part of the municipality, and was instead the result of "deliberate indifference" - a state of mind that requires a heightened level of culpability, even more than mere "indifference." *Id.* at 411. In fact, the *Monell* standard for municipal liability has been interpreted as more restrictive than "common law restrict[ions] [on] private employers' liability for punitive damages." *See* David Jacks Achtenburg, Taking History Seriously: Municipal Liability Under 42 U.S.C. § 1983 and the Debate Over Respondeat Superior, 73 Fordham L. Rev. 2183, 2191 (2005). Proof of a single incident is insufficient to establish a custom or policy. *Tuttle*, 471 U.S. at 821.

To properly plead a *Monell* claim against LVMPD, a plaintiff must (1) identify the challenged policy or custom; (2) explain how the policy or custom is deficient; (3) explain

MAC:14687-456 5299685_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

how the policy or custom caused the plaintiff harm; and (4) reflect how the policy or custom amounted to deliberate indifference, i.e., show how the deficiency involved was obvious and the constitutional injury was likely to occur. *Harvey v. City of South Lake Tahoe*, 2012 WL 1232420 (E.D. Cal. April 12, 2012). Post *Iqbal*, a plaintiff cannot rely on conclusory factual allegations. Rather, a plaintiff must allege facts which, if true, show that the defendant actually had a constitutionally impermissible policy, practice, or custom. *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). An actionable policy or custom is demonstrated by: (1) an "express policy that, when enforced, causes a constitutional deprivation." *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law;" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality opinion); or (3) constitutional injury caused by a person with "final policymaking authority." *Id.* at 123. "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police. Dept.*, 130 F.3d 162, 167 (5th Cir.1997). "[E]xistence of a policy, without more, is insufficient to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir.1992).

### 2. DeCastro Has Not Stated a *Monell* Claim Upon Which Relief Can Be Granted (Seventh and Fifteenth COA).

In the instant case, DeCastro pleads a conclusory wish-list of unconstitutional customs, policies, or practices relating to LVMPD's methods of effectuating arrests, use of force, searches and seizures, hiring and training practices, and more. (ECF No. 61 at ¶¶106, 151). However, there is no identification of a policy, that when enforced, caused the alleged constitutional violation. *See Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). Ironically, the only identification of actual policies are DeCastro's identification of policies which when enforced, uphold and protect the constitutional rights of the citizenry. (ECF No. 61 at ¶¶21-27). DeCastro's conclusory assertions of an unconstitutional custom,

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

policy, or practice are belied by his own allegations in the SAC in addition to the authentic video footage in this case which demonstrates the Defendant Officers applying and upholding the constitutional policies and practices identified within the SAC.

DeCastro has failed to plead facts demonstrating any of the following: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law; or (3) constitutional injury caused by a person with "final policymaking authority." Therefore, DeCastro has failed to adequately plead a specific policy or practice, and DeCastro's *Monell* claims must be dismissed pursuant to FRCP 12(b)(6). Irrespective of the Court's decision on whether DeCastro has adequately pled a *Monell* claim, Defendant Torrey must be dismissed as a Defendant to DeCastro's *Monell* claim because he is not a proper party to such a claim.

### D. DECASTRO'S STATE LAW CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

#### 1. DeCastro Has Not Stated a Defamation Claim Upon Which Relief Can be Granted (Fourth COA).

To state a claim for defamation under Nevada law, Plaintiff must allege "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Rosen v. Tarkanian*, 453 P.3d 1220, 1225 (Nev. 2019) (quotation omitted); *see also* Nev. Rev. Stat. § 200.510(1) (defining libel). With respect to a claim of defamation arising from a police report, such an instrument may form the basis of such a claim; however, there must be a specific statement contained in the police report that Plaintiff states are false. *Sykes v. Las Vegas Metropolitan Police Department*, Case No. 2:21-cv-01479-RFB-DJA, 2021 WL 5799381, at *4 (D. Nev. December 3, 2021).

