PHILLIP A. TALBERT
United States Attorney
PARADI JAVANDEL
Special Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN TRAVIS MOORE,<br><br>Defendant. | CASE NO. 2:22-PO-00289-KJN<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ON THE BASIS THAT 41 C.F.R. § 102-74.385 IS VAGUE AND AMBIGUOUS AND UNCONSTITUTIONAL**<br><br>DATE:   August 30, 2023<br>TIME:   9:00 a.m.<br>COURT: Hon. Kendall J. Newman. |

### I.      INTRODUCTION

The defendant, Jonathan Travis Moore, argues that the Court should dismiss the charges against him on the basis that 41 C.F.R. § 102-74.385, the regulation he is charged with violating, is vague and ambiguous and unconstitutional under the First Amendment in its operation and application for this matter. *See* ECF No. 16-1. This argument is meritless. The regulation at 41 C.F.R. § 102-74.385 and its application in this case did not infringe defendant's First Amendment rights, but imposed a reasonable and viewpoint-neutral restriction in a nonpublic forum, and provided him fair notice that filming inside the Social Security Administration ("SSA") office in West Sacramento would lead to criminal consequences.

## II.   SSA OFFICE BACKGROUND

The SSA "provides financial protection for our nation's people" in part by administering at its field offices "old-age, survivors, and disability" benefits and enrolling individuals in Medicare. *See* 42 U.S.C. § 901; SSA, *About Social Security*, https://www.ssa.gov/about-ssa (last visited July 13, 2023). In doing their business at the SSA office, customers need to show documents that contain confidential personally identifiable information ("PII") or have conversations about their PII with SSA claims representatives that they do not want to appear on a YouTube video. In the video that the defendant took in this case at the SSA field office, members of the public can be seen in appointments and entering the office throughout the day to transact business for purposes of obtaining government benefits. Based on the forum's purpose of administering public benefits to customers after collecting PII and identifying documents, the SSA through its posted sign reasonably restricted the defendant and others whose videography "presents risks of duress" to these customers or may disrupt operations such as the presenting of confidential documents to SSA representatives.

## III.   STATEMENT OF THE CASE

The defendant is a self-identified investigative journalist with several social media accounts, including two YouTube accounts ("Bay Area Transparency You Tube Account" and "BayFam Clips You Tube Account") and an Instagram account ("Bay Area Transparency Instagram Account") that he uses to post videos and photographs of his "public employee conduct checks" and "first amendment auditing." *See* Bay Area Transparency, *About Bay Area Transparency,* YouTube, https://www.youtube.com/@bayareatransparency1722/about (last visited July 14, 2023).

### A.   Defendant Entered SSA Office While Recording and Refused to Comply with Official Signs and Lawful Directions

On the afternoon of July 19, 2022, the defendant entered the front entrance of the SSA office located at 825 Riverside Parkway in West Sacramento, California while video recording on his cell phone. As the defendant approached the front entrance of the SSA office, he commentated: "All right here we go Bay Area Transparency." *See* Bay Area Transparency, *Attacked at Social Security Office*

*West Sacramento, Ca First Amendment*, July 19 and 20, 2022 ("YouTube Video"),[1] 2:17-2:20; MOORE-0044. The front entrance to the SSA office conspicuously displays the rules and regulations governing persons entering the building, and specifically prohibits taking video and photographs inside the building. That day, Protective Security Officers ("PSOs") Ubana and Herrera were at the security desk at the entrance of the SSA office. Approximately eight visitors were inside the SSA office at that time.

Immediately after the defendant entered the SSA office, PSO Ubana gave the defendant actual notice that he could not record inside the SSA building without prior clearance from SSA management. The defendant identified himself as a journalist and continued recording while he walked around the SSA office, ignoring the PSO. In addition to the multiple unambiguous verbal directions to stop recording, PSO Ubana also showed the defendant the official signs posted on the SSA's interior wall on a bulletin board in English and Spanish prohibiting video recording and photography. The defendant recorded the signs prohibiting video recording and photography and again refused to stop recording. *Id*. at 2:17-4:01.

**B.     Defendant Entered Private Area of SSA Office and Continued Recording**

Rather than comply with PSO Ubana's repeated and unambiguous verbal instructions to stop recording or the official signs prohibiting recording and photography, the defendant claimed that he was going to grab pamphlets and continued. He went through a doorway to a private area that contained five interview windows with desks that were divided by wood partitions for SSA visitor interviews. PSO Ubana advised the defendant that the area was private and again directed the defendant to stop recording. Again, the defendant refused to comply, instead replying: "Negative I ain't turning it off." *Id*. at 4:02-4:49.

