**MICHAEL MEE, ESQ.**
Nevada Bar No. 13726
400 S 4th St #500
Las Vegas, NV 89101
(702) 990-0190
mmee@defenselawyervegas.com
*Attorney for Plaintiff Jose DeCastro*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JOSE DECASTRO,

Plaintiff,

vs.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT; STATE OF NEVADA;
BRANDEN BOURQUE; JASON TORREY; C.
DINGLE; B. SORENSON; JESSE
SANDOVAL; OFFICER DOOLITTLE and
DOES 1 to 50, inclusive,

Defendants.

Case No.: 2:23-cv-00580-APG-EJY

**PLAINTIFF'S RESPONSE AND
OPPOSITION TO DEFENDANTS' JOINT
MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT, OR
IN THE ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT**

**The undersigned that this Response is timely filed pursuant to the Order of this Court.**

COMES NOW, Plaintiff JOSE DECASTRO, by and through undersigned counsel, who

hereby submit the following Opposition to Defendants' Joint Motion to Dismiss Plaintiff's Second

Amended Complaint, or in the Alternative, Motion for Summary Judgment.

1

This Opposition is based upon the Memorandum of Points and Authorities included herein, any evidence submitted, and any oral argument to be heard by the Court in resolving the pending Motion(s).

DATED this 2nd day of February, 2024.

**/s/ Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar No. 13726
400 S 4th St #500
Las Vegas, Nevada 89101
(775) 990-0190
mmee@defenselawyervegas.com
Attorney for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **Procedural History.**

Plaintiff filed a Complaint on April 17, 2023. ECF 1. Plaintiff filed a Motion for Discovery on April 28. 2023. ECF 7. Plaintiff filed a First Amended Complaint on May 7, 2023.

Defendants filed a joint (or subsequently joined) Motion to Dismiss the First Amended Complaint on June 1, 2023. ECF 15.  On June 16, 2023, Plaintiff filed a Response to Motion to Dismiss. ECF 27. On July 6, 2023, Defendants filed A Motion to Stay Discovery. ECF 32. A Reply in Support of that Motion to Dismiss was filed on June 23, 2023. ECF 30.

On July 6, 2023, an Answer to Complaint was filed by the Las Vegas Metropolitan Police Department. ECF 33.

On October 23, 2023, this Court entered an Order Granting In Part the Defendants' Motion to Dismiss. As part of that Order, the Court permitted Plaintiff to file an Amended

Complaint by November 22, 2023. ECF 44. Subsequent extensions of time were granted by the Court for the filing of that Amended Complaint.

On November 27, 2023, Plaintiff filed his Second Amended Complaint. ECF 61. Defendants filed a joint Motion to Dismiss or Alternatively for Summary Judgment. *See* ECF 66.

On January 10, 2024, undersigned counsel entered his Notice of Appearance. On February 2, 2024, the parties filed a Stipulation to Extend Time for Opposing the pending Motion to Dismiss, extending time to February 2, 2024, based upon counsel's recent appearance in the case. ECF 77. That Stipulation is pending.

## II.   **Factual Background[1].**

As will be discussed further herein, upon a Motion to Dismiss a claim for failure to plead a claim for relief, those factual claims made by the Plaintiff are taken as true at the pleading stage, and dismissal is only appropriate when no reading of this set of facts could entitle Plaintiff to relief.

Here, Plaintiff's Second Amended Complaint sets forth the following relevant facts: Officer Borque was visibly upset when he came after Plaintiff. ¶ 44. Borque walked aggressively toward Plaintiff as if to use force. ¶ 45. Borque manhandled Plaintiff and stated "I am going to put my hands on you." ¶ 46.Broque put his hands on Plaintiff unnecessarily. ¶ 46. Officers forcefully grabbed Plaintiff even though he was cooperating fully. ¶ 48..

Plaintiff made the Officers aware that he suffered from a prior shoulder injury. ¶ 51. Officer Sandoval yanked and squeezed forcefully on Plaintiff's arm despite his shoulder injury when such was unnecessary. ¶ 51. Plaintiff was not a threat, was cooperating, and was surrounded by four different police officers. ¶ 52.

---

[1] Additional facts are set forth herein in response to each argument made by the Defendants, where applicable.

Sandoval ordered Plaintiff to look straight ahead for no legal reason and Sandoval squeezed Plaintiff's elbow, applying nerve pressure on the ulnar nerve, merely for Plaintiff not immediately looking straight ahead. ¶ 53. Sandoval intentionally and deliberately pressured the ulnar nerve to cause pain and permanent damage. ¶ 53. Sandoval stated it was officer policy to use pain compliance on ulnar nerves for random commands including not looking straight ahead. ¶ 55.

These actions caused Plaintiff severe pain and paresthesia from compression of his ulnar nerve by Officers. ¶ 56. Plaintiff pleaded for help in response to this physical pain which was ignored by officers. ¶ 57. Defendants squeezed Plaintiff's nerve for more than fifteen total minutes. ¶ 58.

Sandoval spread Plaintiff's name uncomfortably wide and purposely and maliciously and with significant force struck Plaintiff in the testicles with what felt like a closed fist. ¶ 62. Defendants also forcibly moved Plaintiff into police vehicle and pulled the seat belt as tight as they could, knocking the air out of the Plaintiff. ¶ 63.

Defendants caused Plaintiff sustained physical injuries, physical main, mental suffering, emotional distress, and other damages. ¶ 66. Plaintiff did not do anything which would put any officer in reasonable fear for his or her safety. ¶ 67. That Borque and Sandoval engaged in excessive force against the Plaintiff after he was already in custody, causing physical and mental damages. ¶ 85-87.

