**MICHAEL MEE, ESQ.**
Nevada Bar No. 13726
400 S 4th St #500
Las Vegas, NV 89101
(702) 990-0190
mmee@defenselawyervegas.com
*Attorney for Plaintiff Jose DeCastro*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JOSE DECASTRO,

Plaintiff,

vs.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT; STATE OF NEVADA; BRANDEN BOURQUE; JASON TORREY; C. DINGLE; B. SORENSON; JESSE SANDOVAL; OFFICER DOOLITTLE and DOES 1 to 50, inclusive,

Defendants.

Case No.: 2:23-cv-00580-APG-EJY

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND REQUEST TO DEFER MATTER PENDING RESOLUTION OF APPEAL OF CRIMINAL CONVICTION**

**Certificate:** This Response is timely filed. *See* ECF

DATED  8th day of July, 2024.

**/s/ Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar No. 13726
400 S 4th St #500
Las Vegas, Nevada 89101
(775) 990-0190
mmee@defenselawyervegas.com

# MEMORANDUM OF POINTS AND AUTHORITIES

I. **Procedural History.**

Plaintiff filed a Complaint on April 17, 2023. ECF 1. Plaintiff filed a Motion for Discovery on April 28. 2023. ECF 7. Plaintiff filed a First Amended Complaint on May 7, 2023.

Defendants filed a joint (or subsequently joined) Motion to Dismiss the First Amended Complaint on June 1, 2023. ECF 15. On June 16, 2023, Plaintiff filed a Response to Motion to Dismiss. ECF 27. On July 6, 2023, Defendants filed A Motion to Stay Discovery. ECF 32. A Reply in Support of that Motion to Dismiss was filed on June 23, 2023. ECF 30.

On July 6, 2023, an Answer to Complaint was filed by the Las Vegas Metropolitan Police Department. ECF 33.

On October 23, 2023, this Court entered an Order Granting In Part the Defendants' Motion to Dismiss. As part of that Order, the Court permitted Plaintiff to file an Amended Complaint by November 22, 2023. ECF 44. Subsequent extensions of time were granted by the Court for the filing of that Amended Complaint.

On November 27, 2023, Plaintiff filed his Second Amended Complaint. ECF 61. Defendants filed a joint Motion to Dismiss or Alternatively for Summary Judgment on December 22, 2023. A Response was filed on February 2, 2024. ECF 79. These matters remain pending.

On June 14, 2024, Defendants moved for Summary Judgment. ECF 86. This was supported by the manual filing of exhibits. ECF 87.

On July 5, 2025, the parties conferred regarding an extension of the deadline for a response to ECF 86 to July 8, 2024. Counsel for Defendants indicated no objection to this continuance via e-mail on July 5, 2025. That request was granted the following day.

This Response to movants' Motion for Summary Judgment now follows.

II.     **Legal Argument.**

**Standard for Motions for Summary Judgment**

By clearly established law, a court deciding a motion for summary judgment is required to consider all disputed facts in the light most favorable to the nonmoving party. See A. K. H., 837 F.3d at 1010; Harris v. Roderick, 126 F.3d 1189, 1192 (9th Cir. 1997) ("We state the facts, as we must on this appeal, as they are set forth in [the operative] Complaint.").

In *Sandoval v. Las Vegas Metro. Police Dep't,* 756 F.3d 1154 (9th Cir. 2014), the Ninth Circuit overturned the district court's summary judgment rulings on excessive force and qualified immunity because the district court improperly weighed conflicting evidence with respect to disputed material facts. Id. at 1166. Specifically, the court drew conclusions based upon conflicting testimony, relying upon the officers' version of events rather than the non-moving party's version. Id. "[I]n weighing the evidence in favor of the officers, rather than the Sandovals, the district court unfairly tipped the reasonableness inquiry in the officers' favor," an error that mandated reversal. Id. at 1167.

Here, there are contested material facts which are relevant to the present action, including factual allegations which, taken most favorably to Plaintiff, prevent granting summary judgment as to any of his causes of action.

**A Motion for Summary Judgment is Premature, Relies Upon Plaintiff's Conviction which is Presently Under Appeal.**

Defendants' Joint Motion relies upon the likely temporary conviction of Plaintiff in the Las Vegas Justice Court. That matter is presently on appeal to the Eighth Judicial District Court for

the State of Nevada, Case No. C-24-381730-A. That appeal is set to be heard on July 10, 2024. *Id*; *See* Ex. A – Case Docket.

