**MICHAEL MEE, ESQ.**
Nevada Bar No. 13726
400 S 4th St #500
Las Vegas, NV 89101
(702) 990-0190
mmee@defenselawyervegas.com
*Attorney for Plaintiff Jose DeCastro*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JOSE DECASTRO,<br><br>Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; STATE OF NEVADA; BRANDEN BOURQUE; JASON TORREY; C. DINGLE; B. SORENSON; JESSE SANDOVAL; OFFICER DOOLITTLE and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-00580-APG-EJY<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING SUMMARY JUDGMENT AND THE OVERTURNING OF PLAINTIFF'S CONVICTION IN THE EIGHTH JUDICIAL DISTRICT COURT OF NEVADA** |

**Certificate:** This Brief is timely filed. *See* ECF 93.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **Procedural History.**

Plaintiff was wrongfully convicted in Las Vegas Justice Court of the underlying conduct which, likewise, formed the basis for his unlawful detention, arrest, excessive force, and other offenses, all committed by the Defendants to this action.

Defendant maintained, at trial to that proceeding, that he had a First Amendment right to do what he was doing, and therefore the entire police interaction from *Terry* stop, to verbal detention, to physical detention, to physical abuse, to physical arrest, were unlawful. Nevada has now declared that this, in fact, is the law, and that Plaintiff was correct. This change in circumstance completely modifies the trajectory of what this Court is required to do, pursuant to summary judgment standards, in this case.

II.  **First Amendment and Nevada Law Governs and Must Affect this Court's Analysis.**

The reviewing court cited controlling Nevada case law which governed the criminal proceeding against Plaintiff, and which when properly understood (as the law should have been at trial), indicate that Plaintiff never broke the law and was unlawfully aggressed against by the Defendants in violation of the First Amendment.

The First Amendment safeguards several fundamental rights, including the freedom of religion, speech, press, assembly, and petitioning the government for a redress of grievances. Within this framework, the federal courts have clearly established the constitutional right to film public officials in the public execution of their duties. In *Glik v. Cunniffe*, the First Circuit Court of Appeals affirmed that the right to film government officials, including law enforcement officers, is a well-established liberty protected under the First Amendment, though it is not without

limitations. The court stated that videotaping public officials is an exercise of First Amendment liberties. *Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011).

Furthermore, on February 22, 2024, the Nevada Court of Appeals in *Wilson v. First Judicial Dist. Court* examined NRS 197.190 and clarified its application. The court interpreted that the statute only prohibits physical conduct and "fighting words" that actually hinder, delay, or obstruct a public officer in the performance of their duties. It emphasized that the statute does not allow law enforcement to arrest individuals for protected speech or merely annoying or offensive physical conduct. Additionally, the court noted that a specific intent to hinder, delay, or obstruct is required for an action to fall under this statute. *Wilson v. First Judicial Dist. Court,* 140 Nev. Adv. Op.7, 18, 23 (Nev. App. 2024)).

State and federal laws affirm the legality of filming police activities. Specifically, Nevada Revised Statutes (NRS) 171.1233(2)(a) ensures the right to film police actions by stating that a peace officer shall not interfere with an individual's effort to record law enforcement activities. This includes any intentional actions by an officer to prevent or attempt to prevent such recordings. The right to film police activities is further reinforced by the precedent established in *Glik v. Cunniffe*, which confirms that individuals have the right to record police in action. This ruling has been influential and was cited by both prosecution and defense in appellate proceedings. *Id*. Moreover, the case of *Houchins v. KQED, Inc*. supports the broader right to gather news from any lawful source, further underpinning the legality of recording police activities. *Id*.

The right to film government officials in public spaces is firmly established under the First Amendment, emphasizing the importance of free discussion of governmental affairs. This principle was notably upheld in *Mills v. Alabama*, which recognized the right to record police

officers performing their duties in public spaces as a fundamental aspect of the First Amendment interest in promoting transparent discussion of governmental actions. *Mills v. Alabama,* 384 U.S. 214, 218, 86 S. Ct. 1434, 16 L. Ed. 2d 484 (1966)). Further, the case *Smith v. City of Cumming* articulated that the First Amendment protects the right to gather information about public officials' activities on public property, specifically highlighting the right to record matters of public interest *Smith v. City of Cumming* 212 F.3d 1332, 1333 (11th Cir. 2000)). Additionally, *Fordyce v. City of Seattle* recognized a First Amendment right to film matters of public interest. *See* 55 F.3d 436, 439 (9th Cir. 1995)).

