**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Nicholas M. Adams, Esq.
Nevada Bar No. 15859
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
nadams@maclaw.com
  Attorneys for Defendants LVMPD, Sgt. Torrey, Ofc. Bourque, Ofc. Dingle, Ofc. Sorenson, Ofc. Sandoval and Ofc. Doolittle

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOSE DECASTRO,<br><br>           Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; STATE OF NEVADA; BRANDEN BOURQUE; JASON TORREY; C. DINGLE; B. SORENSON; JESSE SANDOVAL; OFFICER DOOLITTLE and DOES 1 to 50, inclusive,<br><br>           Defendants. | Case Number:<br>2:23-cv-00580-APG-EJY<br><br>**LVMPD DEFENDANTS' TRIAL BRIEF** |

Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Ofc. Branden Bourque ("Bourque"), Sgt. Jason Torrey ("Torrey"), Ofc. Chadly Dingle ("Dingle"), Ofc. Brandon Sorenson ("Sorenson"), Ofc. Jesse Sandoval ("Sandoval"), and Ofc. Clinton Doolittle ("Doolittle") (collectively, "LVMPD Defendants"), by and through their attorney of record, Marquis Aurbach, hereby submit their Trial Brief.

## **MEMORANDUM OF POINTS & AUTHORITIES**

### I.  **INTRODUCTION**

On March 15, 2023, Defendant Bourque arrested DeCastro for obstructing a traffic stop. During the routine traffic stop, DeCastro approached the driver of the vehicle and began to film. When Bourque told DeCastro he could film but needed to do so from a safe

Page 1 of 17

MAC: 14687-456 (#6219378.1)

distance, DeCastro became combative, argumentative, and non-compliant. After DeCastro ignored multiple lawful orders to move a safe distance away, Bourque arrested DeCastro, who then physically resisted the arrest. DeCastro now claims that Bourque lacked probable cause to arrest him and only arrested him in retaliation for his exercising of his First Amendment right to film. He also claims the officers used excessive force against him.

The case is now set for trial on February 9, 2026. Prior court orders have significantly limited the issues for trial. Because DeCastro is a First Amendment auditor[1] and considers himself to be a "constitutional scholar," the defendants anticipate potential disputes may arise during trial. This brief is organized to provide the Court with a roadmap of the issues likely to be addressed at trial. As further explained hereinbelow, the LVMPD Defendants request that the Court caution DeCastro against providing his opinions about the relevant law during his testimony, and that the Court issue a special interrogatory to the jury to resolve certain factual disputes necessary for this Court to rule on outstanding issues of law. The LVMPD Defendants also address the applicable legal standards governing each of DeCastro's remaining claims and explain why LVMPD Defendants expect that DeCastro will be unable to meet his evidentiary burden to prevail on most, if not all, of his claims.

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY.

### A.  STATEMENT OF FACTS

For a detailed overview of the underlying facts with record citations, see the factual background in LVMPD Defendants' Motion for Summary Judgment. (ECF No. 86). The Court has also provided a detailed factual background based on its review of the documentary and video evidence. (ECF No. 100). LVMPD Defendants respectfully incorporate those factual background sections into this trial brief.

---

[1] First Amendment auditors are individuals who test the First Amendment's protection of free speech and press by filming in public spaces, often provoking government employees or police into reactions to document potential rights violations for social media, aiming for transparency but sometimes using confrontational tactics like harassment or intimidation, leading to debate over their methods versus their stated goals.

## B. PROCEDURAL HISTORY AND PRIOR COURT ORDERS.

### 1. Procedural History of The Instant Case.

On April 17, 2023, DeCastro filed the instant lawsuit. (ECF No. 1). On May 7, 2023, DeCastro amended his complaint ("FAC"). (ECF No. 13). On October 23, 2023, this Court issued its Order Granting in part Defendants' Motion to Dismiss. (ECF No. 44). Specifically, this Court dismissed with prejudice DeCastro's claims for unreasonable search and seizure, false arrest/imprisonment, invasion of privacy and negligence-based search and seizure. (ECF No. 44 at 16). This Court also dismissed without prejudice DeCastro's equal protection claim, First Amendment retaliation claim, *Monell* claim, § 1981 claim, and negligence-based claim for biased policing without prejudice, DeCastro's excessive force and supervisor liability claims survived. This Court gave DeCastro leave to amend the claims dismissed without prejudice. (*Id.*)

DeCastro amended his claims and filed his Second Amended Complaint ("SAC") on November 27, 2023, which is the operative Complaint in this case. (ECF No. 61). On December 11, 2023, the LVMPD Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, Motion for Summary Judgment. (ECF No. 66). DeCastro filed his Response and Opposition (ECF No. 79), and LVMPD Defendants filed their Reply (ECF No. 80).

