**MICHAEL MEE, ESQ.**
Nevada Bar No. 13726
400 S 4th St #500
Las Vegas, NV 89101
(702) 990-0190
mmee@defenselawyervegas.com
*Attorney for Plaintiff Jose DeCastro*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOSE DECASTRO,

Plaintiff,

vs.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT; STATE OF NEVADA;
BRANDEN BOURQUE; JASON TORREY; C.
DINGLE; B. SORENSON; JESSE
SANDOVAL; OFFICER DOOLITTLE and
DOES 1 to 50, inclusive,

Defendants.

Case No.: 2:23-cv-00580-APG-EJY

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR
ATTORNEY'S FEES (ECF NO. 159) AND
BILL OF COSTS (ECF NO. 160).**

COMES NOW, Plaintiff, JOSE DECASTRO, by and through undersigned counsel, who

submits the attached Response and Memorandum of Points and Authorities addressing

Defendants' Motion for Attorney's Fees (ECF No. 159) and Bill of Costs (ECF No. 160).

Dated this 25th day of March, 2026.

**/s/ Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar #: 13726

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Procedural Background.

Jose DeCastro was initially charged in Las Vegas Justice Court following the March 15, 2023 incident at issue in this civil case. After a bench trial, he was convicted of obstructing and resisting a public officer and sentenced to one hundred eighty days in the Clark County Detention Center. He sought bond pending appeal; that request was denied, and he served his entire sentence. The Eighth Judicial District Court thereafter granted his appeal, reversing both convictions on First Amendment grounds and finding insufficient evidence to sustain them — essentially adopting the same arguments the defense had advanced at the bench trial, assisted by the then-recently decided Nevada Court of Appeals opinion in *Willson v. First Judicial District Court*, 140 Nev. Adv. Op. 7 (Nev. App. 2024).

While the criminal proceedings were ongoing, DeCastro filed this civil action. This Court initially granted in large part the defendants' first motion for summary judgment. Following issuance of the Nevada District Court's reversal of the criminal convictions, the parties submitted additional briefing, and this Court reconsidered and reinstated several of plaintiff's claims. ECF No. 100. The case proceeded to a five-day jury trial in February 2026, at which the jury returned a verdict in defendants' favor on all claims. Judgment was entered February 19, 2026. ECF No. 158.

### II.    Legal Argument.

A prevailing defendant in a § 1983 action may recover attorneys' fees only when the plaintiff's claims were "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). This standard is stringent, and fee awards to prevailing defendants are available only "in exceptional circumstances." *Harris v. Maricopa Cnty*. Superior Court, 631 F.3d 963, 971 (9th Cir. 2011). The standard deliberately differs from that governing

2

prevailing plaintiffs, because "to penalize a plaintiff who has brought a colorable civil rights claim" would discourage the very litigation Congress intended § 1983 to facilitate. Christiansburg, 434 U.S. at 422.

### A.      Plaintiff's Case was not Frivolous.

The overarching nature of Plaintiff's case was clearly legitimate and not frivolous. Defendants implicitly recognize this by seeking fees on only two of the seven claims tried, they affirmatively represent to this Court that the remaining five, false arrest, unlawful search and seizure, excessive force based on arm squeezing, failure to intervene, and First Amendment retaliation, were not frivolous, unreasonable, or without foundation.  Indeed, as this Court is aware, a Nevada state court judge sitting in appellate review — examined the same underlying events and reached legal and factual conclusions that substantiate the basis for DeCastro's civil rights claims. In *DeCastro v. State of Nevada,* Case No. C-24-381730-A (Clark Cnty. Dist. Ct. July 19, 2024), District Court Judge Michelle Leavitt reversed DeCastro's misdemeanor convictions for obstruction and resisting arrest on First Amendment grounds. Her order made specific findings that bear directly on the question of whether this federal civil rights action had a colorable foundation.

