**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Nicholas M. Adams, Esq.
Nevada Bar No. 15859
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
nadams@maclaw.com
  Attorneys for Defendants LVMPD, Sgt. Torrey, Ofc. Bourque, Ofc. Dingle, Ofc.
  Sorenson, Ofc. Sandoval and Ofc. Doolittle

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOSE DECASTRO,

                    Plaintiff,

          vs.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT; STATE OF NEVADA;
BRANDEN BOURQUE; JASON TORREY;
C. DINGLE; B. SORENSON; JESSE
SANDOVAL; OFFICER DOOLITTLE and
DOES 1 to 50, inclusive,

                    Defendants.

Case Number:
2:23-cv-00580-APG-EJY

**LVMPD DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEY FEES**

     Defendants Las Vegas Metropolitan Police Department, Ofc. Torrey, Ofc. Bourque, Ofc. Dingle, Ofc. Sorenson, Ofc. Sandoval and Ofc. Doolittle ("LVMPD Defendants"), by and through their attorneys of record, Marquis Aurbach, hereby submit their Reply to Plaintiff's Opposition to Motion for Attorney Fees (ECF No. 166). This Reply is made and based upon the Memorandum of Points & Authorities, the pleadings and papers on file herein and any oral argument allowed by counsel at the time of hearing.

     Dated this 31st day of March, 2026.

                              MARQUIS AURBACH

                              By _s/Craig R. Anderson_
                                 Craig R. Anderson, Esq.
                                 Nevada Bar No. 6882
                                 Attorney for LVMPD Defendants

MAC: 14687-456 (#6316492.1)

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

The Court should grant the LVMPD Defendants' request for a reasonable fee award because the record shows two discrete theories—the video-contradicted "groin-strike" allegation against Officer Sandoval and the selective-enforcement claim pursued without any evidence—were frivolous from the outset and generated identifiable defense work that is recoverable under 42 U.S.C. § 1988 even though DeCastro's other theories of liability may not have been frivolous as a matter of law. The Sandoval groin-strike claim conflicted with body-worn camera footage available when DeCastro filed the Second Amended Complaint ("SAC"), was publicly repeated after the Court confined any groin-strike issue to Officer Bourque based on the video, and culminated in DeCastro's Fifth Amendment invocation when asked under oath whether he signed the SAC under penalty of perjury. Those facts support frivolousness and but-for causation of defense tasks specific to the Sandoval groin-strike allegation. The selective-enforcement theory similarly lacked any evidence of a similarly situated comparator as Ninth Circuit law requires, a defect that persisted from the time of filing through trial.

The LVMPD Defendants' ten percent allocation is a conservative, record-anchored figure supported by exemplars of specific defense tasks tied to DeCastro's frivolous groin-strike and selective-enforcement claims. LVMPD Defendants additionally note that DeCastro's request to retax costs, made within his combined opposition, is untimely under LR 54-12(a).

## II.    LEGAL ARGUMENT

### A.    SECTION 1988 PERMITS FEE AWARDS TO PREVAILING DEFENDANTS FOR WORK ATTRIBUTABLE TO FRIVOLOUS CLAIMS.

42 U.S.C. § 1988 authorizes fee awards to prevailing parties in § 1983 actions. For prevailing defendants, the standard is whether a claim was frivolous, unreasonable, or without foundation. The Ninth Circuit limits such awards to amounts "attributable

MAC: 14687-456 (#6316492.1)

exclusively to" the frivolous claims, but it permits—and indeed requires—a claim-by-claim analysis when some claims lack merit even if others do not. Bad faith is not required. The LVMPD Defendants' Motion adheres to these constraints by isolating two frivolous claims that DeCastro pursued through trial and seeking a modest, apportionable slice of the lodestar tied to work those theories alone necessitated.