Here, DeCastro alleges that the Defendant Officers shared false police reports with third parties. (ECF No. 61 at ¶91). DeCastro's alleging of legal conclusions intended to recite the elements of a defamation claim is not sufficient to state a claim under Rule 12(b)(6). In addition, the authentic video evidence as well as other allegations in DeCastro's

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

SAC about the statements within the police report demonstrate that the police reports do not contain any false statement. (*Id.* at ¶¶68-69). Moreover, DeCastro fails to assert that any Defendant "published" the report concerning the subject incident to a third person in the absence of privilege. In the absence of a false and defamatory statement and an unprivileged publication, DeCastro fails to state a defamation claim.

### 2. DeCastro Has Not Stated a Battery Claim Upon Which Relief Can be Granted (Ninth COA).

This district has long recognized that the standard for battery by a police officer under Nevada law is the same as under a 42 U.S.C. § 1983 claim. *See, e.g., Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) ("The standard for common-law assault and battery by a police officer thus mirrors the federal civil rights law standard: Liability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances.") Because DeCastro has failed to state a viable claim for excessive force under § 1983, he has also failed to state a claim upon which relief can be granted for battery.

### 3. DeCastro Has Not Stated a Negligence Claim Upon Which Relief Can be Granted (Eleventh COA).

DeCastro's negligence claim has been dismissed with prejudice as to all theories besides his theory of excessive force. (ECF No. 44 at p.14). A claim for negligence requires that the plaintiff satisfy four elements: (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages. *Turner v. Mandalay Sports Entertainment*, *LLC*, 124 Nev. 213, 217 (2008).

A plaintiff's negligence claim cannot be based on an intentional act. *See* Restatement (Second) of Torts § 282 (1965), cmt. d (stating that negligence "excludes conduct which creates liability because of the actor's intention to invade a legally protected interest of the person injured or a third person"). Consequently, as a matter of law, there is no cause of action against a law enforcement officer for a negligent, unjustified use of excessive force. *See City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. Dist. Ct. App. 1996) ("Hence, we come to the inescapable conclusion that it is not possible to have a cause of action for

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional tort.'); *Ryan v. Napier*, 425 P.3d 230 (Ariz. 2018) (a plaintiff "cannot assert a negligence claim based solely on an officer's intentional use of physical force" because there is no cognizable claim for "negligent use of intentionally inflicted force."); *Liberti v. City of Scottsdale*, 816 F.App'x. 89, 91 (9th Cir. 2020) (applying *Napier* to Arizona wrongful death actions); *Scales v. District of Columbia*, 973 A.2d 722, 731 (D.C. 2009) ("[I]f, in a case involving the intentional use of force by police officers, a negligence count is to be submitted to the jury, that negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care"). Therefore, in a police officer excessive force case, a plaintiff can only have a valid negligence claim if the plaintiff establishes negligence divorced from the actual force.

Here, DeCastro's negligence claim is based entirely upon the officers' intentional use of force and, therefore, must be dismissed. DeCastro has pled no additional facts suggesting any other legally owed duty that the officers allegedly violated.

### 4. DeCastro Has Not Stated a Civil Conspiracy Claim Upon Which Relief Can be Granted (Thirteenth COA).

DeCastro's SAC alleges a claim for civil conspiracy based on a theory that the Defendant Officers agreed to violate his civil rights, that they acted according to a common plan and committed overt acts in furtherance of the conspiracy. (ECF No. 61 at ¶141).

In order to state a claim for civil conspiracy in Nevada, a plaintiff must allege two prongs: (1) two or more persons acting in concert intending to accomplish an unlawful objective for the purpose of harming the plaintiff; and (2) the plaintiff sustained damages as a result of that action. *See Sutherland v. Gross*, 105 Nev. 192, 772 P.2d 1287, 1290 (Nev. 1989). The party alleging civil conspiracy must include detailed descriptions of the time, place, and identities of the parties involved in the conspiracy. *Brown v. Kellar*, 97 Nev. 582, 636 P.2d 874, (Nev. 1981).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Here, DeCastro states in a conclusory fashion that the Defendant Officers conspired to violate his civil rights and cause him harm. (ECF No. 61 at ¶¶141-143). However, such a conclusory assertion does not sufficiently plead detailed descriptions regarding the conspiracy, nor that the Defendant Officers acted with the purpose of specifically harming DeCastro. Because DeCastro has failed to allege that the defendant intended to accomplish some unlawful objective for the purpose of harming him, he has failed to state a claim upon which relief can be granted for civil conspiracy.