**C.     Defendant Argued that Right to Record Was Protected under First Amendment and Cited Department of Homeland Security Memo**

While in the private area, the defendant was also notified by the SSA manager that the area was private and instructed to stop recording. The SSA manager also directed the defendant to the signs prohibiting video recording and photography. *Id*. at 4:24-4:49. The defendant refused to stop recording

---

[1] The video is available at https://www.youtube.com/watch?v=0MPnJL22O6E (last visited July 13, 2023).

and argued that the private area he was recording was open to the public and he was exercising his First Amendment right.  The defendant aggressively insisted he needed the SSA manager's name so that he could file a complaint against her.  He argued that he was an independent journalist and had the right to record, which he claimed was explained in a Department of Homeland Security memo.  *Id*. at 5:48-6:27; *see* Department of Homeland Security Operational Readiness Order HQ-ORO-002-2018 Photography and Videotaping Federal Facilities, March 30, 2018, https://www.dhs.gov/publication/operational-readiness-order-photography-and-videotaping-federal-facilities (last visited July 14, 2023) ("2018 DHS Memo"); Department of Homeland Security FPS Information Bulletin HQ-IB-012-2010 Photographing the Exterior of Federal Facilities, August 2, 2010, https://nvcopblock.org/wp-content/uploads/2018/03/Homeland-Security-Bulletin1.pdf (last visited July 14, 2023) ("2010 DHS Memo").

       **D.**     **PSOs Detained Defendant**

PSO Ubana advised the defendant that he would be detained until Federal Protective Services ("FPS") arrived.  He asked the defendant to turn around for his safety, which the defendant refused and instead argued: "you ain't detaining me…the hell you are…you're out of your mind if you think you're detaining me…you're a security guard, you ain't detaining me."  *YouTube Video* at 5:48-6:10.  The defendant again cited a Department of Homeland Security memo argued that it said: "any federal area that's open to the public can be recorded, it's our First Amendment right.  I'm an independent journalist.  *Id*. at 6:10-6:27.

The SSA Manager replied: "If you want to get me your information then I can have our regional public affairs speak with you, but at this point you are being detained unfortunately, so thank you."  *Id*. at 6:33-6:38.  The defendant aggressively responded: "Under what authority?  You're a security guard, you don't detain…You're out your mind bro, you ain't touching me, hell no, absolutely don't touch me…don't touch me, like I said I'm telling you right now if you touch me I'm defending myself, don't touch me…"  *Id*. at 6:39-7:14.

PSO Herrera notified the FPS of the situation.  FPS confirmed that the PSOs should detain the defendant until their arrival.  PSO Herrera notified the defendant that FPS had advised the PSOs to detain the defendant.  The defendant resisted and backed away while continuing to argue with the PSOs.

The PSOs asked the defendant to stop fighting and resisting, but the defendant continued to fight and resist the PSOs. It took both PSOs to secure the defendant's hands to prevent him from possibly striking the PSOs and to handcuff the defendant. The defendant's cell phone fell to the ground, which the defendant demanded he needed and warned the PSOs not to turn off. The PSOs led the defendant back through the doorway to the private area and asked the defendant to sit, which the defendant refused to do. PSO Herrera returned the defendant's phone to his pocket without stopping the recording or turning off the phone. While waiting for FPS to arrive, the defendant became more belligerent and told PSO Herrera that he was going to sue him, take his home, so he hoped PSO Herrera had another way to feed his children. He also continued to call the PSOs rent-a-cops that were only allowed to observe and report.

### E. FPS Arrived at SSA Office and Read Regulations to Defendant

FPS Inspectors Castrellon and Mariana arrived at the SSA office and spoke to the defendant. The defendant argued that he was arrested unlawfully and was permitted to record inside of the SSA facility as stated in the 2010 DHS Memo, which was revised by the 2018 DHS Memo. FPS Inspector Castrellon read to the defendant 41 § CFR 102-74.420 (Photographs for News, Advertising, or Commercial Purposes), to which the defendant argued was not a law and that it was his First Amendment right to record what he wanted to record. Inspector Castrellon repeated the regulation to the defendant. The defendant remained argumentative and aggressive while continuing to argue that his right to record inside of the SSA office was protected by the First amendment.