## III.   Legal Argument.

### A.   Rule 12(b)(6) Motion to Dismiss Standard.

As a general rule, "[d]istrict courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss." Roche v. Barclays Bank Delaware, 2019 WL 4855141 (D.Nev. 2019). "The court must first accept as true all well-pled factual

allegations [in the complaint], recognizing that legal conclusions are not entitled to the assumption of truth." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "The court must then consider whether the well-pled factual allegations state a plausible claim for relief." Id. "A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." Id.

In particular, "acomplaint must make direct or inferential allegations about 'all the material elements necessary to sustain recovery under some viable legal theory.'" LHF Productions, Inc. v. Kabala, 2017 WL 4801656 at * 6 (D.Nev 2017) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 (2007)). In determining whether a pleading states a claim upon which relief can be granted, the Court should bear in mind that the Federal Rules have a "relaxed notice pleading standard" for claims. Twombly, 550 U.S. at 575. A complaint need only set forth "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Fed.R.Civ.P. 8(a)(2)-(3) ("a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought").

The liberal pleading standard of the Federal Rules "contains 'a powerful presumption against rejecting pleadings for failure to state a claim'." Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248-49 (9th Cir. 1997) (quoting Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985)). "The issue is not whether the plaintiff ultimately will prevail but whether he is entitled to offer evidence in support of his claims." Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46; see also Hicks v. Small, 69 F.3d 967, 969 (9th Cir. 1995). Further, where a complaint can be amended to state a claim for relief[2], leave to amend, rather than dismissal, is the preferred remedy.

**B.  <u>Public Record or Uncontested Video Evidence and Authenticity.</u>**

The Defendants in this action ask this Court to "look to matters of public record, or to documents which the complaint necessarily relies, if their authenticity is not contested." The Defendants assert that Body Worn Camera submitted by the Defendants, in addition to DeCastro's alleged YouTube videos about the event, constitute such evidence. *See* Motion to Dismiss (ECF 66) at p. 8.

In support of the authenticity of the body camera video submitted by the Defendants, the Defendants have submitted Exhibit G – Declarations of Defendant Officers. *See* ECF 66 at Ex. G. Plaintiff observes for the record that Officer Torrey's Declaration is signed and dated. *Id*. Officer Borque's Declaration is signed but not dated. *Id*. Officer Dingle's declaration is signed but not dated. *Id*. Officer Doolittle's Declaration is neither signed nor dated. *Id*. Officer Sandoval's Declaration is neither signed nor dated. *Id*. Officer Sorenson's Declaration is neither signed nor dated. *Id*.

---

[2] Counsel recognizes this Court has already previously granted leave to Amend, however all prior Amendments have been made while Plaintiff was representing himself *pro se*. If this Court is inclined to grant dismissal of any of the causes of action plead in the Second Amended Complaint, it is respectfully requested that one further instance of leave to amend, now with the assistance of counsel, would be appropriate to protect the Plaintiff's rights.

For these reasons, there is insufficient evidence in the record to support the authenticity of much of this video evidence, based upon the lack of these declarations being signed. In addition, Plaintiff, prior to engaging in full discovery, has no way of knowing whether any videos produced by the defendant officers, or Las Vegas Metropolitan Police Department, are full copies or excerpted copies of the original videos. Plaintiff is not able to concede the full authenticity of such videos (that they were not clipped or excerpted, at minimum, from original files, and that they do not omit relevant evidence), without a full opportunity to engage in discovery.

Plaintiff can acknowledge that the subject videos at least partially depict the events described in the Complaint, but as Plaintiff is not involved in obtaining, storing, clipping or not clipping, excerpting or not excerpting these videos, Plaintiff cannot concede that the videos are *full and complete* copies of the videos recorded by the subject defendants on the date of the incident, and objects on that basis to their consideration within the Rule 12(b)(6) framework prior to full discovery being completed.

Unlike the BWC video evidence, YouTube videos subsequently produced by the Plaintiff are not inherently video evidence "on which the complaint necessary relies." These videos are created after-the-fact, and comingle commentary with prior recordings of the events in question, among other matters. While the Defendants might argue that such evidence has impeachment value, such impeachment would be relevant for trial, not a Rule 12(b)(6) motion to see whether or not claims have been properly set forth. As the Complaint does not and cannot logically "rely" upon such after-the-fact videos created by the Plaintiff, they do not fall squarely within this "uncontested evidence" framework which the Defendants seek to invoke. This evidence is not

properly before this Court for consideration under Rule 12(b)(6) and consideration must be deferred until after discovery has been completed.

### C. **A Motion for Summary Judgment is Premature and would Deny Plaintiff a Reasonable Opportunity to Engage in Discovery.**

Next, the Defendants argue, in the alternative, that such video evidence can properly convert the pending Motion into a Motion for Summary Judgment which is, they argue, ripe for this Court's consideration. *See* Defendants' Motion to Dismiss at p. 9-10.

Although Rule 56 allows a motion for summary judgment to be filed "at any time," Rule 56 also allows the court to issue an order, as is just, denying the motion or ordering a continuance for the opposing party to pursue discovery. Fed.R.Civ.P. 56. Generally, a party is entitled to an opportunity to pursue discovery before responding to a summary judgment motion. *Id.*

Therefore, this Court should find that converting the present Motion into a Motion for Summary judgment is premature pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. *Smith v. Jones*, 2021 WL 5968455 at *1 ("Motions for summary judgment can be filed at any time but are often denied as premature when submitted before the parties have had time to conduct at least some discovery."). Therefore, the motion for summary judgment should be denied to allow for both parties to complete discovery. *Herndon v. State ex rel. NDOC*, 3:22-CV-00271-ART-CLB, at *7 (D. Nev. June 14, 2023).