This Court should not make judgments in this pending civil matter when the validity or lack thereof of the underlying criminal conviction may, potentially within days, be overturned and set aside by the Eighth Judicial District Court.

**Defendants are not Entitled to Summary Judgment.**

Leaving aside that the ongoing appeal remains to be decided, summary judgment has not been shown to be appropriate in this instance by the movants. Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party has the initial burden of showing the absence of a genuine issue of material fact with evidence demonstrating the same and the court must view the facts and reasonable inferences in the light most favorable to the non-moving party. See Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982); see also Celotext Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing version of events. See Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 863 F. Supp. 1237, 1239 (D. Nev. 1994) (citations omitted). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); accord Celotex, 477 U.S. at 325.

To establish the existence of a genuine factual dispute, the non-moving party need not establish a material issue of fact conclusively in its favor but show the factual dispute requires a

jury or judge to resolve the differing versions of the truth at trial. See Schuster v. Bannister, Case No. 3:11-cv-00081-HDM (WGC), 2012 WL 6917787 at *2 (D. Nev. Dec. 7, 2012) (citing T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). "Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted." Zurich American Ins. Co. v. Coeur Rochester Inc., 720 F.Supp.2d 1223, 1227 (D. Nev. 2010). If factual issues exist for trial, summary judgment is not proper. Id.

**Non-Moving Party Has No Burden of Proof if Movant Fails to Carry its Burden**

If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. See Adickes v. S.H. Kress Co., 398 U.S. 144, 160 (1970); High Tech Gays, 895 F.2d at 574; A. Friedenthal, A. Miller and M. Kane, Civil Procedure 460 (3rd ed. 1999). In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. See High Tech Gays, 895 F.2d at 574; Clark v. Coats Clark, Inc., 929 F.2d 604, 607 (11th Cir. 1991).

**Plaintiff Will Testify to the Following Facts at Trial**

Here, Plaintiff's Second Amended Complaint sets forth the following relevant factual allegations which are consistent with, at minimum, a contested factual background which prevents summary judgment: Officer Borque was visibly upset when he came after Plaintiff. ¶ 44. Borque walked aggressively toward Plaintiff as if to use force. ¶ 45. Borque manhandled Plaintiff and stated "I am going to put my hands on you." ¶ 46. Broque put his hands on Plaintiff unnecessarily. ¶ 46. Officers forcefully grabbed Plaintiff even though he was cooperating fully. ¶ 48.

Plaintiff made the Officers aware that he suffered from a prior shoulder injury. ¶ 51. Officer Sandoval yanked and squeezed forcefully on Plaintiff's arm despite his shoulder injury when such

was unnecessary. ¶ 51. Plaintiff was not a threat, was cooperating, and was surrounded by four different police officers. ¶ 52.

Sandoval ordered Plaintiff to look straight ahead for no legal reason and Sandoval squeezed Plaintiff's elbow, applying nerve pressure on the ulnar nerve, merely for Plaintiff not immediately looking straight ahead. ¶ 53. Sandoval intentionally and deliberately pressured the ulnar nerve to cause pain and permanent damage. ¶ 53. Sandoval stated it was officer policy to use pain compliance on ulnar nerves for random commands including not looking straight ahead. ¶ 55.

These actions caused Plaintiff severe pain and paresthesia from compression of his ulnar nerve by Officers. ¶ 56. Plaintiff pleaded for help in response to this physical pain which was ignored by officers. ¶ 57. Defendants squeezed Plaintiff's nerve for more than fifteen total minutes. ¶ 58.

Sandoval spread Plaintiff's name uncomfortably wide and purposely and maliciously and with significant force struck Plaintiff in the testicles with what felt like a closed fist. ¶ 62. Defendants also forcibly moved Plaintiff into police vehicle and pulled the seat belt as tight as they could, knocking the air out of the Plaintiff. ¶ 63.

Defendants caused Plaintiff sustained physical injuries, physical main, mental suffering, emotional distress, and other damages. ¶ 66. Plaintiff did not do anything which would put any officer in reasonable fear for his or her safety. ¶ 67. That Borque and Sandoval engaged in excessive force against the Plaintiff after he was already in custody, causing physical and mental damages. ¶ 85-87.

Here, turning to the relevant factors, it is clear that Plaintiff has properly plead his excessive force claims: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff actively resisted arrest. *Id.*; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir.