In the case of Mr. DeCastro, the court noted that despite Officer Bourque's claim that Mr. DeCastro did not back up as instructed, evidence confirmed that Mr. DeCastro did indeed comply with the order. The court also addressed the lack of a specific "twenty-one foot" rule dictating the distance from which officers can be filmed during police activities, affirming that such a rule does not exist. The court observed that Mr. DeCastro used provocative and challenging language during the encounter, which could be perceived as offensive and annoying. However, it concluded that this behavior was protected under the First Amendment, referencing *City of Houston v. Hill* (482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987).

Ultimately, the court determined that Mr. DeCastro neither obstructed Officer Bourque nor resisted arrest. As such, the court granted the appeal and reversed Mr. DeCastro's convictions, citing First Amendment protected activities as the basis for its decision.

### Standard for Motions for Summary Judgment

By clearly established law, a court deciding a motion for summary judgment is required to consider all disputed facts in the light most favorable to the nonmoving party. See A. K. H., 837

F.3d at 1010; Harris v. Roderick, 126 F.3d 1189, 1192 (9th Cir. 1997) ("We state the facts, as we must on this appeal, as they are set forth in [the operative] Complaint.").

In *Sandoval v. Las Vegas Metro. Police Dep't,* 756 F.3d 1154 (9th Cir. 2014), the Ninth Circuit overturned the district court's summary judgment rulings on excessive force and qualified immunity because the district court improperly weighed conflicting evidence with respect to disputed material facts. Id. at 1166. Specifically, the court drew conclusions based upon conflicting testimony, relying upon the officers' version of events rather than the non-moving party's version. Id. "[I]n weighing the evidence in favor of the officers, rather than the Sandovals, the district court unfairly tipped the reasonableness inquiry in the officers' favor," an error that mandated reversal. Id. at 1167.

Here, there are contested material facts which are relevant to the present action, including factual allegations which, taken most favorably to Plaintiff, prevent granting summary judgment as to any of his causes of action.

Notably, however, even beyond their being *contested* material facts, there are factual findings mixed with legal findings which control in favor of Plaintiff by a court which has had full opportunity to review the evidence:

- On March 15, 2023, Ofc. Branden Bourque conducted a vehicle stop on a Hyundai in a parking lot at 4155 S, Grand Canyon Drive, Las Vegas, Nevada.
- During the vehicle stop, Mr. DeCastro began filming the police encounter. Ofc. Bourque testified that he instructed Mr. DeCastro to back up.
- Mr. DeCastro testified that he did back up.
- At trial, Ofc. Bourque referenced a "twenty-one foot" rule.

- The Court found that Ofc. Bourque did not vocalize that Mr. DeCastro should back up to twenty-one feet away from the Officer.
- This Court found that after being ordered to cease speaking to the driver by Ofc. Bourque Mr. DeCastro complied, and on direct appeal the State agreed with that assessment.
- At trial, Officer Bourque claimed Mr. DeCastro did not back up. However, this Court concluded that Mr. DeCastro did in fact back up when ordered to do so.
- There is no "twenty-one foot" rule regarding the distance officers can be filmed while performing police activities.
- This Court found that Mr. DeCastro utilized provocative and challenging language that could be described as offensive and annoying but, ultimately, the behavior was protected by the First Amendment to the U.S. Constitution. City of Houston v. Hill, 482 U.S. 451,461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987). Glik v. Cunniffe, 655 F. 3rd 78 (2011). Wilson v. First Judicial Dist. Court, 140 Nev. Adv. Op. 7 (Nev. App. 2024).
- The State attempted to argue time, place, and manner restrictions on First Amendment activities supported Mr. DeCastro's convictions. This Court observed that the interaction between Mr. DeCastro and Ofc. Bourque transpired in a sizable parking lot, in the course of a traffic stop, during daylight hours. This Court recognized that the driver of the vehicle had no right to privacy in that setting. Furthermore, this Court found that Ofc. Bourque was not hindered in his ability to issue the driver a citation. Ofc. Bourque chose to let the driver go in order to

concentrate his attention on Mr. DeCastro while Mr. DeCastro was practicing his constitutionally protected right to film

- This Court finds that Mr. DeCastro did not Obstruct Ofc. Bourque nor did Mr. DeCastro resist arrest. This Court grants the appeal and reverses the convictions based upon First Amendment Protected Conduct.