Following discovery, LVMPD Defendants filed a motion for summary judgment (ECF No. 86). Around the time that summary judgment was being briefed, DeCastro successfully appealed his Nevada state court criminal conviction and his conviction was overturned and vacated, as explained below. Thereafter, this Court issued an Order granting LVMPD Defendants' motion for summary judgment in part, and also reconsidering its prior dismissal of certain claims (ECF No. 100). As a result of the Order, the following claims remain for trial

- State law false arrest and unlawful search and seizure against Bourque;

- State law invasion of privacy against Bourque, Torrey, Dingle, Sorenson, Sandoval, and Doolittle;
- § 1983 Fourth Amendment excessive force and state law excessive force/battery against Bourque and Sandoval;
- § 1983 Fourth Amendment Failure to intervene against Bourque, Dingle, Doolittle, and Sorenson;
- § 1983 First Amendment and Nevada state law free speech retaliation against Bourque and Torrey; and
- § 1983 Fourteenth Amendment selective enforcement against Bourque and Torrey.

### 2. Procedural History of Criminal Case.

The subject incident occurred on March 15, 2023. DeCastro was charged with two misdemeanors in connection with his arrest: (1) Obstructing a Public Officer – NRS 197.190; and (2) Resisting a Police Officer or Resisting Arrest – NRS 199.280. (ECF No. 86, pgs. 46-47). DeCastro pled not guilty and proceeded to a bench trial on the charges in the Clark County Justice Court ("Justice Court"). (*Id.* at pgs. 49-51).

On March 19, 2024, DeCastro's criminal bench trial was held in front of the Honorable Ann Zimmerman. (*See id.*) DeCastro was represented by his counsel of record in this action at the criminal trial. (*See id.*) DeCastro was convicted on both charges and sentenced to six months in jail, three months on each charge to run consecutively. (*Id.*) While the district attorney recommended probation, DeCastro's offensive courtroom behavior influenced the judge who sentenced him to 180-days in jail. The LVMPD Defendants had nothing to do with influencing this sentence.

DeCastro appealed his conviction. His appeal proceeded in Clark County's Eighth Judicial District Court ("District Court"). On July 10, 2024, DeCastro's appeal was heard by the Honorable Michelle Leavitt of Department 22 of the District Court. The District Court granted the appeal and overturned DeCastro's convictions based upon his conduct on March 15, 2023 being First Amendment protected conduct. (*See* ECF No. 121, pgs. 30-36).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-456 (#6219378.1)

### III. POTENTIAL LEGAL ISSUES

#### A. FIRST AMENDMENT PRESS PROTECTIONS AND RIGHT TO RECORD POLICE.

Throughout DeCastro's criminal trial testimony and within his YouTube videos, he regularly asserts that the LVMPD Defendants violated his constitutional rights in part because he asserted his "right to be press" during the subject incident. LVMPD Defendants submit that the law does not support DeCastro's theory that asserting one's status as a member of the press grants special privileges or access rights beyond those available to the general public. More importantly, DeCastro is a lay witness and cannot testify regarding First Amendment standards or whether his self-described status as a member of the press has any bearing on his claims or the reasonableness of LVMPD Defendants' actions. Resultantly, LVMPD Defendants request that the Court caution DeCastro against offering legal opinions and be prepared to rule upon objections to such testimony during the trial. DeCastro cannot comment on what the law does or does not provide for. DeCastro is unqualified to provide such testimony, and any attempts by DeCastro to influence the jury's view of the applicable law would be unfounded and prejudicial to LVMPD Defendants.