Judge Leavitt found that DeCastro did back up when ordered to do so, which was the precise factual dispute that animated the probable cause question in this case and that this Court subsequently recognized as a genuine jury question. She found that Officer Bourque chose to release the driver in order to concentrate his attention on DeCastro while DeCastro was exercising his constitutionally protected right to film, a finding that corroborates the retaliatory motive underlying both the First Amendment retaliation claim and the selective enforcement theory. She found that DeCastro's conduct, however offensive and provocative, was protected by the First Amendment, and she reversed both convictions on that basis. These are not the findings of a court

that viewed this incident as a straightforward police matter. They are the findings of an independent judicial officer who examined the same record and concluded that constitutional rights were implicated.

Defendants were not parties to the criminal appeal, and Judge Leavitt's findings did not bind this Court as a matter of collateral estoppel. This Court acknowledged as much in ECF No. 100 at 15. But the legal significance of Judge Leavitt's order for present purposes is not preclusive; it is evidentiary. It demonstrates that a reasonable judge, applying Nevada constitutional and statutory law to the same underlying events, concluded that DeCastro had a legitimate legal grievance. A civil rights claim that is independently validated by a state appellate court's reversal of the criminal conviction arising from the same incident cannot be characterized as frivolous, unreasonable, or without foundation. Indeed, here, this Court denied summary judgment as to these claims. When a court denies summary judgment, it necessarily concludes that the plaintiff has presented evidence sufficient to raise a genuine dispute of material fact. A claim supported by evidence sufficient to survive summary judgment is not a claim that "reasonable inquiry into the applicable facts and law would have shown insufficient." *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998). To hold otherwise would create an irreconcilable contradiction: the same court that found the evidence sufficient to go to the jury would simultaneously declare that no reasonable person could have thought the claim had merit.

### B.   Attorney's Fees are not Warranted as to the Excessive Force Claim.

Not every mistake requires an award of attorney's fees. DeCastro admitted he made a mistake in his Second Amended Complaint, a mistake discussed repeatedly during trial and while he was under oath. He was representing himself in pro per when that document was filed. There were three versions of complaints filed during his self-represented period. The first two properly attributed the alleged groin strike to an unspecified officer, consistent with his explanation at trial.

4

The Second Amended Complaint was the genesis of the misattribution from one defendant to another. Attorney's fees are not justified by that mistake, for several independently sufficient reasons. On the groin strike, defendants' entire argument rests on the proposition that DeCastro's identification of Sandoval in the Second Amended Complaint was a fabrication that caused years of misdirected defense work. The record refutes this at every turn.

First, the misidentification caused defendants no prejudice and no misdirection whatsoever, because defendants themselves understood from the outset that the claim concerned Bourque's pat-down of DeCastro, not any separate act by Sandoval. In their first motion for summary judgment, ECF No. 86, defendants argued at length that Bourque's pat-down was routine, that the Dingle body-worn camera footage captured the relevant pat-down and showed no groin strike, and that Bourque was entitled to qualified immunity for that specific act. They cited the footage by timestamp. They sought judgment in Bourque's favor on the groin strike claim. They did not argue that no claim lay against any officer; they argued that the footage showed Bourque's pat-down was lawful. A party that litigated the groin strike as a claim against Bourque from the first summary judgment motion forward was not deceived by the Sandoval misidentification in the Second Amended Complaint, and cannot now claim to have incurred fees defending against a claim it never actually misunderstood.

This Court's own summary judgment analysis confirms the point. In ECF No. 100, the Court framed the excessive force analysis around Bourque's conduct, quoted defendants' argument about Bourque's pat-down specifically, and denied summary judgment with respect to Bourque on the groin strike claim. ECF No. 100 at 29-31. The litigation proceeded, from summary judgment through trial, on the correct understanding of which officer was at issue. The Sandoval misidentification in the Second Amended Complaint was a pleading error that had no practical effect on how any party litigated this case.