DeCastro's Opposition devotes considerable attention to arguing that his case as a whole was not frivolous, emphasizing the state appellate reversal of his criminal convictions, the denial of summary judgment on certain claims, and the supposed colorability of his First Amendment retaliation and false arrest theories. That argument, while perhaps rhetorically appealing, is legally irrelevant. The LVMPD Defendants have not moved for fees on DeCastro's First Amendment retaliation claim, his false arrest claim, or his arm-squeeze excessive force theory. The Opposition pivots to claims the LVMPD Defendants are not challenging, hoping the Court will conflate general case merit with specific-claim frivolousness. (ECF No. 166, pgs. 3:5-4:22). *Christiansburg*'s threshold is intended to avoid chilling colorable civil-rights litigation, but that policy does not shield discrete claims shown by the record to be frivolous simply because other theories were colorable. See *Tutor-Saliba Corp. v. City of Hailey,* 452 F.3d 1055, 1060 (9th Cir. 2006) (fees to a prevailing defendant are warranted when plaintiff "knew or should have known that [a] claim was frivolous from the outset of the litigation," and applying that standard on a claim-by-claim basis).

The Opposition's reliance on Judge Leavitt's state-court order reversing DeCastro's criminal convictions illustrates this misdirection. That order addressed whether DeCastro's speech was constitutionally protected, a question relevant to his First Amendment retaliation claim, which is not at issue here. Judge Leavitt did not find that Officer Sandoval gratuitously struck DeCastro in the groin during a fabricated third pat-down, nor did she identify any similarly situated individual who was treated differently for purposes of

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-456 (#6316492.1)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

selective enforcement. The state-court reversal says nothing about the two theories for which fees are sought.

Nor does the denial of summary judgment immunize these claims from a fee award. Summary judgment on the groin-strike claim was denied only as to Officer Bourque—not Sandoval—because the video did not clearly capture whether Bourque struck DeCastro during the pat-down he actually conducted. ECF No. 100 at 29-31. But DeCastro's verified allegation was that Sandoval inflicted a separate, third pat-down with a closed-fist groin punch. That allegation was not a mere pleading error; it was publicly reiterated after this Court's ruling and culminated in DeCastro's invocation of the Fifth Amendment when asked whether he signed the SAC under penalty of perjury. As for selective enforcement, the claim proceeded to trial only because the burdens at summary judgment and trial differ. At trial, DeCastro produced no comparator meeting the similarity situated requirements of Ninth Circuit law. His evidentiary failure was total, precisely the circumstance *Franceschi* held can justify a fee award to a prevailing defendant. *See Franceschi v. Schwartz,* 57 F.3d 828, 832 (9th Cir. 1995) (attorneys' fees are appropriate to prevailing defendants when plaintiffs "utterly fail[] to meet [their evidentiary] burden.").

**B.    THE GROIN-STRIKE CLAIM AGAINST OFFICER SANDOVAL WAS FRIVOLOUS AND CAUSED RECOVERABLE DEFENSE WORK.**

**1.    <u>The record shows falsity or, at minimum, a lack of reasonable factual inquiry; not an excusable misidentification.</u>**

DeCastro swore under penalty of perjury in ¶ 62 of the SAC that Officer Sandoval spread his legs wide and struck him in the testicles with a closed fist during what plaintiff described as an additional pat-down after two prior pat-downs. (*See* ECF No. 61, ¶ 62). The body-worn camera footage available to DeCastro when he filed the SAC shows that nothing of the sort occurred. This Court allowed the groin-strike claim to proceed to trial only as to Bourque because the video did not clearly capture Bourque's pat-down for Rule 56 purposes. Despite that ruling, DeCastro posted a YouTube video reiterating that Sandoval,

MAC: 14687-456 (#6316492.1)

not Bourque, struck him, before ultimately conceding at trial that Sandoval never struck him in the groin. (ECF No. 162, Exhibit 521A). The SAC's description of a separate, later Sandoval pat-down underscores that the Sandoval allegation was not a mere officer-name mix-up but a fabricated scenario completely contradicted by the video evidence. These facts support a finding that the Sandoval groin-strike excessive-force claim was frivolous from inception and was pursued despite contrary video evidence.