In addition, even if DeCastro had pled a plausible civil conspiracy claim, the claim would still fail under the intra-corporate conspiracy doctrine. In *Collins v. Union Fed. Sav. & Loan Ass'n,* 99 Nev. 284, 662 P.2d 610, 622 (1983)  the Nevada Supreme Court held that "Agents and employees of a corporation cannot conspire with their corporate principal or employer when they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *See also, Conleys Creek Ltd. P'ship. V. Smoky MountainCountry Club Prop. Owners Ass'n, Inc.*, 805 S.Ed.2d 147, 156 (N.C. App. 2017); *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 770-71 (1984) (applying the doctrine in an antitrust context holding that a parent corporation and its wholly owned subsidiary are incapable of conspiring under Section 1 of the Sherman Act); *Renner v. Wurdeman,* 231 Neb. 8, 434 N.W.2d 536, 542 (1989) ("'A corporation cannot conspire with an agent when that agent is *acting within the scope of his authority.*' " (citation omitted) (emphasis in original)); *Gray v. Marshall County Bd. of Educ.,* 179 W.Va. 282, 367 S.E.2d 751, 752 (1988) ("A corporation, as a single business entity, acts with one "mind" and the unilateral acts of a corporation will not satisfy the requirement of a [conspiracy].").

### 5.    DeCastro Has Not Stated an Abuse of Process Claim Upon Which Relief Can be Granted (Fourteenth COA).

DeCastro's SAC alleges a claim for abuse of process based on his being arrested and charged with obstruction as a result of the subject incident. (ECF No. 61 at ¶¶146-148).

Under Nevada law, a plaintiff must allege two elements to state an abuse of process claim: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and

Page 24 of 26

(2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879 (2002) (citation omitted). However, the filing of a criminal complaint cannot be the willful act, a plaintiff must allege a willful act after filing to satisfy the second element. *Laxalt v. McClatchy*, 622 F.Supp. 737, 751-52 (D. Nev. 1985); *Childs v. Selznick*, 281 P.3d 1161 (Nev. 2009) (noting that "'the mere filing of [a] complaint is insufficient to establish the tort of abuse of process'") (quoting *Laxalt*, 622 F.Supp. at 752)) (unpublished).

DeCastro's allegations fail to state a plausible claim for abuse of process under Nevada law because the basis for the claim is his arrest and the filing of criminal charges against him. To state an actionable claim, DeCastro must identify a willful act *after* the filing of the criminal charges. The SAC does not allege such an act, nor does it allege that defendants used the legal process to accomplish a goal other than for what it was created. *See, e.g., Donahoe v. Arpaio*, 869 F.Supp.2d 1020, 1060 (D. Ariz. 2012) (dismissing § 1983 abuse of process claim under Arizona law, which requires the same elements as Nevada, where the plaintiffs alleged their arrests and prosecutions were improper, but they did not allege that any specific judicial process was employed for a purpose other than for what it was designed.) For these reasons, DeCastro has failed to state a viable claim for abuse of process under Nevada law.

## V.    CONCLUSION

Based upon the above, the defendants respectfully request that this Court dismiss the claims within DeCastro's SAC pursuant to Rule 12(b)(6), or in the alternative, grant summary judgment on DeCastro's claims in favor of Defendants.

Dated this 11th day of December, 2023.

MARQUIS AURBACH

By  */s/ Craig R. Anderson*
　　Craig R. Anderson, Esq.
　　Nevada Bar No. 6882
　　10001 Park Run Drive
　　Las Vegas, Nevada 89145
　　Attorneys for Defendants

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-456 5299685_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **DEFENDANTS LVMPD, OFC. TORREY, OFC. BOURQUE, OFC. DINGLE, OFC. SORENSON, OFC. SANDOVAL AND OFC. DOOLITTLE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 11th day of December, 2023.

☐    I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☒    I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:[2]

Jose DeCastro
1258 Franklin Street
Santa Monica, CA 90404
Plaintiff Pro Se


_/s/ Sherri Mong_____
an employee of Marquis Aurbach

---

[2] Exhibits A thru H are located on a flash drive and due to their voluminous nature will be available and mailed to Plaintiff's address on file with the Court on December 12, 2023.