The FPS Inspectors led the defendant out of the private area and into the main SSA office area and showed the defendant the same official signs prohibiting video recording and photography posted to the interior walls of the SSA office, which PSO Ubana had previously shown the defendant. The Inspectors then led the defendant outside of the SSA office and repeatedly showed the defendant the Code of Federal Regulations and official signs prohibiting video recording and photography posted conspicuously at the front entrance of the SSA office. The Defendant aggressively argued that he need not follow the signs: "that's a piece of paper…that's not a law." *Id*. at 18:41-19:45.

### F. FPS Attempted to Deescalate Situation

In an attempt to deescalate the situation, Inspector Castrellon clearly warned the defendant and

let him leave. He advised the defendant: "I'm going to give you a chance. You can leave or I will cite you." *Id*. at 18:30-18:40. The defendant followed the FPS Inspectors to their patrol vehicles asking if he could go back into the SSA office, to which Inspector Castrellon replied: "If you have common sense, what I told you, follow it." *Id*. at 22:05-22:42.

The defendant failed to comply with Inspector Castrellon's instructions. After the FPS left the scene, the defendant again approached the entrance of the SSA office while recording. Due to the disturbance caused by the defendant, the PSOs had closed the front entrance of the SSA office, and were only permitting in one visitor at a time. PSO Herrera opened the front door to allow in a visitor at which time the defendant tried to follow the visitor into the SSA office. The defendant jammed his foot in door to prevent the PSOs from closing the front door. PSO Herrera repeatedly asked the defendant to please move his foot from the door and that as he had already been told he could not re-enter the SSA office. The defendant argued that he needed to get information. The defendant kept his foot in the door and aggressively argued: "There was no law…I need to get information…" The defendant then falsely asserted: "They bounced and they told me there's no law. That's why they left. That's why they left…" While PSO Herrera repeatedly asked the defendant to please remove his foot from the door, the defendant became increasable belligerent and stated: "You already know I'm not afraid to you bro. You already know… I'm not afraid of you." *Id*. at 23:24-25:04.

**G.   Defendant Shoved PSO While Trying to Force His Way Back Into SSA Office**

The defendant continued to argue that he needed to get: "the lady's info who had you guys boot me out of here…" PSO Herrera advised the defendant that he could call to obtain that information. The defendant continued to argue: "I need to get in… Give me my info I need. It's public info. Go ahead…," while PSO Herrera advised the defendant: "Sir, you're holding me back. Move out of my way right now." PSO Herrera asked the defendant to move again and the defendant refused. The defendant then shoved PSO Herrera and tried to force his way back into the SSA office. PSO Herrera tried to get space between himself and the defendant by pushing the defendant back, so that PSO Ubana could secure the door behind them. The defendant's cell phone fell to the ground again while recording. The defendant swung his tripod at PSO Herrera after which PSO Herrera deployed his baton to defend himself. *See* Bay Area Transparency, *Attacked by a security guard for the Social Security*

*Administration twice for recording!!!!!!*, July 19, 2022[2]; *see also* MOORE-0045.

    **H.**    **PSOs Detained Defendant a Second Time**

The PSOs detained the defendant again and notified FPS. FPS Inspector Castrellon arrived at the SSA office again. Because Inspector Castrellon was not able to view video footage of the incident, the defendant was warned not to return to the SSA office and permitted to leave. Ultimately, FPS issued a Violation Notice to the defendant, which was mailed the defendant's home address. *See* ECF No. 1-1 (Original Ticket).

### IV.    ARGUMENT

    **A.**    **41 C.F.R. § 102-74.385 Was Applied Properly, Is Not Vague and Ambiguous, and Did Not Violate Defendant's Constitutional Rights**

The defendant argues that 41 C.F.R. § 102-74.385 is vague and ambiguous, and applied unconstitutionally in this instance. Section 102-74.385 provides: "Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals." Section 102-74.385 applies to all persons entering in or on the federal property, *see* 41 C.F.R. § 102-74.365.

    a.    <u>41 C.F.R. § 102-74.385 Is Not Vague or Ambiguous</u>

The defendant argues that the signs posted to the SSA office interior wall prohibiting video recording are vague and ambiguous. That argument is meritless.