Not only would summary judgment, *on any of the causes of action*, be premature with respect caselaw governing a litigants' right to engage in discovery regarding properly-stated claims for relief, such a request is here contrary to the parties stipulated discovery plan in this action. The parties have set the following deadlines: March 15, 2024 – Expert Disclosures; April 15, 2024 – Amend the Pleadings; May 15, 2024 – Discovery Cut-Off Date; June 14, 2024 – Dispositive

Motions. ECF 54 at p. 3. The parties further agreed to limit "no more than ten (10) depositions by the Plaintiff and no more than ten (10) depositions by" the Defendants. *See* ECF 54 at p. 3-4.

While such a discovery schedule may not be tantamount to barring summary judgment prior to a fair opportunity to engage in those scheduled instances of discovery, the Court should regard granting summary judgment in such cases as being extremely premature, especially where the Plaintiff has properly stated claims for relief, and where summary judgment is sought well before any of the above discovery deadlines has elapsed.

Finally, even if this Court were to rely upon the fact[3] that Plaintiff has been able to engage in "some discovery" prior to receiving the motion for summary judgment, it must be noted that Plaintiff was representing himself *per se* in this matter until January 10, 2024. Undersigned counsel has been on this case less than a month at the time of this filing, and is still in the process of fully reviewing the **75 filings** which were made by the parties in this matter prior to the undersigned's notice of appearance. Undersigned counsel is still reviewing what additional discovery requests from Plaintiff to the Defendants would be warranted at the present time, and discovery has not been closed. For this additional reason, it would be premature to deny Plaintiff a full opportunity to litigate those claims, via additional discovery requests, which, as set forth in the Second Amended Complaint, have been properly pleaded.

---

[3] Undersigned counsel notes for the record that counsel for the Defendants has responded with great courtesy, and granted extensions where requested, due to undersigned counsel's late entry onto this case, including for filing an Opposition to the present through February 2, 2024, but nevertheless there is no avoiding the difficulties such late arrival presents for attempting to address an early request for summary judgment where discovery is ongoing.

### D.  **Plaintiff has Plead Valid Claims Under Rule 12(b)(6).**

### **Third Cause of Action – Excessive Force**.

A claim of excessive force during an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989).

To determine whether the use of force by a law enforcement officer was excessive under the Fourth Amendment, a court must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id*. at 397.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotation marks omitted). In this analysis, the Court must consider the following factors: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff actively resisted arrest. *Id*.; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment, let alone dismissal under Rule 12(b)(6). "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d

846, 853 (9th Cir. 2002); *see also Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

Here, Plaintiff's Second Amended Complaint sets forth the following relevant facts: Officer Borque was visibly upset when he came after Plaintiff. ¶ 44. Borque walked aggressively toward Plaintiff as if to use force. ¶ 45. Borque manhandled Plaintiff and stated "I am going to put my hands on you." ¶ 46. Broque put his hands on Plaintiff unnecessarily. ¶ 46. Officers forcefully grabbed Plaintiff even though he was cooperating fully. ¶ 48.

Plaintiff made the Officers aware that he suffered from a prior shoulder injury. ¶ 51. Officer Sandoval yanked and squeezed forcefully on Plaintiff's arm despite his shoulder injury when such was unnecessary. ¶ 51. Plaintiff was not a threat, was cooperating, and was surrounded by four different police officers. ¶ 52.

Sandoval ordered Plaintiff to look straight ahead for no legal reason and Sandoval squeezed Plaintiff's elbow, applying nerve pressure on the ulnar nerve, merely for Plaintiff not immediately looking straight ahead. ¶ 53. Sandoval intentionally and deliberately pressured the ulnar nerve to cause pain and permanent damage. ¶ 53. Sandoval stated it was officer policy to use pain compliance on ulnar nerves for random commands including not looking straight ahead. ¶ 55.

These actions caused Plaintiff severe pain and paresthesia from compression of his ulnar nerve by Officers. ¶ 56. Plaintiff pleaded for help in response to this physical pain which was ignored by officers. ¶ 57. Defendants squeezed Plaintiff's nerve for more than fifteen total minutes. ¶ 58.

Sandoval spread Plaintiff's name uncomfortably wide and purposely and maliciously and with significant force struck Plaintiff in the testicles with what felt like a closed fist. ¶ 62.

Defendants also forcibly moved Plaintiff into police vehicle and pulled the seat belt as tight as they could, knocking the air out of the Plaintiff. ¶ 63.

Defendants caused Plaintiff sustained physical injuries, physical main, mental suffering, emotional distress, and other damages. ¶ 66. Plaintiff did not do anything which would put any officer in reasonable fear for his or her safety. ¶ 67. That Borque and Sandoval engaged in excessive force against the Plaintiff after he was already in custody, causing physical and mental damages. ¶ 85-87.

Here, turning to the relevant factors, it is clear that Plaintiff has properly plead his excessive force claims: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff actively resisted arrest. *Id*.; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

Here, Plaintiff has sufficiently plead that the severity of the crime at issue was minor, and Defendants cannot reasonably contest this. Plaintiff has plead that he was arrested as being targeted as a member of the press and for filming police activity. Defendants had no reason to believe Plaintiff was dangerous. He was merely filming a traffic stop.

Second, at the time the allegations of excessive force occurred, Defendant was already detained, physically restrained, and cooperating. Defendants do not seriously contest these facts or present any evidence to support a reasonable belief that Defendant, surrounded by four officers and handcuffed, presented a safety risk.

Defendants now claim that they were required to squeeze Plaintiff's ulnar nerve, as plead in the Complaint, despite the fact that he was cooperating, surrounded by officers, and handcuffed,

because they "needed to maintain control of DeCastro so that he did not fall and injure himself. This is objectively reasonable." *See* Defendants' Motion at 12. This explanation is incredible. The Defendants offer no authority for the notion that officers must squeeze a suspect's ulnar nerve, causing physical pain and damage, for 15 minutes, in order to prevent them from falling down. There is no evidence in the record that there was any special circumstance making DeCastro likely to fall down at any point during this physical restraint.