6

2001). While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). Plaintiff has sufficiently plead that the severity of the crime at issue was minor, and Here, Defendants cannot reasonably contest this. Plaintiff has plead that he was arrested as being targeted as a member of the press and for filming police activity. Defendants had no reason to believe Plaintiff was dangerous. He was merely filming a traffic stop.

Contrary to Defendants' Motion, contested material evidence prevents granting summary judgment as to these claims. Second, at the time the allegations of excessive force occurred, Defendant was already detained, physically restrained, and cooperating. Defendants do not seriously contest these facts or present any evidence to support a reasonable belief that Defendant, surrounded by four officers and handcuffed, presented a safety risk.

Defendants now claim that they were required to squeeze Plaintiff's ulnar nerve, as plead in the Complaint, despite the fact that he was cooperating, surrounded by officers, and handcuffed, because they "needed to maintain control of DeCastro so that he did not fall and injure himself. This is objectively reasonable." *See* Defendants' Motion at 12. This explanation is incredible. The Defendants offer no authority for the notion that officers must squeeze a suspect's ulnar nerve, causing physical pain and damage, for 15 minutes, in order to prevent them from falling down. There is no evidence in the record that there was any special circumstance making DeCastro likely to fall down at any point during this physical restraint.

Next the Defendants argue that the claim that the defendants struck Plaintiff in the groin is belied by the video evidence. Again, this is not the standard. The standard is whether the claim has been properly plead. There is no question the allegation about striking Plaintiff in the groin unnecessarily and for no law enforcement purpose was validly plead.

However, even if this Court is inclined to consider the video evidence, the video evidence is not dispositive. The Defendants claim that the video "confirms this did not happen" is completely overstated.

**<u>Video Exists but is not Dispositive of Defendants' Factual Claims</u>**

Defendants rely, in large part, upon video evidence captured by some defendants, as well as Plaintiff, as to the present action. Often times, Defendants argue that something is not seen happening on these videos, and while Plaintiff maintains that these arguments should be rejected, even if they were accurate, they simply cannot support summary judgment.

Pursuant to the trial testimony and video evidence cited by movants, this became a hectic scenario, a factor which was caused by the Defendants. Certainly, Plaintiff was not able to stand back from a distance to capture every aspect of the event(s) once he was wrongfully approached, detained, arrested, and handcuffed, by the defendants. Therefore, taking the evidence most favorably to the Plaintiff, the failure of a particular seconds-long occurrence to have been captured on video is certainly not definitive proof that the alleged events never happened. As the evidence must be taken most favorably to the non-moving party, summary judgment is thus not supported by this type of argument.

In fact, Plaintiff maintains, notwithstanding the erroneous conviction in a lower State court proceeding which is on appeal, that the video and trial evidence relied upon the State supports *his claims for relief*, or at least for the purpose of the present standard of review, taken most favorably to Plaintiff, leaves in place disputed material facts which preclude summary judgment as to his claims.

**The Evidence Referenced Precludes Summary Judgment**

Movants' characterization of the evidence is disputed. They provide no statement of uncontested material facts, and their statement of facts is clearly their mere opinion on contested evidence, rather than uncontested evidence which supports summary judgment.

**Alleged fact # 1:** "As DeCastro approached the driver's side window of the detainee, Ofc. Bourque exited his vehicle and told DeCastro "Don't engage with my driver. Back up." (Ex. A at T23:27:05). DeCastro did not follow Ofc. Bourque's command, and Ofc. Bourque reiterated, "Hey, back up. Back up. You're not involved." (Id. at T23:27:10). *See* Motion at 3:4-8.

This is demonstrably false by a review of the evidence and a review of the trial testimony of Officer Bourque. First, the video revealed, and Officer Bourque confirmed while testifying, that Plaintiff never engaged verbally with the driver after being ordered not to do so. *See* Movants' Ex. A, from 23:27:05 onward. This is important because Plaintiff's theory of this case is that he was issued unlawful commands, which he was then unlawfully arrested for lawfully resisting, and that he was then subjected to retaliation and excessive force throughout the remainder of the event. The false factual statement that DeCastro did not cease engaging with the driver begins to show why summary judgment cannot be granted.

**Alleged fact #2:** DeCastro was only a few feet away from the driver's side window of the traffic detainee. (Id.; see also Ex. H at 0:00-0:14). DeCastro backed up one or two feet, remaining in close proximity to the silver Hyundai Elantra and the driver's side window. (Ex. A at T23:27:16; see also Ex. H at 0:13- 0:15)." *See* Motion at 3:9-11.