### *Wilson v. First Judicial Dist. Court*

*Wilson v. First Judicial District Court* supports the understanding that Plaintiff did not violate the law (and thus his rights were violated). However, it is important to recognize that Plaintiff's legal rights do not flow from this case, this case merely recognized the pre-existing law which protected Appellant. It did not change the law. Plaintiff was still protected by the First Amendment (and Nevada law) at the time his rights were violated.

In that case, on March 25, 2021, the Carson City Sheriff's Office responded to a call indicating a juvenile was contemplating suicide. *Willson v. The First Judicial Dist. Court of the State*, 140 Nev. Adv. Op. 7, 3 (Nev. App. 2024).

Sergeant Mike Cullen was the first officer to arrive and saw the juvenile walking down a residential road with a knife in his hands. Sergeant Cullen followed the juvenile in his car and attempted to communicate with him. At some point, the juvenile stopped in the street, and Sergeant Cullen got out of his car and continued to communicate with the juvenile from a distance. The juvenile pressed the knife into his body a couple of times and stated he wanted to kill himself. In accord with his training, Sergeant Cullen attempted to build rapport with the juvenile to prevent the juvenile from committing suicide. *Id*.

Shortly thereafter, more officers arrived on the scene. *Id.* One officer, Deputy Nicholas Simpson, maintained a position with a beanbag shotgun while the other officers attempted to

deescalate and control the scene. Deputy Simpson was to use the beanbag shotgun if the public or the officers became at risk. Approximately 15 minutes after the officers arrived on scene, the juvenile dropped the knife. Sergeant Cullen believed the situation was unstable up until that moment. *Id*.

At some point during these 15 minutes, while the officers were interacting with the juvenile, Willson, who lived next door to where the incident was taking place, started yelling at the officers and the juvenile from the middle of her front lawn, Willson continued to yell at the officers even though two deputies had asked her to stop yelling several times. The officers generally could not recall what Willson was yelling, although Sergeant Cullen heard Willson yell at some point that "she was a witness of some sort." *Id*.

The officers testified that Willson did not leave her yard, did not threaten them with violence, and did not throw anything at them. Nevertheless, the officers testified that Willson's yelling was loud and disruptive and delayed their attempts to get the juvenile to drop the knife because it interfered with their ability to build rapport and interact with the juvenile. Deputy Simpson also testified that he had to put down the beanbag shotgun to address Willson because of her yelling, which put the officers at risk. Eventually, Willson's behavior "stopped enough" to where the officers were able to get the juvenile over to the curb, and the juvenile dropped the knife. Thereafter, the State charged Willson with obstructing a public officer in violation of NRS 197.190, and Willson was convicted after a bench trial in Carson City Justice Court. Willson appealed her conviction to the district court, arguing that NRS 197.190 was unconstitutionally overbroad and vague both on its face and as applied to her. *Id*.

In that case, the Court held that NRS 197.190 makes it unlawful to "willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties." NRS 197.190 does not define the term "willfully"; therefore, we consider the term as it is commonly understood. *See Cornelia, v. Just. Ct. of New River Twp.,* 132 Nev. 587, 594, 377 P.3d 97, 102 (2016) ("When the Legislature does not specifically define a term, this court 'presume[s] that the Legislature intended to use words in their usual and natural meaning.'" (alteration in original) (quoting *Wyman v. State,* 125 Nev. 592, 607, 217 P.3d 572, 583 (2009))). Although the term is generally understood to mean "deliberately" or "intentionally]," *see Willful, Merriam-Webster's Collegiate Dictionary* (11th ed. 2020), the term may denote either that an act is "[v]oluntary and intentional, but not necessarily malicious" or that an act "involves [a] conscious wrong or evil purpose on the part of the actor," *see Willful, Black's Law Dictionary.*

Because the term "willfully" does not necessarily require malice, the phrase "willfully hinder, delay or obstruct any public officer" may reasonably be interpreted as requiring only that a person intend to perform an act that resulted in the hinderance, delay, or obstruction of a public officer. *See Robey v. State,* 96 Nev. 459, 461, 611 P.2d 209, 210 (1980) (stating the term "'willful' when used in criminal statutes with respect to proscribed conduct relates to an act or omission which is done intentionally, deliberately or designedly, as distinguished from an act or omission done accidentally, inadvertently, or innocently"); *see also Moore v. State,* 136 Nev. 620, 624, 475 P.3d 33, 36 (2020) (recognizing "the term 'wil[l]fully' has been defined to refer to general intent" in the context of statutes aimed at the protection of infants (alteration in original) (quoting *Jenkins v. State,* 110 Nev. 865, 870, 877 P.2d 1063. 1066 (1994))).