"[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes*, 408 U.S. 665 (1972)) (citations omitted). While the press enjoys robust First Amendment protections, these protections are coextensive with, not superior to, those enjoyed by ordinary citizens. *See Pell v. Procunier*, 417 U.S. 817 (1974) ("The Constitution does not ... require government to accord the press special access to information not shared by members of the public generally"); *see also See Houchins v. KQED, Inc.*, 438 U.S. 1, 15–16, (1978) (three-judge opinion holding that "the media have no special right of access ... different from or greater than that accorded the public generally"). The Ninth Circuit has consistently applied this principle, recognizing that press members possess First Amendment rights equal to but not greater than the public's rights. *See, e.g., California First Amendment Coalition v. Woodford*, 299 F.3d 868, 873 n.2 (2002) ("As members of the press, plaintiffs' First

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Amendment right of access to governmental proceedings is coextensive with the general public's right of access").

During DeCastro's criminal trial, he repeatedly testified that he "invoked [his] right to be press" during the subject incident. (*See* ECF No. 90-1, pgs. 14-15). His counsel, Mr. Mee, represented to the Justice Court that as a member of the press, DeCastro was subject to different legal standards, and stated to the Court that DeCastro could provide insight about that. (*Id.* at p. 14). As a lay witness, DeCastro may not testify as to a legal conclusion. *See United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) (citing *Evangelista v. Inlandboatmen's Union of Pacific*, 777 F.2d 1390, 1398 n. 3 (9th Cir. 1985). This Court may, accordingly, preclude DeCastro from relating legal conclusions, but not the facts underpinning those conclusions (so long as they are otherwise admissible). *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-60 (9th Cir. 2008).

In sum, DeCastro should not be permitted to testify regarding his mistaken belief that his self-identification as a member of the press has any bearing on whether the LVMPD Defendants had probable cause to arrest him or otherwise violated his constitutional rights. LVMPD Defendants request that the Court caution DeCastro against offering such legal conclusions during his testimony. LVMPD Defendants will be prepared to object should DeCastro offer unqualified legal opinions intended to influence the jury's view of the legality of his conduct during the subject incident.

**B.  LEGAL ISSUE – DISCRETIONARY IMMUNITY AND THE NEED FOR A SPECIAL INTERROGATORY**

As set forth in LVMPD Defendants' Second Motion for Summary Judgment (ECF No. 102), LVMPD Defendants contend that they are entitled to discretionary immunity under NRS 41.032(2) with respect to DeCastro's state law claims for false arrest, unlawful search incident to arrest, and invasion of privacy. Although the Court previously determined that genuine disputes of material fact precluded summary judgment based on the discretionary immunity defense, the existence of discretionary immunity is an issue of law that must be resolved by the Court and not by the jury. Accordingly, LVMPD Defendants

believe that a special interrogatory should be sent to the jury to resolve any factual questions necessary for this Court to rule on the issue of discretionary immunity as applied to DeCastro's state law claims.

The Supreme Court, in the context of qualified immunity, has said that immunity "ordinarily should be decided by the court" and should not "routinely be sent to the jury." *See Sloman v. Tadlock,* 21 F.3d 1462, 1467-68 (9th Cir. 1994) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)). This approach results from the Court's view that qualified immunity is immunity from suit, not simply a defense. Nevada adopts similar reasoning with respect to the discretionary immunity afforded under NRS 41.032(2). "When forced to face the 'burdens of litigation' erroneously, public officials lose the protections of qualified and discretionary-act immunity in their entirety." *Clark Cnty. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 570 P.3d 135, 141 (Nev. 2025) ("[I]mmunity must be resolved at the earliest possible stage of litigation") (citations omitted).

This Court previously rejected LVMPD Defendants' summary judgment arguments contending that discretionary immunity barred DeCastro's state law claims, reasoning that genuine questions of material fact remained as to whether the LVMPD Defendants had probable cause to arrest DeCastro or their actions were made in bad faith. (ECF No. 109). While the law is clear that acts committed in bad faith or in violation of a citizen's constitutional rights are not discretionary, the law is equally clear that police officers in Nevada are entitled to discretionary function immunity under NRS 41.032 for their discretionary acts so long as the officer does not act in bad faith. *See, e.g., Sandoval v. Las Vegas Metro. Police Dep't*, 854 F. Supp. 2d 860 (D. Nev. 2012), *aff'd in part, rev'd in part,* 756 F.3d 1154 (9th Cir. 2014); *see also Napouk v. Las Vegas Metro. Police Dep't*, 669 F. Supp. 3d 1031 (D. Nev. 2023) (whether to detain or arrest a suspect and how to do so are discretionary functions of the police department); *see also Mitchell v. Las Vegas Metro Police Dep't.,* No. 217CV2188JCMGWF, 2018 WL 1568670 (D. Nev. 2018) (finding that officer's decision to arrest met the two factors of the discretionary immunity test).