5

Second, and perhaps more significantly, defendants affirmatively chose to preserve this error rather than cure it. At trial, defendants moved to strike the groin strike claim from submission to the jury on account of the pleading discrepancy. Counsel for plaintiff indicated he might not object but requested an opportunity to review the pleadings overnight. Upon that review, counsel identified an additional procedural complication: defendants had answered the earlier complaint, in which the error did not exist, but had only filed a motion to dismiss in response to the Second Amended Complaint. The parties and the Court had throughout summary judgment operated on the assumption that the groin strike claim ran to the officers generally or to Bourque specifically. When counsel raised this entanglement before the Court the following morning, defendants withdrew their request to strike the claim. They did so not because the discrepancy was harmless, but because they had calculated that deploying the misidentification as a credibility argument against DeCastro in closing was more tactically valuable than eliminating the claim from the jury's consideration. That was a shrewd litigation choice, but it was their choice. A defendant who elects to retain a claim in order to use a pleading error as a weapon against the plaintiff at trial cannot thereafter seek fees on the theory that the same pleading error caused them to defend against a fabricated allegation. Having chosen the tactical benefit, defendants are not entitled to a fee award as well.

### C.    Attorney's Fees Not Supported as to Selective Enforcement.

Defendants construct an unjustifiably narrow view of the legal issues and evidence submitted to the jury at trial. Their argument proceeds from the premise that DeCastro was required to produce a virtual doppelganger, another individual present at the same scene, engaged in the same conduct, at the same moment, who was treated differently. No such requirement exists in the law, and adopting it would effectively abolish selective enforcement as a cause of action.

The officers in this case testified to a variety of justifications for their conduct, many of which were not confined to DeCastro's specific interactions with the detained driver. Their testimonial explanations ranged across a broad spectrum of distance calculations, including references to twenty feet, ten feet, five feet, the distance across the parking lot to the red truck visible in the footage, and general proximity to an active law enforcement scene. Officers testified repeatedly that they possessed legal authority to issue dispersal orders to any citizen within the vicinity of an active stop, and that any citizen within twenty-one feet of a law enforcement officer presents an inherent danger. They testified to the general proposition that any citizen could charge at an officer with a knife. These were not narrow, conduct-specific justifications. They were broad, distance-based and presence-based justifications that applied, by the officers' own account, to the public generally.

It was therefore entirely proper for the jury to consider whether the officers actually applied those broad justifications consistently to other citizens visible at the scene. If other individuals were within the distances officers described as inherently dangerous, if they were walking toward officers, if they were parked in proximity to Officer Bourque while he conducted his investigation, and yet they received no orders and faced no detention, then the jury was entitled to conclude that it was not distance, or proximity, or the general dangerousness of civilian presence, that caused the officers to act as they did toward DeCastro. That inference is precisely the mechanism by which selective enforcement claims operate. This claim must be rejected.

**D.      If An Award is Granted, the 10% Calculation Must be Rejected.**

Even if the Court were to conclude that one or both claims warranted a fee award, which it should not, the defendants' calculation of $18,385.45 fails to satisfy the legal requirements for fee awards in the Ninth Circuit, and is flatly inconsistent with what actually occurred at trial.

The argument that two of seven claims represents approximately 28.6% of plaintiff's theories at trial, and that ten percent is therefore a conservative estimate, is not a lodestar calculation. It is arithmetic applied to the wrong question. The relevant question is not what fraction of the claims at trial were allegedly frivolous; it is what fraction of counsel's actual time was spent on work that would not have been performed but for those specific claims. Defendants have made no attempt to answer that question.

The actual trial record, which this Court observed directly, undermines the ten percent figure still further. With respect to the groin strike claim, plaintiff did not affirmatively present evidence or argument on that claim during trial. The claim arose almost entirely through defendants' own strategic choices. As discussed above, defendants withdrew their motion to strike the claim from the jury's consideration, a motion plaintiff indicated he might not have opposed, in order to retain the ability to use the Sandoval misidentification as a credibility argument against DeCastro in closing. It was defendants who chose to keep this claim before the jury, defendants who devoted closing argument to it, and defendants who perceived doing so as being to their advantage. Fees incurred in pursuing a litigation strategy defendants themselves elected cannot fairly be characterized as fees caused by plaintiff's frivolous conduct.