DeCastro attempts to recast this as a harmless pro se mistake that caused no prejudice because, he says, LVMPD Defendants always understood the groin-strike issue to concern Bourque and litigated it as such. That account is factually false. LVMPD Defendants did not "always understand" the claim concerned Bourque. LVMPD Defendants were forced to defend Officer Sandoval against a sworn allegation that he gratuitously punched DeCastro in the testicles during a third pat-down, an allegation which DeCastro maintained even after the Court limited the groin-strike theory to Officer Bourque. Throughout this case, counsel for LVMPD Defendants was required to review Sandoval's body-worn camera footage and confirm no groin-strike occurred, meet with Officer Sandoval to prepare him for the claim, draft specific legal arguments through multiple motions to dismiss and summary judgment, and conduct trial preparation—all because DeCastro frivolously maintained that Sandoval spread his legs and gratuitously struck him in the groin. Even after this Court confined the groin-strike issue to Bourque, DeCastro publicly doubled down on YouTube, reiterating that Sandoval struck him. That forced LVMPD Defendants to continue monitoring DeCastro's public statements, prepare Officer Sandoval for the possibility that DeCastro would reassert the Sandoval theory at trial, and ultimately use the discrepancy to impeach DeCastro's credibility. DeCastro cannot claim the misidentification caused "no misdirection whatsoever" when LVMPD Defendants spent years defending Officer Sandoval against a sworn allegation that the video evidence showed never occurred. The fact that this Court ultimately allowed only the Bourque theory to proceed does not retroactively erase the work the Sandoval allegation necessitated, nor does

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-456 (#6316492.1)

it excuse DeCastro's continued public insistence that Sandoval was the perpetrator even after the Court's ruling. These circumstances distinguish an excusable misidentification from a knowingly false or recklessly asserted claim.

### 2.    Counsel for LVMPD Defendants have expended time attributable exclusively to the frivolous groin-strike allegation.

Even crediting some overlap in trial preparation, the billing records and defense counsel's file review identify numerous tasks that would not have occurred but for DeCastro's sworn allegation that Officer Sandoval gratuitously struck him in the groin during a fabricated third pat-down. These tasks include: (1) initial review of Officer Sandoval's body-worn camera footage to assess the allegation; (2) an early-case meeting with Officer Sandoval to discuss the verified allegation against him and obtain his account; (3) correspondence with Officer Sandoval regarding the allegations; (4) drafting portions of the legal briefs specifically addressing the theory; (5) monitoring DeCastro's YouTube videos due to his public reiteration that Sandoval struck him in the groin even after the Court's summary judgment ruling; (6) a dedicated trial-preparation meeting with Officer Sandoval which dealt in part with the allegation; (7) reviewing and notating events within Sandoval's body-worn camera footage relating to the alleged groin-strike in preparation for trial; (8) drafting portions of Sandoval's direct-examination outline relating to the allegation; (9) corresponding with Officer Sandoval during trial; and (10) trial work addressing the excessive-force claim as alleged against Sandoval.

These tasks are examples of time "attributable exclusively" to the frivolous Sandoval groin-strike claim and support at least a measured allocation of fees incurred as a direct result of that claim. DeCastro's contention that LVMPD Defendants made a tactical choice at trial to preserve the discrepancy for closing argument does not retroactively erase the pretrial and trial work that the Sandoval allegation necessitated over the course of nearly three years.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-456 (#6316492.1)

**C.      THE SELECTIVE-ENFORCEMENT CLAIM WAS GROUNDLESS UNDER NINTH CIRCUIT LAW AND REQUIRED DISTINCT PRETRIAL EFFORT**

### 1.      Plaintiff never identified a comparator "similarly situated" in the ways that matter to discriminator effect.

To establish discriminatory effect on a selective-enforcement theory, a plaintiff must meet a "demanding" standard to show that similarly situated individuals were not subjected to the same law enforcement action. *Lacey v. Maricopa Cnty.,* 693 F.3d 896, 920 (9th Cir. 2012) (en banc); *see also Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) ("[I]t is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared.").