MAC:14687-456 5299685_3

# Exhibits  A - F
# Flash Drive Containing Body Worn Camera video evidence of Defendant Officers

# Exhibit G

# Declarations of Defendant Officers authenticating Body Worn Camera Footage

1
2

**DECLARATION OF SGT. ERLAND TORREY IN SUPPORT OF LVMPD
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT**

3   I, Sgt. Erland Torrey, hereby declare and say:

4   1.   I am over the age of eighteen (18) years of age and have personal knowledge

5   of the facts stated herein, except for those stated upon information and belief, and as to

6   those, I believe them to be true.  I am competent to testify as to the facts stated herein in a

7   Court of law and will so testify if called upon.

8   2.   This Declaration is brought to authenticate certain exhibits and court filings

9   on behalf of the Defendants in the case of *Jose DeCastro v. LVMPD, et al.*, Case No. 2:23-

10   cv-00580-APG-EJY.

11   3.   I am currently a Sergeant with the Las Vegas Metropolitan Police

12   Department. I have personal knowledge regarding the incident which is the subject of

13   DeCastro's Second Amended Complaint.

14   4.   I have reviewed my body worn camera footage that is attached to the

15   Defendants' current Motion. I can confirm that it is a true, accurate, and complete copy of

16   what my body worn camera captured on the day of the subject incident. The footage has not

17   been modified, edited, or otherwise changed.

18   5.   Pursuant to NRS 53.045, I declare under penalty of perjury under the laws of

19   the State of Nevada that the foregoing is true and correct.

20   Dated this 7TH day of December, 2023.

21
22   Erland Torrey

23
24
25
26
27
28

Page 1 of 1

MAC:14687-456 5311910_1 12/7/2023 9:50 AM

**DECLARATION OF OFC. BRANDON BOURQUE IN SUPPORT OF LVMPD DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

I, Ofc. Brandon Bourque, hereby declare and say:

1.     I am over the age of eighteen (18) years of age and have personal knowledge of the facts stated herein, except for those stated upon information and belief, and as to those, I believe them to be true.  I am competent to testify as to the facts stated herein in a Court of law and will so testify if called upon.

2.     This Declaration is brought to authenticate certain exhibits and court filings on behalf of the Defendants in the case of *Jose DeCastro v. LVMPD, et al*., Case No. 2:23-cv-00580-APG-EJY.

3.     I am currently a Police Officer with the Las Vegas Metropolitan Police Department. I have personal knowledge regarding the incident which is the subject of DeCastro's Second Amended Complaint.

4.     I have reviewed my body worn camera footage that is attached to the Defendants' current Motion. I can confirm that it is a true, accurate, and complete copy of what my body worn camera captured on the day of the subject incident. The footage has not been modified, edited, or otherwise changed.

5.     Pursuant to NRS 53.045, I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Dated this ___ day of December, 2023.

_____
Brandon Bourque

Page 1 of 1

MAC:14687-456 5311914_1 12/7/2023 9:54 AM

### DECLARATION OF OFC. CHADLY DINGLE IN SUPPORT OF LVMPD DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

I, Ofc. Chadly Dingle, hereby declare and say:

1.     I am over the age of eighteen (18) years of age and have personal knowledge of the facts stated herein, except for those stated upon information and belief, and as to those, I believe them to be true.  I am competent to testify as to the facts stated herein in a Court of law and will so testify if called upon.

2.     This Declaration is brought to authenticate certain exhibits and court filings on behalf of the Defendants in the case of *Jose DeCastro v. LVMPD, et al.*, Case No. 2:23-cv-00580-APG-EJY.

3.     I am currently a Police Officer with the Las Vegas Metropolitan Police Department. I have personal knowledge regarding the incident which is the subject of DeCastro's Second Amended Complaint.

4.     I have reviewed my body worn camera footage that is attached to the Defendants' current Motion. I can confirm that it is a true, accurate, and complete copy of what my body worn camera captured on the day of the subject incident. I was wearing my body camera upside down during the subject incident, so the footage has been inverted for ease of viewing. The footage has not otherwise been modified, edited, or otherwise changed.

5.     Pursuant to NRS 53.045, I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Dated this __ day of December, 2023.