To survive a void for vagueness claim, a statute must state the crime with "sufficient definiteness that ordinary people can understand what conduct is prohibited" and the statute does not "encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). 41 C.F.R. § 102-74.385 is clear and worded so that ordinary people can understand what conduct is prohibited. *See U.S. v. Stansell*, 847 F.2d 609 (9th Cir. 1988) (finding § 102-74.385 is not substantially overbroad or vague); *see also U.S. v. Gileno*, 350 F.Supp.3d 910 (C.D.C 2018) (finding the directives of Court Security Officers to remove camera from the Courthouse not unconstitutionally overbroad, vague, or a violation of constitutional rights). Moreover, it does not encourage arbitrary and discriminatory

---

[2] The video is available at https://www.instagram.com/tv/CgR23UGFWqn/?igshid=MzA0OGM2MjU4Zg%3D%3D (last visited July 13, 2023).

enforcement. As clearly provided by 41 C.F.R. § 102-74.365, Section 102-74.385 applies to all persons entering in or on the federal property, *see* 41 C.F.R. § 102-74.365.

The regulation gave the defendant fair notice of what was expected of people entering the facility and that failure to comply with lawful directives was punishable. 41 C.F.R. § 102-74.385 is clear that "[p]ersons in and on property must at all times comply with official signs" and "lawful direction." Here, the SSA's security directives prohibited recording and photography, as clearly stated on the official signs posted at the front entrance and interior wall of the SSA office that prohibited recording and photography clearly explained their authority on their face. The following official sign was posted conspicuously to the front entrance of the SSA office:

> "Social Security Administration
> ! WARNING !
> Prohibition of Photography, Videography, and audio recording in Social Security Administration offices
> 1. In accordance with 41 CFR 102-74.420, agency security directives specifically prohibits all photography and video recording in agency-occupied facilities (including entrances, lobbies, foyers, corridors, and auditoriums) unless approved in advance and in writing by an authorized official of the agency. This includes security officers, security screening equipment systems, or countermeasures.
> 2. Business conducted within the premises of this building involves the sharing of protected identity information such as social security numbers, birth dates, banking information, and other sensitive personal information, which may significantly harm customers if the information is released.
> 3. To request permission to photograph or video record at this facility, contact the on-site manager."

Moreover, the following official sign, in English and Spanish, was conspicuously posted to the front entrance and the interior wall of the SSA office:

> "PHOTOGRAPHY AND VIDEOGRAPHYAHY PROHIBITED
> [*Images of crossed out camera, cell phone, and tablet/laptop*]
> WARNING
> PHOTOGRAPHY AND VIDEOGRAPHY PROHIBITED
> Federal Law and SSA policy prohibits taking pictures or video inside SSA offices without the expressed written consent of an authorized official of the agency. These rules apply to all devices with camera and video capability."

Additionally, as required by 41 C.F.R. § 102-74.390, the Appendix to part 102–74 of the CFR was posted at the front entrance of the SSA office.

The PSOs stationed in the SSA office also verbally gave the defendant multiple unambiguous

security orders that he could not record inside of the SSA. The posted signs and verbal order are sufficient to defeat any vagueness as it applies "in his own case." *United States v. Baldwin*, 745 F.3d 1027, 1031 (10th Cir. 2014) (rejecting vagueness challenge under 41 C.F.R. § 102.74.385).

The defendant argues that the signs posted to the SSA office interior wall that prohibited video recording are "unofficial signs." This argument is meritless. First, the prohibitory signs posted to the front entrance and interior wall of the SSA office prohibiting recording and photography, referenced above, were official signs of a prohibitory, regulatory, or directory nature as required by 41 C.F.R. § 102-74.385. As detailed above, the official signs cite the SSA's security directives and the Federal Regulations, specifically 41 C.F.R. § 102-74.420 on one of the official signs, on their face as their authority. Second, the official signs prohibiting recording and photography are posted to both the interior wall and front entrance of the SSA office, and not just the interior wall as the defendant incorrectly asserts. Third, the official signs did not violate 41 C.F.R. § 102-74.420, which provides that: "Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of— (a) Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned; (b) Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and (c) Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes." In this case, the defendant zeroes in on the last section, which permits photography of building entrances, lobbies, foyers, corridors, or auditoriums for news purposes, and the he completely overlooks the conditional introduction: "Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits…"

      b. <u>41 C.F.R. § 102-74.385 Was Constitutionally Applied</u>

The defendant argues that 41 C.F.R. § 102-74.385 is applied unconstitutionally in this instance as it violates his First Amendment right to gather news media in public fora as free press. The defendant argues that he was lawfully conducting activities for "news purposes" and as a member of the media, he and is legally allowed to collect information that is of "public interest."