Next the Defendants argue that the claim that the defendants struck Plaintiff in the groin is belied by the video evidence. Again, this is not the standard. The standard is whether the claim has been properly plead. There is no question the allegation about striking Plaintiff in the groin unnecessarily and for no law enforcement purpose was validly plead.

However, even if this Court is inclined to consider the video evidence, the video evidence is not dispositive. The Defendants claim that the video "confirms this did not happen" is completely overstated. The video is not clear or detailed enough to show the degree of force, the force of impact, or the manner in which the contact was made in which the officer struck the Defendant in the groin. Whether this was a normal pat down, or a retaliatory strike for the Plaintiff exercising his rights and/or being perceived as annoying to the officer, is a matter for the jury. It cannot be definitively determined by the video. The Defendants claim this was a "routine patdown," Plaintiff claims it was a retaliatory "strike," the video confirms that *some contact was made* to the Plaintiff's groin. This is not a situation where a video shows that nothing similar to the allegation occurred, this is a video that shows forcible contact did occur but leaves open to the finder of fact the exact meaning, degree, or legal significance, of that forcible contact.

Accepting these allegations as true, Plaintiff did not pose a threat at the time these acts of physical violence were engaged in as plead in the Complaint. These allegations state a plausible

claim for relief for excessive force in violation of Plaintiff's Fourth Amendment rights. *Richardson v. Reno Police Dep't*, No. 3:17-cv-00383-MMD-WGC, at \*6-8 (D. Nev. Aug. 9, 2018).

### Fifth, Sixth, and Eighth Causes of Action

"[D]iscriminatory enforcement of a speech restriction amount[ing] to viewpoint discrimination i[s] [a] violation of the First Amendment," even where the statute would otherwise be a permissible restriction of speech if equally applied. *Ballentine v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-01584-APG-GWF, at \*8 (D. Nev. Apr. 27, 2015). In other words, a selective enforcement claim based on viewpoint discrimination can be brought under both the First and Fourteenth Amendments. "[T]he fundamental principle behind content analysis is that government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Id*.

Courts must be willing to entertain the possibility that content-neutral enactments are enforced in a content-discriminatory manner. If they were not, the First Amendment's guarantees would risk becoming an empty formality, as government could enact regulations on speech written in a content-neutral manner so as to withstand judicial scrutiny, but then proceed to ignore the regulations' content-neutral terms by adopting a content-discriminatory enforcement policy. *Id*.

To bring a selective-enforcement claim under the First Amendment, plaintiffs must point "to a control-group against which the plaintiff may contrast enforcement practices." This is a similar showing to what plaintiffs need when alleging their equal protection claim. Because plaintiffs have adequately alleged a selective enforcement claim under the Equal Protection Clause based on viewpoint discrimination, they have also adequately alleged their First Amendment claims. *Id*.

14

"Further, for the same reasons that qualified immunity cannot shield defendants from any equal protection claim based on selective enforcement, qualified immunity will not shield defendants against a selective enforcement claim brought under the First Amendment." *Id.*

### Retaliation and Selective Enforcement Claims has been Properly Plead

Here, Defendants first claim that the retaliation claim "fails because the Officers had Probable Cause to Arrest DeCastro." *See* Defendants' Motion to Dismiss at p. 15. The Defendants claim that, under this circumstance, DeCastro's claim can only survive if he "can present objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* Defendants argue that "DeCastro provides no factual allegations suggesting that other individuals who i*llegally interfered with traffic stops were not arrested.*" *Id.*

First of all, DeCastro denies that he illegally interfered with any traffic stop for the reasons fully alleged in the Second Amended Complaint. "At the outset, individuals have a "First Amendment right to film matters of public interest, " which includes law enforcement officers performing their duties. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).

Indeed, the First Circuit has held that the First Amendment right to record law enforcement is "clearly established" even for the purposes of qualified immunity. *See Glik*, 655 F.3d at 85 ("[A] citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment."). On recording crimes, see, for instance, *Adventure Outdoors*, *Inc*. *v*. *Bloomberg*, 552 F.3d 1290, 1298 (11th Cir. 2008) (observing that speech that "alleged violations of federal gun laws" involved a matter of public concern); *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) (holding that an article addressing art-market fraud "is certainly

protected" under the First Amendment). *Project Veritas v. Schmidt*, 72 F.4th 1043, 1081 n.34 (9th Cir. 2023).

To the extent the Defendants in this case issued orders to Plaintiff to move back or stop filming under the belief that Nevada's obstruction statute permits Officers to issue such orders to protect the "privacy" of a third-party citizen with whom law enforcement is interacting, again, has no basis in the law, nor have the Defendants cited any law to this effect. It is not obstruction of justice to passively refuse to obey unlawful orders, issued by a State law enforcement officer, which violate the First Amendment.

Second, DeCastro has sufficiently pleaded facts supporting his claim and those facts must be taken as true for the purposes of Notice pleading. Specifically, the Plaintiff pleads in the Second Amended Complaint that he is a member of the press. ¶ 3. When directed to back up while filming a public event involving law enforcement, Plaintiff stepped back. ¶ 42. Plaintiff informed Defendant(s) that he was recording as a member of the press. ¶ 43.

Officer Borque first claimed that Plaintiff had a lawful duty to move back and not film because a driver Borque was interacting with "deserves privacy." ¶ 43. This notion is contrary to clearly established law permitting the filming of persons in public and the filming of law enforcement activities. There is no law, nor have the Defendants cited any law, indicating that citizens cannot film law enforcement interactions involving private citizens, or that there is a right to privacy which supersedes the First Amendment in such situations. *Id*.