This is directly rebutted by any review of the video evidence. Furthermore, the video evidence, and Officer Bourque's testimony, confirm that DeCastro backed up (at minimum) several steps, Officer Bourque never gave him a specific distance to back-up, and Officer Bourque

had no particular distance in mind that would protect Plaintiff's First Amendment Rights, as set forth fully in the Complaint.

**Alleged fact #3:** DeCastro did not move. (Id.) Ofc. Bourque then told DeCastro, "Back up or I'm going to detain you." (Ex. A at T23:27:20; see also Ex. H at 0:20-0:22). DeCastro replied, "You're going to detain me how?" to which Ofc. Bourque replied "For obstructing. Get away from my car stop." (Ex. A at T23:27:24; see also Ex. H at 0:22-0:25). *See* Motion at 3:12-178.

Again, the video conclusively establishes that DeCastro backed-up. Without being instructed to back up any particular distance or to any particular location, DeCastro was not on notice of what he was being ordered to do.

Furthermore, as a matter of law, Officer Bourque was simply incorrect that he had a legal right to order DeCastro to leave the scene and/or stop filing the traffic stop, all of which is protected by the First Amendment. To the extent the movants rely upon a claim that DeCastro's conduct to this point could create criminal obstruction, such is contrary to the First Amendment as a matter of law and must be rejected for that additional reason.

**Alleged Fact #4:** During the entirety of the initial interaction, DeCastro remained near the vehicle of the detained driver and refused to move. (Ex. A at T23:27:16). *See* Motion at 3:25-26.

Again, for the same reasons above, there is no plausible claim that it is uncontested that DeCastro "refused to move" for the entirety of the initial interaction. Officer Bourque admitted as much during trial testimony, and video evidence is likewise conclusive rebuttal evidence of this factual allegation.

**Alleged Fact #5:** DeCastro made Ofc. Bourque aware of a prior shoulder injury, and Ofc. Bourque placed DeCastro in two pairs of handcuffs to adhere to his medical needs. (ECF No. 61 at ¶51). *See* Motion at 4:20-23.

Again, there is no evidence in the record that this procedure "adhered to" DeCastro's medical needs. Officer Bourque is not a medical expert. Whether the procedures used by police were excessive, or "adhered to DeCastro's medical needs," is a question for the jury after it hears all of the evidence, not the one-sided opinion evidence of the person allegedly committing the alleged offense.

**Alleged Fact #6:** DeCastro proceeded to resist and fail to comply with that order for the next several minutes, while arguing with and taunting the Defendant Officers. (Ex. D at T23:35:00; Ex. E at T23:40:26-T23:42:32). *See* Motion at 5:7-9.

The video cited by movants actually shows that DeCastro was surrounded by officers, was handcuffed, and stood where the Officer's directed him to stand. The mere assertion by officers that they used the correct level of force does not make it an uncontested fact in this litigation. As set forth in the Complaint, confirmed by video and trial testimony, DeCastro voluntarily walked over to the police cruiser, allowed himself to be handcuffed, and presented absolutely no plausible threat to the law enforcement officers he was surrounded by. They knew he had no weapons, had no prior violent history, and was filming as a member of the press. The Officer's may not have liked how Plaintiff was behaving, but the questions are not whether they liked it but first, whether his initial conduct was lawful, whether the responsive orders by Bourque were unlawful, whether Plaintiff resisted, whether Plaintiff was entitled to passively resist unlawful orders being issued, and thereafter whether Defendants used excessive force against Plaintiff, and did so in retaliation for his assertion of his rights. These questions remain upon based open and cannot be decided based upon one side's view of the material contested facts.

**Alleged Fact #7:** "DeCastro repeatedly asserts in the SAC that Ofc. Sandoval was squeezing his arm and causing him pain. (ECF No. 61, ¶¶51-58). However, the footage clearly demonstrates Ofc. Sandoval was holding DeCastro's arm in a reasonable manner and not applying

11

any significant force to DeCastro's arm. (Ex. D at T23:42:37-T00:06:57; Ex. E at T23:42:47-T23:55:30 and T00:02:47-T00:06:27)." *See* Motion at 5:13-17.