Willson argued before the Court in that case that NRS 197.190 is unconstitutional because its prohibition against speech that hinders, delays, or obstructs a public officer includes speech protected by the First Amendment. Although NRS 197.190 makes it unlawful to "hinder, delay or obstruct any public officer in the discharge of official powers or duties," the statute does not define the operative verbs "hinder," "delay," or "obstruct." These terms plainly indicate a "legislative intent to prohibit that which would interfere with law enforcement officers as they go about their duties," *Newton v. State,* 698 P.2d 1149, 1152 (Wyo. 1985), but they do not clearly indicate whether the statute encompasses mere speech, *see Hinder, Merriam-Webster's Collegiate Dictionary* ("to make slow or difficult the progress of: hamper" or "to hold back: check"); *Delay, Merriam-Webster's Collegiate Dictionary* (to "put off, postpone," "to stop, detain, or hinder for a time," or "to cause to be slower or to occur more slowly than normal"); *Obstruct, Merriam-Webster's Collegiate Dictionary* ("to block or close up by an obstacle" or "to hinder from passage, action, or operation: impede").

Therefore, and in order to render the statute constitutional, as applying only to physical conduct and fighting words, Nevada struck down the conviction. For the reasons discussed above, the Court concluded that NRS 197.190 only applies to physical conduct and fighting words that are specifically intended to hinder, delay, or obstruct a public officer and, thus, the statute is not unconstitutionally (when applied in that manner).

### **Defendants are not Entitled to Summary Judgment.**

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party has the initial burden of showing the absence of a genuine issue of material fact with evidence demonstrating the same and the court must view the facts and reasonable inferences in the light most favorable to the non-moving party. See Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982); see also Celotext Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing version of events. See Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 863 F. Supp. 1237, 1239 (D. Nev. 1994) (citations omitted). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); accord Celotex, 477 U.S. at 325. The non moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).

To establish the existence of a genuine factual dispute, the non-moving party need not establish a material issue of fact conclusively in its favor but show the factual dispute requires a jury or judge to resolve the differing versions of the truth at trial. See Schuster v. Bannister, Case No. 3:11-cv-00081-HDM (WGC), 2012 WL 6917787 at *2 (D. Nev. Dec. 7, 2012) (citing T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). "Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted." Zurich American Ins. Co. v. Coeur Rochester Inc., 720 F.Supp.2d 1223, 1227 (D. Nev. 2010). If factual issues exist for trial, summary judgment is not proper. Id.

A claim of excessive force during an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989).

To determine whether the use of force by a law enforcement officer was excessive under the Fourth Amendment, a court must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id*. at 397.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotation marks omitted). In this analysis, the Court must consider the following factors: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff actively resisted arrest. *Id*.; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment, let alone dismissal under Rule 12(b)(6). "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

Here, Plaintiff's Second Amended Complaint sets forth the following relevant facts: Officer Borque was visibly upset when he came after Plaintiff. ¶ 44. Borque walked aggressively

12

toward Plaintiff as if to use force. ¶ 45. Borque manhandled Plaintiff and stated "I am going to put my hands on you." ¶ 46. Broque put his hands on Plaintiff unnecessarily. ¶ 46. Officers forcefully grabbed Plaintiff even though he was cooperating fully. ¶ 48.

Plaintiff made the Officers aware that he suffered from a prior shoulder injury. ¶ 51. Officer Sandoval yanked and squeezed forcefully on Plaintiff's arm despite his shoulder injury when such was unnecessary. ¶ 51. Plaintiff was not a threat, was cooperating, and was surrounded by four different police officers. ¶ 52.

Sandoval ordered Plaintiff to look straight ahead for no legal reason and Sandoval squeezed Plaintiff's elbow, applying nerve pressure on the ulnar nerve, merely for Plaintiff not immediately looking straight ahead. ¶ 53. Sandoval intentionally and deliberately pressured the ulnar nerve to cause pain and permanent damage. ¶ 53. Sandoval stated it was officer policy to use pain compliance on ulnar nerves for random commands including not looking straight ahead. ¶ 55.

These actions caused Plaintiff severe pain and paresthesia from compression of his ulnar nerve by Officers. ¶ 56. Plaintiff pleaded for help in response to this physical pain which was ignored by officers. ¶ 57. Defendants squeezed Plaintiff's nerve for more than fifteen total minutes. ¶ 58.