MAC: 14687-456 (#6219378.1)

Most courts of appeals have ruled that immunity determinations are not a jury question. *Tatro v. Kervin,* 41 F.3d 9, 15 (1st Cir. 1994) "[q]ualified immunity . . . should not be decided by the jury"); *Cameron v. Seitz,* 38 F.3d 264, 273 n.2 (6th Cir. 1994) (qualified immunity should be decided by the judge); *Anderson v. DeRobertis,* 940 F.2d 1055, 1058 (7th Cir. 1991) (qualified immunity is question of law for the district court); *Chapman v. Nichols,* 989 F.2d 393, 398 (10th Cir. 1993) (juries should not decide whether an officer "Could have reasonably believed he was acting properly in light of established law"); *Ansley v. Heinrich,* 925 F.2d 1339, 1348 (11th Cir. 1991) (juries should determine factual issues without any mention of qualified immunity); *Warren v. Dwyer,* 906 F.2d 70, 75 (2d Cir. 1990) (ultimate legal determination is "better left for the court to decide").

The current trend is that a court sends special interrogatories to the jury to resolve factual questions. *See Cottrell v. Caldwell,* 85 F.3d 1480, 1488 (11th Cir. 1996) (qualified immunity should not be submitted to the jury, just "special interrogatories" on the "who-what-when-where-why type of historical fact issues").

Therefore, at the close of the evidence, if factual issues still remain, this Court should submit a special interrogatory to the jury to asking:

> If you found that Ofc. Borque lacked probable cause to arrest DeCastro, you must then decide whether Ofc. Borque arrested him in "bad faith." "Bad faith" requires something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.[2]
>
> Do you find that Ofc. Borque arrested DeCastro in bad faith?
>
> Yes_____        No_____

Once the jury determines this factual question, this Court can re-evaluate the legal issue of whether LVMPD Defendants are entitled to discretionary immunity on DeCastro's state law false arrest and search and seizure claims.

---

[2] *See State v. Durnwald*, 837 N.E. 2d 1234, 1241 (Ohio Ct. App. 2005) (defining "bad faith" in a criminal case where police officer alleged to have destroyed evidence); *see also Gray v. State*, 130 Nev. 1182 (2014) (unpublished) (citing *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001)).

### C. DECASTRO'S DUPLICATIVE CLAIMS.

DeCastro has alleged several claims, some of which overlap and have the potential to confuse the jury or give rise to an inconsistent verdict. Specifically: (1) DeCastro's state law unlawful search and seizure claim and invasion of privacy claim are based on the same facts and legal theories; and (2) DeCastro's federal law excessive force claim and state law excessive force and battery claims are based on the same facts and legal standards. The Court should combine these causes of action to not confuse the jury and risk the possibility of an inconsistent verdict.

#### 1. Unlawful search and seizure and invasion of privacy claim.

Both DeCastro's state law unlawful search and seizure claim and his invasion of privacy claim are premised upon the theory that his being searched incident to his arrest was unlawful because the underlying arrest was not supported by probable cause.

The Nevada Supreme Court has previously rejected the notion that state law torts are sufficient to provide meaningful redress for invasions of a citizen's constitutional right against unreasonable searches and seizures by government agents. *See Mack v. Williams*, 138 Nev. 854, 868 522 P.3d 434, 448 (2022). However, in so doing, the Court recognized that overlap between certain common-law tort claims and constitutional tort claims invokes the general rule against double satisfaction. *Id.* (citing *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 370-71, 212 P.3d 1068, 1082-83 (2009)).

Here, DeCastro's false arrest and unlawful search and seizure claims are both based on LVMPD Defendants' alleged violation of his right to be free from unreasonable searches and seizures under Article 1, Section 18 of the Nevada Constitution. (ECF No. 61, pg. 20). Specifically, DeCastro contends that he was arrested without probable cause and so the subsequent search of his person was a constitutional violation. Likewise, DeCastro's invasion of privacy theory is that he had a reasonable expectation of privacy in his personal affairs, and that his privacy was violated when he was searched without legal justification. Although the invasion of privacy claim also requires an additional showing, these claims are

Page 9 of 17

fundamentally asserting the same harm resulting from the same legal theory and asserted facts.