With respect to the selective enforcement claim, the trial record likewise does not support any substantial allocation of defense time. Plaintiff's counsel addressed the selective enforcement theory primarily during closing argument, rather than through extended witness examination of each individual visible on the footage, precisely because it was not a primary evidentiary focus at trial. Neither party appears to have devoted significant time during the evidentiary phase to examining the footage of other individuals at the scene person by person. Defense counsel's closing argument response to the selective enforcement theory was similarly limited. A claim that neither

party treated as a significant evidentiary focus at trial cannot reasonably be said to account for ten percent of three years of litigation costs.

### D.  Opposition to Bill of Costs.

Defendants have filed a Bill of Costs seeking $8,209.68 under 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1). ECF No. 160. Although the Bill of Costs is a separate filing from the attorneys' fees motion and governed by a different legal standard, prevailing parties may recover enumerated costs under Rule 54(d)(1) without any showing of frivolousness, the claimed costs here are nonetheless substantially defective. The overwhelming majority of the claimed amount consists of Westlaw research charges that are not recoverable as taxable costs under § 1920 and that defendants have failed to support with the showing the Ninth Circuit requires.

Defendants claim $6,807.89 in Westlaw research charges as "other costs" in their Bill of Costs. This single item comprises over eighty-two percent of the total claimed amount excluding copying charges, and it cannot be sustained. The Ninth Circuit addressed the recoverability of computerized legal research charges in *Trustees of Construction Industry and Laborers Health and Welfare Trust v. Redland Insurance Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006). The court acknowledged the circuit split on this question and sided with the majority view, holding that reasonable charges for computerized research may be recovered as attorneys' fees under fee-shifting statutes, but only if separate billing for such expenses is the prevailing practice in the local community. Id. at 1259 (quoting *Jenkins v. Missouri*, 491 U.S. 274, 287 n.9 (1989)).  Critically, the court framed recovery expressly as recovery of attorneys' fees, grounding the holding in the Supreme Court's treatment of litigation expenses under attorneys' fee statutes. Id. at 1258. The court did not hold that Westlaw charges are independently taxable as costs under 28 U.S.C. § 1920.

This distinction is dispositive here. Section 1920 enumerates specific categories of recoverable costs, including clerk fees, transcript fees, printing fees, witness fees, exemplification

fees, and docket fees, and courts may not award costs outside those enumerated categories. Electronic legal research is not among them. Under Redland, it may be recovered only as a component of an attorneys' fees award, not as a standalone taxable cost. Defendants have filed their Westlaw charges through the Bill of Costs under § 1920, not through their § 1988 attorneys' fees motion. That procedural choice forecloses recovery, because the vehicle defendants have chosen does not permit it.

Of the $8,209.68 claimed in the Bill of Costs, $6,807.89 in Westlaw charges and $750.00 in Holo Discovery charges, totaling $7,557.89 or approximately ninety-two percent of the total, should be disallowed. The Westlaw charges are not recoverable as taxable costs under § 1920, and defendants have failed to make the showing Redland requires for recovery as attorneys' fees. The Holo Discovery charge falls within no enumerated category of § 1920 and represents a compliance cost rather than a litigation necessity.

For these reasons, the Motion for Attorney's Fees and Bill of Costs should be denied.

DATED on this 25th day of March, 2026.

/s/ **Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar #: 13726
400 South Street #500
Las Vegas, Nevada 89101
Tel: (702) 990-0190

## CERTFICIATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing Plaintiff's Response to Motion for Attorney's Fees and Bill of Costs was served upon those parties registered to receive electronic service in the above-captioned matter.

Dated this 25th day of March, 2026.

**/s/ Michael Mee, Esq.**
MICHAEL MEE, ESQ.
Nevada Bar #: 13726