The trial record contained no evidence of any individual similarly situated to DeCastro. Instead, DeCastro offered still screenshots of individuals in the parking lot coming to and from nearby businesses, none of whom interfered with police activities or disobeyed officer commands. DeCastro failed to identify any individual who could even arguably be considered a similarly situated comparator. His evidentiary failure on this essential element was total.

Plaintiff argues that no "doppelganger" comparator is required and that evidence presented at trial permitted the jury to infer discriminatory effect from how others visible on video were treated.  (ECF No. 166, 6:22-7:23). While evidence of an exact comparator is not required, the Ninth Circuit requires comparators to be similarly situated in material respects relevant to the claimed enforcement decision. DeCastro's presentation of still images and generalized proximity arguments do not supply that showing. Because DeCastro utterly failed to meet his evidentiary burden as to this claim, an award of attorneys' fees to the prevailing LVMPD Defendants is appropriate. *See Franceschi*, 57 F.3d at 832.

/ / /

/ / /

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-456 (#6316492.1)

**2.**   **The selective enforcement claim generated discrete attorney work attributable exclusively to the frivolous theory.**

The LVMPD Defendants devoted substantial effort to defeating the selective enforcement claim throughout this litigation. The billing records identify numerous tasks that would not have occurred but for DeCastro's pursuit of this unsupported theory: (1) drafting the selective enforcement section of the first motion to dismiss (ECF No. 15) and corresponding reply; (2) drafting the selective enforcement section of the second motion to dismiss (ECF No. 66) and corresponding reply brief; (3) legal research on Fourteenth Amendment selective enforcement standards and the "similarly situated" comparator requirement under Ninth Circuit law; (4) reviewing body-worn camera footage from each defendant officer to identify whether any individual at the scene could arguably qualify as a comparator; (5) analyzing still images and video of other individuals in the parking lot to rebut DeCastro's comparator arguments; (6) drafting the selective enforcement section of the motion for summary judgment (ECF No. 86) and corresponding reply brief; (7) discovery relating to the selective enforcement claim; (8) identifying and disclosing potential witnesses and exhibits relevant to selective enforcement in Rule 26 disclosures; (9) drafting selective enforcement-specific sections of the joint pretrial order and pretrial report; (10) preparing selective enforcement portions of the trial brief; (11) drafting proposed jury instructions on selective enforcement, including instructions on discriminatory effect and discriminatory purpose; (12) drafting the selective enforcement questions on the verdict form; (13) preparing portions of direct examination outlines for each defendant officer addressing selective enforcement issues, including testimony about other individuals present at the scene and the officers' reasons for focusing on DeCastro; (14) preparing cross-examination questions for DeCastro relating to selective enforcement claim; (15) reviewing DeCastro's trial exhibits depicting other individuals at the scene and preparing to rebut his comparator arguments; (16) preparing a Rule 50(a) motion argument relating to selective enforcement claim; (17) preparing closing argument points responding to DeCastro's

MAC: 14687-456 (#6316492.1)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

selective enforcement theory; and (18) addressing selective enforcement issues during jury instruction conferences and verdict form discussions with the Court. This work is cognizable in a but-for allocation even if the claim occupied limited trial time, because § 1988 authorizes compensation for litigation work necessitated by claims for which the plaintiff utterly fails to meet his/her evidentiary burden.

### D.    THE TEN PERCENT ALLOCATION IS REASONABLE; AT MINIMUM, THE COURT SHOULD AWARD A SMALLER SHARE.

The LVMPD Defendants' Motion and the Anderson Declaration confront intertwinement directly, explain why precise line-by-line segregation is impracticable in a multi-claim § 1983 case, and present ten percent as a conservative floor founded on counsel's review of the file and the discrete, claim-specific tasks tied to the two frivolous theories. The record supplies concrete exemplars for that estimate. Against that backdrop, ten percent reasonably captures fees "attributable exclusively" to the frivolous theories while discounting for overlap inherent in trial preparation touching multiple claims.