_____
Chadly Dingle

Page 1 of 1

**DECLARATION OF OFC. CLINTON DOOLITTLE IN SUPPORT OF LVMPD DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

I, Ofc. Clinton Doolittle, hereby declare and say:

1.      I am over the age of eighteen (18) years of age and have personal knowledge of the facts stated herein, except for those stated upon information and belief, and as to those, I believe them to be true.  I am competent to testify as to the facts stated herein in a Court of law and will so testify if called upon.

2.      This Declaration is brought to authenticate certain exhibits and court filings on behalf of the Defendants in the case of *Jose DeCastro v. LVMPD, et al*., Case No. 2:23-cv-00580-APG-EJY.

3.      I am currently a Police Officer with the Las Vegas Metropolitan Police Department. I have personal knowledge regarding the incident which is the subject of DeCastro's Second Amended Complaint.

4.      I have reviewed my body worn camera footage that is attached to the Defendants' current Motion. I can confirm that it is a true, accurate, and complete copy of what my body worn camera captured on the day of the subject incident. The footage has not been modified, edited, or otherwise changed.

5.      Pursuant to NRS 53.045, I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Dated this __ day of December, 2023.


_____
Clinton Doolittle

Page 1 of 1

1
2

**DECLARATION OF OFC. JESSE SANDOVAL IN SUPPORT OF LVMPD
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT**

3      I, Ofc. Jesse Sandoval, hereby declare and say:

4      1.      I am over the age of eighteen (18) years of age and have personal knowledge

5    of the facts stated herein, except for those stated upon information and belief, and as to

6    those, I believe them to be true.  I am competent to testify as to the facts stated herein in a

7    Court of law and will so testify if called upon.

8      2.      This Declaration is brought to authenticate certain exhibits and court filings

9    on behalf of the Defendants in the case of *Jose DeCastro v. LVMPD, et al*., Case No. 2:23-

10   cv-00580-APG-EJY.

11     3.      I am currently a Police Officer with the Las Vegas Metropolitan Police

12   Department. I have personal knowledge regarding the incident which is the subject of

13   DeCastro's Second Amended Complaint.

14     4.      I have reviewed my body worn camera footage that is attached to the

15   Defendants' current Motion. I can confirm that it is a true, accurate, and complete copy of

16   what my body worn camera captured on the day of the subject incident. The footage has not

17   been modified, edited, or otherwise changed.

18     5.      Pursuant to NRS 53.045, I declare under penalty of perjury under the laws of

19   the State of Nevada that the foregoing is true and correct.

20     Dated this __ day of December, 2023.

21
                                                    _____

22                                                   Jesse Sandoval

23

24

25

26

27

28

MAC:14687-456 5311918_1 12/7/2023 9:56 AM

1
2

## DECLARATION OF OFC. BRANDON SORENSON IN SUPPORT OF LVMPD DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

3      I, Ofc. Brandon Sorenson, hereby declare and say:

4      1.      I am over the age of eighteen (18) years of age and have personal knowledge
5  of the facts stated herein, except for those stated upon information and belief, and as to
6  those, I believe them to be true.  I am competent to testify as to the facts stated herein in a
7  Court of law and will so testify if called upon.

8      2.      This Declaration is brought to authenticate certain exhibits and court filings
9  on behalf of the Defendants in the case of *Jose DeCastro v. LVMPD, et al*., Case No. 2:23-
10  cv-00580-APG-EJY.

11      3.      I am currently a Police Officer with the Las Vegas Metropolitan Police
12  Department. I have personal knowledge regarding the incident which is the subject of
13  DeCastro's Second Amended Complaint.

14      4.      I have reviewed my body worn camera footage that is attached to the
15  Defendants' current Motion. I can confirm that it is a true, accurate, and complete copy of
16  what my body worn camera captured on the day of the subject incident. The footage has not
17  been modified, edited, or otherwise changed.

18      5.      Pursuant to NRS 53.045, I declare under penalty of perjury under the laws of
19  the State of Nevada that the foregoing is true and correct.

20      Dated this __ day of December, 2023.

21
22      _____
        Brandon Sorenson

23
24
25
26
27
28

Page 1 of 1

MAC:14687-456 5311917_1 12/7/2023 9:56 AM

# Exhibit H

Flash Drive containing DeCastro's YouTube video detailing the subject incident, which is comprised of his own video footage, clips of BWC footage, and DeCastro's overlayed text commentary