However, the law is clear that such actions are not protected by the First Amendment. The right to free speech is not without its limitations, and a regulation that is unrelated to the suppression of

expression is subject to reasonable time, place, and manner restrictions. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 285 (2012) (*citing United States v. O'Brien,* 391 U.S. 367, 377, 88 (1968)).

The defendant mistakenly argues that the SSA office is a public forum, which it is not. The SSA office is a nonpublic public forum. "Nonpublic fora are areas that do not, by tradition or designation, serve as a forum for public communication." *See Preminger v. Peake, 552 F.3d 757, 765 (9th Cir. 2008) (t*he immigration court is a nonpublic forum); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 681 (1992) (airport terminal is a nonpublic forum); *Szabo*, 760 F.3d at 1002 (VA medical facility is a nonpublic forum). The Supreme Court has ruled that a post office is a nonpublic fora. *See U.S. v. Kokinda*, 497 U.S. 720, 721 (1990) (The postal sidewalk is not a traditional public forum. The sidewalk was constructed solely to provide for the passage of individuals engaged in postal business, not as a public passageway. Nor has the Postal Service expressly dedicated its sidewalk to any expressive activity.) The SSA office, like an immigration court, airport terminal, VA medical facility, and post office, is a nonpublic forum.

Furthermore, the government's justification for limiting speech in a nonpublic forum, such as the SSA office, need only be reasonable as long the restriction is content-neutral. *See Int'l Soc. For Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679-681 (1992). *See also McCullen v. Coakley*, --- U.S. ---, 134 S.Ct. 2518, 2529 (2014) (public fora are areas that have historically been open to the public for speech activities, such as public streets and sidewalks). 41 C.F.R. § 102-74.385 is unrelated to the suppression of free expression, serves a more-than-reasonable government interest by preventing Federal security screening procedures from being scrutinized by untoward eyes, and any incidental restriction on free expression is no greater than is essential to further that interest. *See United States v. O'Brien,* 391 U.S. at 377, 88. Recording inside of a non-public forum such as the SSA building is thus not protected by the First Amendment. 41 C.F.R. § 102-74.385 did not infringe defendant's First Amendment rights, but imposed a reasonable and viewpoint neutral restriction in a nonpublic forum.

    c. <u>Lawful Directions Issued by Federal Police and PSOs</u>

The defendant argues that the directions of the Federal police officers and PSOs were unlawful because: "any directives in violation of Federal regulations, the Constitution or other laws are not LAWFUL directives." That argument is meritless.

In *United States v. Huizar,* the Ninth Circuit observed that cases sustaining convictions under § 102-74.385 involved the following elements for establishing lawful directions: (1) "officers gave defendants an unambiguous command (often multiple times)"; (2) "officers ensured that the command was understood" (3) "officers communicated that defendants would be arrested for failing to comply with an order"; and (4) "defendants were given a reasonable opportunity to comply." *See* 762 F. App'x 391, 392 (9th Cir. 2019). The Ninth Circuit noted that "basic principles of due process likely require that any 'lawful direction' contain all, or many, of these qualities." *Id.*

Here, the defendant was cited because of his repeated refusal to follow the lawful directions of FPS Inspectors and PSOs, directions that were entirely appropriate. The defendant entered the SSA office while recording, even though the official signage conspicuously stated that recording and photography were prohibited. The defendant understood and refused to comply with the multiple unambiguous commands of the PSOs to stop recording inside of the SSA office, the defendant was advised by PSOs and FPS that he would be detained for failing to comply, and the defendant was given more than reasonable opportunity to comply.

The PSOs and FPS Inspectors' actions were lawful and designed to promote orderly conduct on federal property. *See United States v. Swartz*, No. 15-CR- 00351-MEJ-l, 2015 U.S. Dist. LEXIS 99880, at *13-15 (N.D. Cal. July 30, 2015) (officer direction was lawful where the order was "based on a good-faith investigation of the incident and information provided by witnesses, and [] was therefore not arbitrary and was issued in furtherance of promoting public order.").

## V.   CONCLUSION

For the above-stated reasons, the government requests that the Court deny the defendant's motion to dismiss.

DATED: July 17, 2023

Respectfully Submitted,

PHILLIP A. TALBERT
United States Attorney

*/s/ Paradi Javandel*
PARADI JAVANDEL
Special Assistant U.S. Attorney