Furthermore, Plaintiff has plead that similarly situated individuals at a similar distance were not treated similarly and that the First Amendment act of filming in this case did not obstruct the Officer's duties. ¶ 49. Plaintiff has alleged that Officer Borque engaged in profiling against members of the press by stating that First Amendment Auditors are known for "dropping their phone, pulling out guns, and shooting at officers," which is a prejudicial claim that has no basis in

reality. ¶ 61. In other words, Borque operated under a presumption that citizens that film law enforcement present a heightened danger, which is a belief which does nothing other than purport to give law enforcement the right to treat any exercise of the First Amendment as indicative of danger. *Id*. This is anathema to the First Amendment.

In addition, Plaintiff repeatedly plead allegations that this targeted enforcement produced a chilling effect on the First Amendment rights of the press in contravention of the First Amendment to the United States Constitution. ¶ 82; 87; 95; 96; 97; 100; 101; 102. Under Rule 12(b)(6), this suffices to meet the notice pleading standard, notwithstanding Defendants' attempts to improperly and prematurely convert the Motion to Dismiss into a Motion for Summary Judgment.  In sum, the Second Amended Complaint extensively describes facts which, if true, show that the Defendants' knowingly, intentionally and purposefully deprived and/or violated Plaintiffs' First Amendment rights (e.g., to exercise free speech / to surveil, record, and publish materials in regard to, or to protest the State law enforcement officer's activities).

Indeed, if the Court is inclined to review the BWC footage in this case, the Court will note that many citizens walk just as close to the "investigation scene" as Plaintiff DeCastro was during the alleged traffic stop. In one instance a citizen walks directly up to an officer to ask about the open-or-closed status of the restaurant abutting the investigation. If DeCastro's mere presence and recording of the initial stop was obstruction because of his mere proximity to the investigation, why were these other citizens not even warned to get away from the scene? The answer, as plead in the Complaint, is selective and discriminatory enforcement.

Finally in this section the Defendants asserts, among other things, that "It remains undisputed that DeCastro interfered in a traffic stop, willfully and actively disobeyed lawful commands, resisted the efforts of the officers to effectuate his detention, and taunted and demeaned the officers." ECF 66 at 16. This is not the case. DeCastro continues to maintain that he did not

"interfere" in any traffic stop, and that neither his presence at that location, his filming, or his one comment to the driver before being instructed not to speak to the driver, nor any combination of those three things, interfered with *anything* law enforcement officers were attempting to accomplish, and as such their unlawful orders to him directing him to cease such lawful conduct were themselves wholly unlawful, and were of a character that he was entitled to passively resist by declining to cease his First Amendment activity.

<u>**Plaintiff has Identified a Constitutionally-Protected Activity**</u>

Next the Defendants claim that dismissal of these First Amendment related claims will be required because of qualified immunity. *See* ECF 66 at 16-17. Specifically, Defendants incorrectly claim that qualified immunity applies because "there is no clearly established law preventing officers from arresting an individual for obstruction under these facts." *Id.*

First, any of these qualifies immunity arguments are inappropriate under a Rule 12(b)(6) framework, and as set forth above, a Motion for Summary Judgment is premature under the current discovery schedule in this case and Plaintiff's rights to develop a factual record to support his properly plead and noticed claims for relief.

Second, Plaintiff has identified constitutionally-protected activity, acknowledged in preceding case law, which was violated in this case. Nevada's obstruction statute must end where constitutionally-protected conduct begins. If filming law enforcement in a public place is protected by the First Amendment, it cannot by definition obstruct any lawful law enforcement conduct, as all law enforcement conduct at the State level is restrained by the First Amendment. Therefore, there is no such thing as a criminal obstruction of a law enforcement officer's unlawful command to stop filming, or to back up to a distance beyond what is protected by the First Amendment, or any combination of those protected activities.

Regardless of whether or not law enforcement ever developed grounds to arrest Plaintiff during this underlying event, they violated his First Amendment rights when they ordered him to cease engaging in constitutionally-protected conduct.

The law is clearly established in the Ninth Circuit that there is a right to be free from retaliation even if the officer had probable cause to arrest. *See Skoog*, 469 F.3d at 1235. "…[A] reasonable officer would have known that he cannot retaliate against a citizen for recording the police in a public place, **even if the officer was also acting to protect the safety of officers or to arrest her based on probable cause**." *See McComas*, 2017 WL 1209934, at *7 (Emphasis added).

In *Fordyce*, the Ninth Circuit held that citizens have the right to film matters of public interest. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). A genuine issue of material fact existed because Fordyce testified that the officers deliberately and violently smashed his camera into his face while he was participating in a public protest and gathering information. *Id*. In the decades since *Fordyce* came down, district courts in this circuit have continuously recognized a clearly established right to peacefully film police officers carrying out their duties in public. *See*, *e.g.*, *McComas*, 2017 WL 1209934, at *7 ("A reasonable officer in [defendant's] position would have known that it is a violation of a constitutional right to harass an individual who is peacefully filming the officer."); *Barich v. City of Cotati*, No. 15-CV-00350-VC, 2015 WL 6157488, at *1 (N.D. Cal. Oct. 20, 2015) ("Thus, 'under the law of this circuit there is and was' at the time of [the defendant's] conduct 'a clearly established right to record police officers carrying out their official duties.'").

In light of *Fordyce*, no reasonable officer under the circumstances would believe that the Defendants' alleged actions were lawful under the First Amendment. *See also Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011) (affirming district court's denial of qualified immunity on retaliation claim because, "though not unqualified, a citizen's right to film government officials,

including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment.").