This is belied by the video evidence and common sense. Body camera video is notoriously unclear even with respect to visual evidence. Movants assert, based upon the video alone, that the level of force was "reasonable." Even less coherently, movants assert that they can determine the level of "significant force" to the arm from this video evidence. Plaintiff disputes that the video evidence could reasonably be interpreted as to compel a factual finding as to a specific level of force. Plaintiff has plead and will testify otherwise. There is no expert produced by movants, if such would even be theoretically possible which is far from clear, who claims to determine that some specific level of pounds-per-inch pressure is conclusively deductible from the video. From this circumstance this is clearly not an uncontested material fact.

**Alleged Fact #8:**  As noted in Ofc. Bourque's report, affirmed by Sgt. Torrey and the BWC, the reasons why DeCastro was arrested was for engaging with a detained driver, refusing to give an officer reasonable space to work, and refusing to obey lawful commands after being advised he was being detained. (Id.; ECF No. 61 at ¶68).

This is their only opinion, and furthermore, Officer Bourque has made numerous contrary statements. For example, Officer Bourque admitted during trial testimony that he had also told DeCastro he was arrested for speaking to the driver, despite the fact the video evidence shows DeCastro never interacted with the driver after being ordered not to do so. At trial Bourque claimed he had pragmatic reasons for lying to DeCastro about the basis of his arrest.

Bourque's conflicting explanations for why he did what he did are, at minimum, sufficient evidence to contest Bourque's post-hoc justification for why he issued unlawful commands to Plaintiff and ultimately unlawfully detained Plaintiff.

12

**Excessive Force Claims**

A claim of excessive force during an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine whether the use of force by a law enforcement officer was excessive under the Fourth Amendment, a court must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id.* at 397.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). In this analysis, the Court must consider the following factors: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff actively resisted arrest. *Id.*; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment, let alone dismissal under Rule 12(b)(6). "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

For the reasons set forth herein, movant is not entitled as to summary judgment on excessive force. Movant makes one-sided factual claims which are impossible to derive from a cold evaluation of the evidence. For example, movant claims to know the degree of pressure from video where this is clearly not discernable to a conclusive degree. Movant also claims that the video "confirms" that movants did not strike Plaintiff in the groin. Again, there is no combination of the submitted video evidence which shows every possible moment where the alleged strike could have occurred, nor is there any requirement that the video have captured a clear "flinch" from DeCastro to establish an illegal and excessive hitting of the groin as alleged by Plaintiff.

Furthermore, it is incorrect that the factual evidence is uncontested as to establish the reasonableness of the Officer's actions. DeCastro was surrounded by numerous officers, handcuffed, and had voluntarily submitted to arrest by walking over to the officer's cars. Under these circumstances, bare claims that DeCastro was shifting and/or verbally discussing the situation with Officers in a manner they subjectively found to be offensive does not support, as set forth in the Complaint, applying extreme pressure to DeCastro's arm/body and forcing him to remain in painful positions for excessive length of times, given the circumstances. Plaintiff's is entitled to have the evidence and his claims viewed favorably, and as the Ninth Circuit has recognized, such claims are not ordinarily resolvable by summary judgment.

### Claims / Retaliation Claims are not Barred by *Heck v. Humphrey*

The movants wrongly claim that *Heck v. Humphrey* precludes Plaintiff's first amendment / retaliation claims because "a finding of no probable cause in this case would necessarily imply the invalidity" of DeCastro's convictions. *See* Motion at 16.

Assuming *arguendo* that this principle would apply as argued by the movants, they are simply incorrect about whether there would be a necessary contradiction. First of all, Plaintiff's conviction is on appeal and Plaintiff considers it likely to be overturned. Second, Plaintiff's

conviction is not *clearly* inconsistent with a lack of retaliation or a lack of probable cause at the outset of the interaction. For example, it is possible DeCastro could have been convicted (wrongfully, but nevertheless) for obstruction for actions *subsequent to* his passive resistant of the unlawful commands issued by Officer Bourque.

This would still make the initial orders, and subsequent detention, unlawful, even if Plaintiff was convicted for some other subsequent and distinct act of alleged obstruction. The claims as set forth in the Amended Complaint therefore are not necessarily precluded by an unspecific (or insufficiently specific) holding from the Justice Court judge.

### The Right to Film Law Enforcement is Clearly Established

Movants wrongly claim that the rights being violated in this factual circumstance are not clearly established. This is false. "At the outset, individuals have a "First Amendment right to film matters of public interest, " which includes law enforcement officers performing their duties. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995)." *Rush v. Weinstein*, 1:18-cv-00073-REP, at *12 (D. Idaho Sep. 20, 2021).