Sandoval spread Plaintiff's name uncomfortably wide and purposely and maliciously and with significant force struck Plaintiff in the testicles with what felt like a closed fist. ¶ 62. Defendants also forcibly moved Plaintiff into police vehicle and pulled the seat belt as tight as they could, knocking the air out of the Plaintiff. ¶ 63.

Defendants caused Plaintiff sustained physical injuries, physical main, mental suffering, emotional distress, and other damages. ¶ 66. Plaintiff did not do anything which would put any officer in reasonable fear for his or her safety. ¶ 67. That Borque and Sandoval engaged in

excessive force against the Plaintiff after he was already in custody, causing physical and mental damages. ¶ 85-87.

Here, turning to the relevant factors, it is clear that Plaintiff has properly plead his excessive force claims: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff actively resisted arrest. *Id*.; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). Plaintiff has sufficiently plead that the severity of the crime at issue was minor, and Here, Defendants cannot reasonably contest this. Plaintiff has plead that he was arrested as being targeted as a member of the press and for filming police activity. Defendants had no reason to believe Plaintiff was dangerous. He was merely filming a traffic stop.

Contrary to Defendants' Motion, contested material evidence prevents granting summary judgment as to these claims.  Second, at the time the allegations of excessive force occurred, Defendant was already detained, physically restrained, and cooperating. Defendants do not seriously contest these facts or present any evidence to support a reasonable belief that Defendant, surrounded by four officers and handcuffed, presented a safety risk.

The appellate court has already determined the following conclusions:

- On March 15, 2023, Ofc. Branden Bourque conducted a vehicle stop on a Hyundai in a parking lot at 4155 S, Grand Canyon Drive, Las Vegas, Nevada.
- During the vehicle stop, Mr. DeCastro began filming the police encounter. Ofc. Bourque testified that he instructed Mr. DeCastro to back up.
- Mr. DeCastro testified that he did back up.

- At trial, Ofc. Bourque referenced a "twenty-one foot" rule.
- The Court found that Ofc. Bourque did not vocalize that Mr. DeCastro should back up to twenty-one feet away from the Officer.
- This Court found that after being ordered to cease speaking to the driver by Ofc. Bourque Mr. DeCastro complied, and on direct appeal the State agreed with that assessment.
- At trial, Officer Bourque claimed Mr. DeCastro did not back up. However, this Court concluded that Mr. DeCastro did in fact back up when ordered to do so.
- There is no "twenty-one foot" rule regarding the distance officers can be filmed while performing police activities.
- This Court found that Mr. DeCastro utilized provocative and challenging language that could be described as offensive and annoying but, ultimately, the behavior was protected by the First Amendment to the U.S. Constitution. City of Houston v. Hill, 482 U.S. 451,461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987). Glik v. Cunniffe, 655 F. 3rd 78 (2011). Wilson v. First Judicial Dist. Court, 140 Nev. Adv. Op. 7 (Nev. App. 2024).
- The State attempted to argue time, place, and manner restrictions on First Amendment activities supported Mr. DeCastro's convictions. This Court observed that the interaction between Mr. DeCastro and Ofc. Bourque transpired in a sizable parking lot, in the course of a traffic stop, during daylight hours. This Court recognized that the driver of the vehicle had no right to privacy in that setting. Furthermore, this Court found that Ofc. Bourque was not hindered in his ability to

issue the driver a citation. Ofc. Bourque chose to let the driver go in order to concentrate his attention on Mr. DeCastro while Mr. DeCastro was practicing his constitutionally protected right to film

- This Court finds that Mr. DeCastro did not Obstruct Ofc. Bourque nor did Mr. DeCastro resist arrest. This Court grants the appeal and reverses the convictions based upon First Amendment Protected Conduct.

All of which in fact precludes summary judgment both pursuant to pre-existing constitutional law and pursuant to *Wilson*.

Dated this 23rd day of August, 2024

**/s/ Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar #: 13726
400 South Street #500
Las Vegas, Nevada 89101
Tel: (702) 990-0190
attorneymichaelmee@gmail.com
*Counsel for Appellant*

**CERTFICIATE OF SERVICE**

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appendix was served upon those parties registered to receive electronic service in the above-captioned matter.

Dated this 23rd day of August, 2024

/s/ **Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar #: 13726
400 South Street #500
Las Vegas, Nevada 89101
Tel: (702) 990-0190
attorneymichaelmee@gmail.com
*Counsel for Plaintiff.*