### 2. **<u>Excessive force and battery claims.</u>**

This standard for battery by a police officer under Nevada law is the same as under a 42 U.S.C. § 1983 claim. *See, e.g., Ramirez v. City of Reno,* 925 F. Supp. 681, 691 (D. Nev. 1996) ("The standard for common-law assault and battery by a police officer thus mirrors the federal civil rights law standard: Liability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances.") Accordingly, the relevant evidence and legal standards as applied to DeCastro's state law battery claim should be identical to his 42 U.S.C. § 1983 excessive force claim.

## IV. <u>DECASTRO'S EVIDENTIARY BURDEN ON HIS REMAINING CLAIMS</u>

### A. THE FALSE ARREST-BASED CLAIMS.

Probable cause is a complete defense to DeCastro's false arrest claims under both federal and state law. *Pierson v. Ray*, 386 U.S. 547, 555 (1967) ("[A] peace officer who arrests someone with probable cause is not liable for false arrest."); *Fayer v. Vaughn*, 649 F.3d 1061 (9th Cir. 2011) (Nevada's definition of probable cause is virtually identical to federal standard, and plaintiff's Nevada state law false arrest and false imprisonment claims hinge on contention that probable cause was absent).

Likewise, probable cause is a complete defense to DeCastro's state law unlawful search and seizure claim and his invasion of privacy claim. *See Virginia v. Moore*, 553 U.S. 164, 177 (2008) ("a custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; *that intrusion being lawful*, a search incident to the arrest requires no additional justification") (emphasis in original) (citation omitted).

Both the Fourth Amendment and Article 1, Section 18 of the Nevada Constitution prohibit unreasonable searches and seizures. To determine whether an officer had probable cause for an arrest, courts "examine the events leading up to the arrest, and then decide

MAC: 14687-456 (#6219378.1)

'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to 'probable cause.'" *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (citation omitted). Probable cause "is not a high bar." *Id.* (citation omitted). All that is required is a "fair probability" that the crime occurred. *See Garcia v. Cty of Merced*, 639 F.3d 1206, 1209 (9th Cir. 2011)." "If the facts known to the arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it." *Tatum v. City and Cty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (the subjective reason that an officer arrests a suspect is irrelevant so long as the available facts suggest that the suspect was committing a crime). The mere existence of some evidence that would suggest a defense or non-involvement in the crime will not negate probable cause. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). The probable cause analysis is the same whether under federal law or Nevada state law. *See Marschall v. City of Carson*, 86 Nev. 107, 110, 464 P.2d 494 (Nev. 1970).

Generally, police officers have the right to control bystanders at the scene of police activity. If a bystander refuses an officer's lawful orders, probable cause exists to arrest for obstruction. *See Spencer v. Rau*, 542 F. Supp. 2d 583, 589-91 (W.D. Tex. 2007) (probable cause existed to arrest bystander attempting to help at traffic accident after bystander ignored multiple requests to return to his car); *Abrams v. Walker*, 165 F. Supp. 2d 762, 767 (N.D. Ill. 2001) (trooper had probable cause to arrest and prosecute attorney for obstruction and traffic stop did not constitute retaliation against attorney for exercising First Amendment rights when attorney parked vehicle and walked up to personally voice his concerns about stop's legality because attorney's actions prolonged stop about 20 minutes). In *Gericke v. Begin*, the First Circuit addressed the First Amendment right to film police officers during a traffic stop, stating that police officers may place "reasonable restrictions"

1 on bystanders during traffic stops "when the circumstances justify them." 753 F.3d 1, 7-8 2 (1st. Cir. 2014) (police officers may have justifiable reasons to prevent bystander from 3 filming traffic stop).