DeCastro argues that neither claim occupied significant trial time and that ten percent therefore overstates the work attributable to the at-issue claims. That argument mistakes where the work occurred. The vast majority of litigation expense in a civil-rights case is incurred before the jury is sworn: drafting and responding to pleadings, conducting legal research, preparing dispositive motions, meeting with witnesses, and assembling the pretrial record. The trial is the tip of the iceberg. Here, the Sandoval groin-strike allegation and the selective enforcement claim imposed their heaviest burdens during nearly three years of pretrial litigation—in two rounds of motions to dismiss, two motions for summary judgment, supplemental briefing after the state-court reversal, officer preparation sessions, and the drafting of claim-specific jury instructions, verdict form questions, and examination outlines. Much of that work would not have been necessary but for DeCastro's decision to assert and maintain these frivolous theories.

MAC: 14687-456 (#6316492.1)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Section 1988 does not limit fee recovery to courtroom hours; it authorizes compensation for litigation work necessitated by frivolous claims wherever it occurs. To measure compensable effort by trial minutes alone would immunize plaintiffs who pursue baseless claims through years of pretrial litigation so long as those claims consume little time at trial-a result that would undermine *Christiansburg*'s deterrent purpose. LVMPD Defendants' ten-percent request is grounded in documented pretrial attorney work, and the figure accounts for overlapping work that would have been performed regardless. If the Court concludes a smaller share is warranted, LVMPD Defendants respectfully request that approach rather than outright denial. *Harris* expressly permits fee awards limited to amounts "attributable exclusively" to frivolous claims, and even a reduced award would vindicate the principle that plaintiffs should not pursue knowingly false or evidentiary-deficient theories at a defendant's expense.

### E.    DECASTRO'S REQUEST TO RETAX COSTS IS UNTIMELY.

DeCastro's request to retax costs is procedurally untimely. Local Rule 54-12(a) requires a motion to retax within seven days after service of the bill of costs. DeCastro did not file a separate motion within that window; instead, he raised objections for the first time in his combined opposition to the Motion. The stipulated extension for that opposition did not—and could not—retroactively revive an expired deadline.

On the merits, LVMPD Defendants acknowledge that computerized legal research may not be independently taxable under 28 U.S.C. § 1920 and is more appropriately recoverable, if at all, as a component of attorney's fees under § 1988. To the extent the Court concludes specific line items fall outside § 1920's enumerated categories, LVMPD Defendants request those amounts be included within any fee award. Regardless, the Court should not lose sight of the broader equities: DeCastro pursued frivolous claims through nearly three years of litigation and a five-day jury trial, imposing substantial costs on the LVMPD Defendants and the judicial system. Even if certain expenses are excluded from the Bill of Costs, the Court should award those costs to deter similarly frivolous litigation.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-456 (#6316492.1)

III.   **CONCLUSION**

DeCastro's Opposition does not overcome the LVMPD Defendants' showing that two discrete claims were frivolous and generated recoverable attorney's fees and costs. The groin-strike allegation against Officer Sandoval conflicted with video evidence available when DeCastro signed the SAC under penalty of perjury, was publicly maintained for years thereafter, and culminated in a Fifth Amendment invocation and withdrawal of the allegation at trial. These circumstances distinguish a harmless pro se error from a knowingly false or recklessly asserted claim and support a fee award for tasks resulting from that frivolous allegation. The selective-enforcement claim proceeded through trial and was submitted to the jury without any evidence of a similarly situated comparator—an utter failure to meet an evidentiary burden that courts have treated as warranting prevailing defendant fees under § 1988. The ten-percent allocation is a conservative estimate that accounts for intertwinement while capturing work directly traceable to the two frivolous theories. At minimum, the Court should award a reduced share grounded in the specific exemplars identified above rather than deny the Motion outright. The Court should grant the Motion and award $18,385.45, or a reduced allocation as the Court deems appropriate.

Dated this 31st day of March, 2026.

MARQUIS AURBACH

By *s/Craig R. Anderson*
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney for LVMPD Defendants

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-456 (#6316492.1)

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically served the foregoing **LVMPD DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEY FEES** on the 31st day of March, 2026 on all participants in the case who are registered CM/ECF users.

*s/ Lennie Fraga*
an employee of Marquis Aurbach

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC: 14687-456 (#6316492.1)