Here, Plaintiff has plead numerous violations of his First Amendment rights, but to be clear, the following  separate violations are plead: (1) that Defendants unlawfully ordered Plaintiff to "back up" when the distance from which he was filming is protected by the First Amendment; (2) the Defendants unlawfully ordered Plaintiff not to speak to the driver of the vehicle when the Plaintiff's question (asking if the driver was okay) did not interfere with law enforcement and was protected by the First Amendment; (3) the Defendants unlawfully ordered Plaintiff to back up further when he had already backed up in response to their initial unlawful demand for him to backup despite the fact he remained at a distance protected by the First Amendment; (4) the Defendants violated Plaintiff's First Amendment rights when they announced an intent to detain him for exercising his rights in (1) to (3).

For these reasons, Plaintiff has plead violations of constitutional rights which were repeatedly acknowledged by the Ninth Circuit long before these events took place. Regardless of whether law enforcement at some point subsequent to these commands developed cause to arrest Plaintiff for some other reason (they did not), these commands themselves, properly plead in the SAC, prohibit dismissal of these causes of actions for the reasons set forth herein.

### Plaintiff's Twelfth Cause of Action is Properly Plead

Generally, a failure to intervene claim exists when bystander officers have an opportunity to intervene, but fail to do so. *Lolli v. Cty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). "[T]he constitutional right violated by the *passive* defendant is analytically the same as the right violated by the person who [uses excessive force]." *U.S. v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (emphasis added). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham v. Gates*, at 1290.

Defendants only arguments here are that, because they conclude that Plaintiff has not properly plead any instances of excessive force, and because a failure to intercede claim is purportedly limited to instances of excessive force, the failure to intercede claim is likewise improperly plead. *See* ECF 66 at 17-18.

As set forth above, DeCastro, taking the allegations in the Complaint as true, has sufficiently plead excessive force. Officer Borque was visibly upset when he came after Plaintiff. ¶ 44. Borque walked aggressively toward Plaintiff as if to use force. ¶ 45. Borque manhandled Plaintiff and stated "I am going to put my hands on you." ¶ 46.Broque put his hands on Plaintiff unnecessarily. ¶ 46. Officers forcefully grabbed Plaintiff even though he was cooperating fully. ¶ 48.

Plaintiff made the Officers aware that he suffered from a prior shoulder injury. ¶ 51. Officer Sandoval yanked and squeezed forcefully on Plaintiff's arm despite his shoulder injury when such was unnecessary. ¶ 51. Plaintiff was not a threat, was cooperating, and was surrounded by four different police officers. ¶ 52.

Sandoval ordered Plaintiff to look straight ahead for no legal reason and Sandoval squeezed Plaintiff's elbow, applying nerve pressure on the ulnar nerve, merely for Plaintiff not immediately looking straight ahead. ¶ 53. Sandoval intentionally and deliberately pressured the ulnar nerve to cause pain and permanent damage. ¶ 53. Sandoval stated it was officer policy to use pain compliance on ulnar nerves for random commands including not looking straight ahead. ¶ 55.

These actions caused Plaintiff severe pain and paresthesia from compression of his ulnar nerve by Officers. ¶ 56. Plaintiff pleaded for help in response to this physical pain which was ignored by officers. ¶ 57. Defendants squeezed Plaintiff's nerve for more than fifteen total minutes. ¶ 58.

Sandoval spread Plaintiff's name uncomfortably wide and purposely and maliciously and with significant force struck Plaintiff in the testicles with what felt like a closed fist. ¶ 62. Defendants also forcibly moved Plaintiff into police vehicle and pulled the seat belt as tight as they could, knocking the air out of the Plaintiff. ¶ 63.

Defendants caused Plaintiff sustained physical injuries, physical main, mental suffering, emotional distress, and other damages. ¶ 66. Plaintiff did not do anything which would put any officer in reasonable fear for his or her safety. ¶ 67. That Borque and Sandoval engaged in excessive force against the Plaintiff after he was already in custody, causing physical and mental damages. ¶ 85-87.

The totality of these facts and other facts set forth in the Second Amended Complaint establish and plead a case of excessive force, and a related claim of failure to intercede in these instances of excessive force. DeCastro has plead that, for numerous reasons, there was no cause to reasonably believe he presented any danger to law enforcement, especially when surrounded by four or more law enforcement officers, handcuffed, cooperating, and having conversation with officers explaining why he was filming them and why he had a constitutional right to do so. There was no need, in these circumstances, to use any physical force to continually restrain, squeeze, bruise, or knock the wind out of, or compress the ulnar nerve, of the cooperating Plaintiff. The failure to intercede to protect the Plaintiff from these harms thus is a valid cause of action.

**Seventh and Fifteenth Causes of Action**

Next, the Defendants argue that the Seventh and Fifteenth Causes of Action must be dismissed for failure to State a claim. *See* ECF 66 at 18. Defendants argue that the case law interpreting *Monell* requires dismissal of these causes of action. *Id*.

Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. Monell v. Department of Soc. Servs., 436 U.S. 658,

690 (1978); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). A municipality, however, "cannot be held liable solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a *respondeat superior* theory." Monell, 436 U.S. at 691; see Long, 442 F.3d at 1185; Ulrich v. City County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002).

Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694; Ulrich, 308 F.3d at 984. Municipal liability may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. See Price v. Sery, 513 F.3d 962, 966 (9th Cir. Or. 2008); Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); Ulrich, 308 F.3d at 984-85; Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1995).

A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Long, 442 F.3d at 1185. A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112,

127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990); see also Bouman v. Block, 940 F.2d 1211, 231-32 (9th Cir. 1991).