The repeated claim that DeCastro interfered with a traffic stop, and thus committed obstruction by filming law enforcement, is precluded by clearly establishing case law protecting the right to film law enforcement performing their official duties. If law enforcement official duties are too "dangerous" to permit filming from apparently non-dangerous individuals, as Officer Bourque essentially claimed and believes, then there is no imaginable official duty which *could be* filmed without obstructing. Obviously this principle directly contravenes the repeatedly-recognized right to film under the First Amendment.

For these same reasons, all subsequent unlawful commands, detainments, arrests, and degrees of force, which are predicated on this allegation, likewise violate clearly established law.

**Monell Claims are Supported by DeCastro's Allegations, Testimony, and Confirmed by the Video Evidence and Testimony of Officer Bourque**

Movants ignore the fact that DeCastro's claims, testimony, video evidence submitted by movant, and trial testimony of Officer Bourque all support DeCastro's factual claims set forth in his Amended Complaint, and therefore preclude summary judgment.

For example, Bourque testified that he was permitted by training policy to prevent filming, essentially, anywhere near the performance of his official duties, which would beyond doubt obliterate the constitutional protections provided by the First Amendment, as occurred in this case. *See* Exhibit 1 – Trial Transcript, Testimony of Ofc. Bourque.

Specifically, Officer Bourque testified that he was trained, and therefore believed, that Las Vegas Metro Officers can order any filming citizen back twenty-one feet, as "taught in the academy," because any normal human reaction time to react "to a threat." *See* Ex 1 – Trial Transcript at 30.

This, at minimum, indicates that Officers in this jurisdiction are being trained that they have an unlimited right to prevent observation or filming by private citizens within 21-feet of themselves. *Id*. This is despite the fact that clearly, from the Officer's testimony, there was no objective factual basis for perceiving a threat other than the mere presence of the Plaintiff within that 21-feet-range (allegedly), while exercising his First Amendment Rights. The only plausible way to understand this testimony is that the defendants' training policies, under *Monell*, require subordinates to violate the First Amendment, at will, into protected observation and/or filming of officer's performing their duties. The danger of such a policy to the public's ability to observe their public servants is obvious.

For these same reasons, all subsequent unlawful commands, detainments, arrests, and degrees of force, which are predicated on this allegation, likewise violate clearly established law, as consistent with this instance enforcing trained law enforcement policy which violates the law.

### Movant has Failed to Meet its Burden as to Plaintiff's State Law Claims

Additionally, movant has failed to meet its burden as to its arguments against Plaintiff's State law claims. For the reasons set forth herein, movants have not identified a list of undisputed material facts. The facts they rely upon are clearly disputed, and the movants' view of that evidence relies entirely, in numerous instances, on their subjective opinion about the interpretation of said evidence which is belied by the video, testimony, and other records submitted.

For example, movants claim there has been no evidence of the publishing of false statements. This is demonstrably false. Throughout their motion, they repeatedly re-publish false claims, previously set forth the movants in other contexts, which are rebutted by video evidence and testimony. Any objective review of the evidence proves, for example, that DeCastro did back up repeatedly. Yet movants, including in this Motion for Summary Judgment, continue to publish the false "fact" that DeCastro did not back-up in response to commands.

Plaintiff is entitled to pursue his claims by having them interpreted favorably to himself, unless movants first meet certain evidentiary burdens. They have not met those burdens, and their motion must be denied.

### Leave to Supplement Based Upon Outcome of Pending Appeal

Additionally, this Court should not rule on this matter, and Plaintiff should be given free leave to supplement, upon resolution of his pending appeal. That matter is presently set for the Eighth Judicial District Court for July 10, 2024. If, for example, that appeal is successful (as it should be), a supplementary response would aid this court in resolving the present motion as to those arguments which depend upon the underlying conviction.

17

## CONCLUSION

For these reasons, the Motion must be denied.

DATED  8th day of July, 2024.

                                                     **/s/ Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar No. 13726
400 S 4th St #500
Las Vegas, Nevada 89101
(775) 990-0190
mmee@defenselawyervegas.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify and affirm that this document was filed electronically with the above Court and served upon all parties registered to receive electronic service in the above-captioned matter.

DATED 8th day of July, 2024.

**/s/ Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar No. 13726
400 S 4th St #500
Las Vegas, Nevada 89101
(775) 990-0190
mmee@defenselawyervegas.com
Attorney for Plaintiff