4 The Ninth Circuit has held that, under NRS 197.190, it is obstruction to "impede" 5 and prolong an investigation. *See Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1146-47 (9th 6 Cir. 2012). Further, this Court has previously held that an individual is obstructing under 7 NRS 197.190 when the individual is "given several opportunities to comply with 8 Defendants' orders" but fails to do so. *Kelly v. Las Vegas Metro. Police Dep't.,* 2:12-CV-9 02074-LRH (CWH), 2014 WL 3725927, *6 (July 25, 2014). In *Willson v. First Jud. Dist.* 10 *Ct.,,* Nevada's Court of Appeals considered the constitutionality of NRS 197.190. 547 P.3d 11 122, 127 (Nev. App. 2024). The *Willson* Court ultimately clarified and narrowed the scope 12 of NRS 197.190 while determining that the statute was constitutional. *Id.* In doing so, the 13 *Willson* Court concluded that certain conduct, such as refusing to obey a lawful order, 14 constitutes physical conduct which delays, hinders, or obstructs an officer. *Id.* at 135. In 15 other words, intentionally refusing to obey a lawful order does constitute obstruction under 16 the *Willson* Court's interpretation of NRS 197.190.

17 Moreover, under NRS 199.290, a person does not have the right to "resist, delay or 18 obstruct a public officer in discharging or attempting to discharge any legal duty of his 19 office" even if the initial seizure was unlawful, unless the resisting individual was "facing 20 imminent and serious bodily harm at the hands of the police officer." *State v. Lisenbee,* 13 21 P.3d 947, 951 (Nev. 2000) (quotation omitted).

22 Here, DeCastro was arrested and cited under NRS 197.190 for obstructing a public 23 officer and NRS 199.280 for resisting arrest. If the LVMPD Defendants establish that 24 DeCastro willfully hindered Officer Bourque's investigation by refusing multiple lawful 25 orders to step back from the traffic stop, declaring he was "staying right here," and 26 continuing to engage with the detained driver, then sufficient evidence exists to support the 27 arrest. Additionally, LVMPD Defendants contend that DeCastro's conduct also constituted

28

resisting arrest under NRS 199.280. Defendants anticipate the evidence will show that DeCastro physically tensed his body, swatted at Officer Bourque's hand, and refused to submit to handcuffing after being advised he was under arrest. These actions go beyond mere verbal protest and amount to physical resistance as contemplated by the statute.

### B. 42 U.S.C. § 1983 FIRST AMENDMENT AND STATE LAW FREE SPEECH RETALIATION.

As previously recognized by this Court, DeCastro's fifth and sixth causes of action are duplicative because there is no independent claim for the "chilling" of First Amendment rights. (ECF No. 100, pg. 34). Therefore, DeCastro retains a single claim for retaliatory arrest under the First Amendment and the Nevada constitution.

In *Nieves v. Bartlett,* the U.S. Supreme Court adopted the "no-probable-cause" rule in relation to retaliatory arrest claims. 587 U.S. 391, 401 (2019). If the plaintiff cannot make a showing that the arrest was not supported by probable cause, a retaliatory arrest generally claim fails. *Id.* The *Nieves* Court did create one exception by stating that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407-08. Article I, § 9 of the Nevada Constitution provides that "[e]very citizen may freely speak, write and publish his sentiments on all subjects being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." Under the Nevada Constitution, the appropriate analysis is identical to that under the First Amendment and is governed by the same standards. *See Univ. & Cmty. Coll. Sys. of Nevada v. Nevadans for Sound Gov't*, 100 P.3d 179, 187-88 (Nev. 2004).

DeCastro did not disclose any evidence or witnesses suggesting that similarly situation individuals engaged in the same conduct were not arrested. Thus, it is unlikely that DeCastro will meet his evidentiary burden on this claim a trial and, therefore, if probable cause existed to arrest DeCastro, this claim will fail.

### C. 42 U.S.C. § 1983 SELECTIVE ENFORCEMENT CLAIM.

DeCastro also asserts a selective enforcement claim, contending that LVMPD Defendants selectively enforced the law against him due to his protected filming activity and/or derogatory speech towards the LVMPD Defendants. However, DeCastro cannot offer evidence to support his conclusory statements.

"Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints." *Wayte v. United States,* 470 U.S. 598, 608 (1985) (quotation omitted). "To prevail on an equal protection claim under the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012). (quotation omitted). To prove a discriminatory effect, the plaintiff "must show that similarly situated individuals . . . were not" subject to the enforcement action. *Id.* (quotation omitted). To establish a discriminatory purpose, the plaintiff must show that the defendant "decided to enforce the law against him on the basis of an impermissible ground such as race, religion or exercise of . . . constitutional rights." *Id.* (quotation omitted).