Stated differently, a custom is a widespread and longstanding practice that "constitutes the standard operating procedure of the local government entity." Trevino, 99 F.3d at 918; Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918; see also McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000); Thompson v. Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989). After proving one of the above methods of liability, the plaintiff must show that the challenged municipal conduct was both the cause in fact and the proximate cause of the constitutional deprivation. See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008); Trevino, 99 F.3d at 918.

Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur. See Young v. City of Visalia, 2009 U.S. Dist. LEXIS 72987, *20 (E.D. Cal. Aug. 18, 2009); see also Jackson v. County of San Diego, 2009 U.S. Dist. LEXIS 89753, *8 (S.D. Cal. Sept. 29, 2009); cf. Lee v. City of Los Angeles, 250 F.3d 668, 682 (9th Cir. 2001) *Young v. City of Visalia*, 1:09-CV-115 AWI GSA, (Doc. No. 58), at *6-8 (E.D. Cal. Jan. 15, 2010).

Defendants contend that DeCastro's claims about illegal policies is a "wish-list." ECF 66 at 20-21. This is nothing more than a dispute of properly-plead material facts which cannot be

24

resolved without additional evidence and discovery, and is not appropriate to resolve as a failure to state a claim. Undoubtedly, Defendants deny that the policies alleged by Plaintiff exist or informed their actions in this instance. This does not change the specifically-plead allegations regarding such policies, nor can this contest of facts be resolved as a matter of law.

Specifically, Plaintiff plead that Defendants have a policy and practice of a. To carry out or tolerate unlawful arrests without probable cause; b. To carry out or tolerate detentions and arrests based on citizens' exercise of their First Amendment right to criticize and verbally protest officers' actions; c. To use or tolerate excessive force; d. To carry out or tolerate unlawful searches of persons and properties; e. To carry out or tolerate discriminatory and biased policing and/or racial profiling; f. To carry out or tolerate unlawful seizures of property; g. To allow officers to file false police reports. ¶ 106. Plaintiff alleged that longstanding practices such as these establish the existence of a written or unwritten municipal policy and longstanding practice. ¶ 107.

Elsewhere Plaintiff alleged that  Sandoval said that it was within their policy to use pain compliance on ulnar nerves for people in their custody that did not comply with random commands that would grant complete dominion over another human being; from which way Plaintiff's head could turn, to his right to use speech, or when he can blink. ¶ 55.

Plaintiff further alleged that "At some point, Defendant Torrey, the supervisor, arrived on the scene and authorized the Defendants' behavior as being within their policy. Torrey then stated that Plaintiff should be arrested to discourage Plaintiff's behavior, which included recording the police and exercising free speech." ¶ 59.

For these reasons, Plaintiff has plead the existence of municipal policies which preceded and directly caused the violations of his right as more fully set forth in the Second Amended Complaint.

### Fourth Cause of Action – Defamation

Next, the Defendants argue Plaintiff has failed to state a claim for a Nevada cause of action for defamation. *See* ECG 66 at 21.

To state a claim for defamation under Nevada law, Plaintiff must allege "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Rosen v. Tarkanian*, 453 P.3d 1220, 1225 (Nev. 2019) (quotation omitted); *see also* Nev. Rev. Stat. § 200.510(1) (defining libel). With respect to a claim of defamation arising from a police report, such an instrument may form the basis of such a claim; however, there must be a specific statement contained in the police report that Plaintiff states are false. *Sykes v. Las Vegas Metropolitan Police Department*, Case No. 2:21-cv-01479-RFB-DJA, 2021 WL 5799381, at *4 (D. Nev. December 3, 2021).

Defendants claim that DeCastro only alleges bare legal conclusions. Defendants also claim that DeCastro fails to assert that the Defendants published allegedly false police reports to a third person in the absence of privilege. Defendants likewise claim that the evidence will resolve these conflicting claims in the Defendants' favor.

Again, this appeal to competing claims and evidence only highlights that these are properly-plead claims with contested material facts, such that dismissal is inappropriate prior to discovery being completed, if at all. Whether the police reports "contain any false statement" is a matter of contested material fact.

There is no question that the Second Amended Complaint pleads specific facts indicating a claim of defamation. Plaintiff has alleged that the Defendants filed false police reports and "did share false police reports with third parties. The totality of the facts further indicate that the defamation was done deliberately and maliciously and that the defendants knew that the

defamatory statements were about Plaintiff and were asserted as the truth even though they were false." ¶ 90-91. This is consistent with the allegation elsewhere that the Defendants maintain a practice "to allow officers to file false police reports." ¶ 106. Plaintiff identified with specificity statements in these reports which were inaccurate. ¶ 68, 69, 70, 72. The totality of these allegations is more than enough to state a valid claim.

### Ninth Cause of Action – Battery by a Police Officer

Next, the Defendants argue that the Ninth Cause of Action has not been properly plead and must be dismissed. *See* ECF 66 at p. 22. The only argument advanced by Defendants is that there has not been a sufficiently plead cause of action for excessive force which precludes a claim of battery. However, as set forth herein, all of Plaintiff's claims for excessive force have been validly plead. Indeed, Defendants do not even address Plaintiff's claim that Defendants intentionally battered him while placing him in the police car. ¶ 63 ("Plaintiff was forcibly placed into a police vehicle by Defendants who pulled the seat belt as tight as they could, knocking the air out of the Plaintiff. Plaintiff again pleaded for help from surrounding officers, but he was ignored again.").

### Eleventh Cause of Action – Negligence

Next, the Defendants argue that a negligence claim cannot be asserted because it relies upon a theory of excessive force, and there is no law recognizing the existence of a negligent intentionally tort. *See* ECF 66 at 22-23.