Here, DeCastro, during discovery, did not identify any witnesses or evidence capable of showing that the officers had any discriminatory intent or discriminatory purpose. DeCastro has not identified a single similarly situated individual who was treated differently. Thus, defendants believe that DeCastro will be unable to meet his evidentiary burden on this claim at trial.

### D. THE § 1983 EXCESSIVE FORCE/STATE LAW BATTERY CLAIMS

#### 1. **42 U.S.C. § 1983 excessive force and state law battery.**

##### a. **Fourth Amendment excessive force legal standards.**

In evaluating a Fourth Amendment excessive force claim, a court asks "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor,* 490 U.S. 386, 397 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-456 (#6219378.1)

make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Reasonableness "must [therefore] be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted).

To determine the reasonableness of the officers' actions, a court must "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted'." *Glenn v. Washington Cty.,* 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Espinosa v. City & Cty. of S.F.,* 598 F.3d 528, 537 (9th Cir. 2010)). Even in cases "where some force is justified, the amount actually used may be excessive." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002) (citation omitted).

### b.     LVMPD Defendants used reasonable force.

DeCastro claims that Sandoval intentionally punched DeCastro's genitals and that Sandoval excessively squeezed his arm tightly. These excessive force claims are quintessential jury questions. This Court's summary judgment order indicated that this claim applies to Ofc. Bourque - however, DeCastro has consistently maintained that the alleged excessive force at-issue at trial was applied by Sandoval.

### 2.     Failure to intervene.

A failure to intervene (a/k/a failure to intercede) claim is a subpart of the Fourth Amendment right to be free of excessive force. *Cunningham v. Gates,* 229 F.3d 1271, 1289 (9th Cir. 2003) ("police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen"). Generally, a failure to intervene claim exists when bystander officers have an opportunity to intervene, but fail to do so. *Lolli v. Cty. of Orange,* 351 F.3d 410, 418 (9th Cir. 2003). "[T]he constitutional right violated by the *passive* defendant is analytically the same as the right violated by the person who [uses excessive force]." *U.S. v. Koon,* 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (emphasis added). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham,* 229 F.3d at 1290.

MAC: 14687-456 (#6219378.1)

The Ninth Circuit has only recognized a claim for failing to intervene in the excessive force context. Police officers do not have a general duty to intervene in all alleged wrongdoings by a fellow officer. *Briscoe v. Madrid,* 1:17-CV-0716-DAD-SKO, 2018 WL 4586251, at *5 (E.D. Cal. Sep. 21, 2018); *Dental v. City Salem,* No. 3:13-CV-01659-MO, 2015 WL 1524476, at *5 (D. Or. Apr. 2, 2015). The duty to intercede is "clearly limited to the context of excessive force" claims under the Fourth Amendment. *Dental,* 2015 WL 1524476, at *5 (finding that the duty to intercede did not apply to the plaintiff's wrongful arrest claim); *Gillette v. Malheur Cty.,* 2:14-CV-01542 -SU, 2016 WL 3180228, *7 (D. Or. 2016); *Milke v. City of Phoenix,* No. CV-15-00462-PHX-ROS, 2016 WL 5339693 (D.Az. Jan. 8, 2016) (no duty to intervene outside of excessive force context).

Here, this claim can only apply to DeCastro's excessive force claim. Thus, if the force is found excessive by the jury, they must then decide whether the officers had sufficient time and notice to intervene. If the force was not excessive, this claim will fail..

## V. **CONCLUSION**

Based upon the above, the LVMPD Defendants request that the Court caution DeCastro against providing his opinions about the relevant law during his testimony, and that the Court issue special interrogatories to the jury as set forth herein.

Dated this 2nd day of February, 2026.

MARQUIS AURBACH

By *s/Craig R. Anderson*
   Craig R. Anderson, Esq.
   Nevada Bar No. 6882
   10001 Park Run Drive
   Las Vegas, Nevada 89145
   Attorney for LVMPD Defendants

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **LVMPD DEFENDANTS' TRIAL BRIEF** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 2nd day of February, 2026.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☒ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants: n/a

*s/Sherri Mong*
an employee of Marquis Aurbach

MAC: 14687-456 (#6219378.1)