In fact, Plaintiff has plead valid claims for negligence which do not rely upon a theory of excessive force. ¶ 128-133. Specifically, Plaintiff has alleged that defendants were negligent in breaching their duty "to carefully investigate any criminal activity, to use care to avoid subjecting Plaintiff to an illegal detention, arrest, seizure, retaliation for exercise of free speech, free press, or petition for redress of grievances, use of force, or deprivation of any of the other rights enumerated

herein, and to use reasonable care to avoid engaging in biased policing or racial and political affiliation profiling." *Id* at 130.

The majority of these specific allegations have nothing to do with the claims of excessive force. *Id*. While the Defendants assert that all of these breaches of duty (negligence) were otherwise precluded by this Court's order dismissing certain counts with negligence, this is an overly-broad reading of this Court's prior ruling. This Court only dismissed claims for unreasonable search and seizure based on the arrest and search, false imprisonment, invasion of privacy, and negligence based upon the arrest and search. *See* ECF 44 at 16.

Furthermore, in that same Order this Court indicated that the case could proceed on "excessive force, supervisory liability, assault, battery, and negligence based on excessive force," so it is already the law of the case that the negligence based on excessive force claim can proceed. *See* ECF 44 at 16. The Defendants cite no case law in Nevada indicating a state-law claim of negligence cannot be recognized when related to acts of excessive force. The cases cited by the Defendants are from Florida, Arizona, and the District of Columbia. *See* ECF 66 at 22-23. Here, Plaintiff has plead forcible conduct by Defendants which injured him, each specific act of physical force was done either intentionally (excessive force) or negligently (breach of duty not to unreasonably harm the Plaintiff). There is no tension between maintaining both claims.

In any event, here, Plaintiff has also asserted negligence claims based, specifically, on a failure to carefully investigate, retaliation, violation of free speech, violation of free press, use of force, deprivation of rights, and biased policing or racial and political affiliation profiling. *See* SAC at ¶ 130. As such the Defendants are simply incorrect that the negligence claim is based only on those previously-dismissed causes of action.

### Eleventh Cause of Action – Civil Conspiracy

Next, the Defendants argue that DeCastro's claim for civil conspiracy must be dismissed for failure to state a claim upon which relief can be granted. *See* ECF 66 at 23.

In order to state a claim for civil conspiracy in Nevada, a plaintiff must allege two prongs: (1) two or more persons acting in concert intending to accomplish an unlawful objective for the purpose of harming the plaintiff; and (2) the plaintiff sustained damages as a result of that action. *See Sutherland v. Gross*, 105 Nev. 192, 772 P.2d 1287, 1290 (Nev. 1989). The party alleging civil conspiracy must include detailed descriptions of the time, place, and identities of the parties involved in the conspiracy. *Brown v. Kellar*, 97 Nev. 582, 636 P.2d 874, (Nev. 1981).

Plaintiff has plead that 1) there was an agreement between defendants to violate Plaintiff's civil rights, defame him, and batter him; 2) there was a single plan that the defendants shared; 3) that defendants committed at least one overt act in furtherance of the conspiracy; and 4) Plaintiff was harmed by that conspiracy. ¶ 141. Plaintiff has alleged that the Defendants were at all time a "co-conspirator." ¶ 17. Plaintiff has alleged that "the tracking and searching for Plaintiff… [shows] that Defendants conspired to unlawfully arrest and harm Plaintiff." ¶ 38. Plaintiff alleged that there "appears to be a conspiracy by Defendants to arrest Plaintiff because he has recently covered several stories about LVMPD that went viral on the internet." ¶ 70. And indeed, in the remainder of the SAC, Plaintiff's sum of factual allegations demonstrates the defendant officers each acting together, if true, in an agreement to violate Plaintiff's rights. *See* ECF 61, generally.

Finally, Defendants argument that the conspiracy allegation is an "intra-corporate conspiracy" is erroneous. *See* ECF 66 at 24. The Defendants cite law that members of a conspiracy "cannot conspire with their corporate principal or employer" when charged with civil conspiracy. *Id*. Even if this is true, it says nothing of the circumstances plead here, where each individual officer conspired with each other in their personal capacities to violate the rights of Plaintiff. *Id*.

Furthermore, to the extent the Plaintiff has alleged intentional torts on the part of the individual officers, and Defendants have elsewhere argued that such intentional torts cannot be part of the organizational duties of the individual defendants, it likewise stands to reason that any such intentional torts of crimes by the individual defendants will inherently fall outside the scope of their lawful duties, and thus remove such conduct from the "intra-corporate" framework invoked by the Defendants.

### Fourteenth Cause of Action – Abuse of Process

Finally, Defendants argue that the Fourteenth Cause of Action for abuse of process must likewise be dismissed for failure to state a claim. ECF 66 at 24-25.  Contrary to this argument, Plaintiff has met the notice pleading standard by alleging that Defendants engaged in  Abuse of process under the Nevada Constitution, U.S. Constitution, federal statute, state statute, and common law, against Bourque, Sandoval, Torrey, Dingle, Sorenson, Doolittle, and Does 1 to 5. ¶ 145. Plaintiff specifically plead that the defendants acted against him by initiating process to achieve an unlawful purpose and denying Plaintiff due process. ¶ 146.

### CONCLUSION

The Motion should be denied. If this Court is inclined to treat the Motion as a Motion for Summary Judgment, such consideration should be deferred pending discovery. If the Court is inclined to dismiss any of the causes of action set forth herein, Plaintiff respectfully seeks leave of Court to file a Third Amended Complaint now that he has obtained the assistance of counsel.

DATED this 2nd day of February, 2024.

**/s/ Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar No. 13726

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the above RESPONSE TO MOTION TO DISMISS was served upon all parties registered to this action to receive electronic service through the court's electronic filing and service system on the below date.

DATED this 2nd day of February, 2024.

**<u>/s/ Michael Mee, Esq.</u>**
MICHAEL MEE, ESQ.
Nevada Bar No. 13726